IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| AMID, INC. | § | |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | CASE NO. 4:16-cv-01137 |
| | § | |
| MEDIC ALERT FOUNDATION UNITED | § | |
| STATES, INC. d/b/a Medic Alert Foundation | § | |
| and JUSTIN NOLAND, an individual | § | |
| | § | |
| DEFENDANTS. | § | |

**PLAINTIFF'S MOTION FOR PRELIMINARY
INJUNCTION AND MEMORANDUM IN SUPPORT**

# TABLE OF CONTENTS

I.  NATURE AND STAGE OF THE PROCEEDING ................................................................ 1

II.  STATEMENT OF THE ISSUE TO BE RULED ON BY THE COURT AND A SHORT
STATEMENT, SUPPORTED BY AUTHORITY, OF THE STANDARD OF REVIEW FOR THE
ISSUE ................................................................................................................................ 1

III. SHORT SUMMARY OF THE ARGUMENT ................................................................... 1

IV. FACTUAL BACKGROUND .............................................................................................. 2

  A.  Plaintiff AMID'S Trade Dress ................................................................................... 2

  B.  Defendants' Activities and Copying ......................................................................... 5

  C.  Breach of Non-Compete and Confidentiality Agreement ......................................... 8

  D.  AMID's Copyrighted Work ...................................................................................... 10

V. ARGUMENT ...................................................................................................................... 10

  A.  Plaintiff is Highly Likely to Succeed on the Merits of its Claims ............................ 11

    1.  Plaintiff is Highly Likely to Succeed on the Merits of its Trademark Infringement and Unfair
    Competition Claims ........................................................................................................ 11

      a.  The AMID Display and Marketing Plan is Valid and Protectable Trade Dress ............... 11

      b.  The AMID Mark is Distinctive and Nonfunctional .......................................................... 13

        i.  The Amid Mark is Inherently Distinctive ................................................................. 13

        ii.  The AMID mark is non-functional .......................................................................... 16

      c.  Defendants' Use is Likely to Confuse Consumers ...................................................... 18

    2.  Plaintiff is Highly Likely to Succeed on the Merits of its Copyright Claims ........................ 20

  B.  Plaintiff Will Suffer Irreparable Harm Without Injunctive Relief .............................. 21

  C.  The Threatened Injury to Plaintiff Outweighs Any Damage the Injunction May
  Cause Defendants .......................................................................................................... 22

  D.  The Injunction Will Not Disserve the Public Interest ................................................. 23

VI. CONCLUSION .................................................................................................................... 25

## TABLE OF AUTHORITIES

*Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4 (2d Cir. 1976)...........................................15

*Abercrombie & Fitch Stores, Inc. v. American Eagle Outfitters, Inc.*, 280 F.3d 619
    (6th Cir. 2002) ....................................................................................................................12

*Abraham v. Alpha Chi Omega*, 708 F.3d 614 (5thCir. 2013) ...............................................22

*Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225 (5th Cir. 2010)................14, 15, 19

*American Auto. Assoc. v. AAA Ins. Agency Inc.*, 618 F. Supp. 787 (W.D. Tex. 1985) ............18

*American Dairy Queen Corp. v. New Line Prods.*, 35 F. Supp. 2d 727 (D. Minn. 1998).......................23

*Bd. of Supervisors for La. State Univ. Agric. And Mech. College v. Smack Apparel Co.*,
    550 F.3d 465 (5th Cir. 2008), cert. denied, 129 S. Ct. 2759 (2009)..............................11

*Butterick Co. v. McCall Pattern Co.*, 222 U.S.P.Q. 314 (S.D.N.Y. 1984).........................12

*Chemlawn Servs. Corp. v. GNC Pumps*, Inc., 690 F. Supp. 1560 (S.D. Tex. 1988),
    aff'd, 856 F.2d 202 (Fed. Cir. 1988).................................................................................22

*Chere Amie, Inc. v. Windstar Apparel, Corp.*, 191 F. Supp. 2d 343 (S.D.N.Y. 2001) ...............................24

*Chevron Chemical Co. v. Voluntary Purchasing Groups, Inc.*, 659 F.2d 695 (5th Cir. 1981) ..........13, 14

*Clearline Technologies Ltd. v. Cooper B-Line, Inc.*, 948 F.Supp. 2d 691 (S.D. Tex. 2013)............16, 17, 18

*Conference Archives, Inc. v. Sound Images, Inc.*, No. CIV. 3:2006-76, 2010
    WL 1626072, at *11 (W.D. Pa. Mar. 31, 2010) ...............................................................2

*Eastman Kodak Co. v. Photaz Imports*, 853 F. Supp. 667, 1993 U.S. Dist. LEXIS 19903
    (W.D.N.Y. 1993) ...........................................................................................................24, 25

*Elvis Presley Enters c. Capece*, 141 F.3d 188 (5th Cir. 1998) ...............................................18

*Eppendorf-Netheler-Hinz GMBH v. Ritter GMBH*, 289 F.3d 351 (5th Cir. 2002).........................13, 17

*Esercizio v. Roberts*, 944 F.2d 1235 (6th Cir. 1991) ...............................................................20

*Exxon Corp. v. Texas Motor Exchange, Inc.*, 628 F.2d 500 (5thCir. 1980) ...............................19

*Falcon Rice Mill, Inc. v. Cmty. Rice Mill, Inc.*, 725 F.2d 336, n. 1 (5th Cir. 1984)........................12

*Florence Manufacturing Co. v. J. C. Dowd & Co.*, 178 F. 73 (2d Cir. 1910)...........................14

*Fun-Damental Too, Ltd. v. Gemmy Industries Corp.*, 111 F.3d 993 (2d Cir. 1997)..........12, 15, 17, 24

*Gonannies, Inc. v. Goupair.Com, Inc*., 464 F. Supp. 2d 603 (N.D. Tex. 2006) .......................................... 21

*Goscicki v. Custom Brass & Copper Specialities, Inc,* 229 F.Supp.2d 743 (E.D. Mich. 2002)............... 20

*Graphic Design Mktg. v. Xtreme Enters.*, 772 F. Supp. 2d 1029 (E.D. Wis. 2011) ................................. 24

*Helene Curtis Indus. v. Church & Dwight Co.*, 560 F.2d 1325 (7th Cir. 1977)....................................... 23

*Hoover v. Morales*, 164 F.3d 221 (5th Cir. 1998) ..............................................................................10

*John H. Harland Co. v. Clarke Checks, Inc*., 711 F.2d 966 (11th Cir.1983) ...............................11, 12

*Jordache Enterprises v. Vaswani,* 1980 U.S. Dist. LEXIS 17424 (C.D. Cal. Dec. 30, 1980) ................. 24

*KFC Corp. v. Goldey*, 714 F. Supp. 264 (W.D. Ky. 1989)....................................................................... 23

*Kraft Gen. Foods, Inc. v. Friendship Dairies, Inc.*, 1991 U.S. Dist. LEXIS 18213, 19 U.S.P.Q.2D (BNA) 1691 (S.D.N.Y. June 26, 1991)................................. 24

*Krause Int'l, Inc. v. Reed Elsevier, Inc*., 866 F. Supp. 585 (D.D.C. 1994)................................................ 23

*Lakedreams v. Taylor*, 932 F.2d 1103  (5th Cir. 1991).............................................................................. 23

*Long John Silver's, Inc. v. Washington Franchise, Inc.*, 1980 U.S. Dist. LEXIS 16635, *13 (E.D. Va. June 24, 1980) ............................................................. 23, 24

*McNeil-Ppc, Inc. v. Merisant Co.*, 2004 U.S. Dist. LEXIS 27733, 2004 WL 3316380 (D.P.R. July 29, 2004)........................................................ 24

*Miramax Films Corp. v. Columbia Pictures Entm't, Inc.*, 996 F. Supp. 294, (S.D.N.Y. 1998)..............25

*Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc.*, 783 F.3d 527 (5th Cir. 2015) ..................... 14, 15

*Oliva v. Poma Ramirez*, 2007 U.S. Dist. LEXIS 62011, 2007 WL 2436305 (D.P.R. Aug. 15, 2007)...... 24

*Original Appalachian Artworks, Inc. v. Toy Loft, Inc.*, 684 F.2d 821 (11th Cir. 1982).....................12

*Perfect Fit Indus. v. Acme Quilting Co.*, 646 F.2d 800 (2d Cir. N.Y. 1981) ............................................ 24

*Poly–Am., L.P. v. Stego Indus., L.L.C.*, 3:08–CV–2224–G, 2011 WL 3206687, at *10 (N.D. Tex. July 27, 2011)....................................................... 16

*Positive Software Solutions, Inc. v. New Century Mortg. Corp.*, 259 F. Supp. 2d 531, (N.D. Tex. 2003)............................................................................................................. 24

*Pro Hardware, Inc. v. Home Centers of America, Inc.*, 607 F. Supp. 146 (S.D. Tex. 1984), aff'd, 701 F.2d 408 (5th Cir. 1983) ............................................................ 22

*Quantum Fitness Corp. v. Quantum Lifestyle Ctrs*., 83 F. Supp. 2d 810 (S.D. Tex. 1990) ............... 22, 23

*Regal Jewelry Co., Inc. v. Kingsbridge Intern., Inc.*, 999 F. Supp. 477 (S.D.N.Y. 1998)........................ 13

*Scan–Plast Industries, Inc. v. Scanimport America*, 652 F. Supp. 1156  (E.D.N.Y.1987) ................12

*Shell Trademark Mgmt. B. v. And Shell Oil Co.*, 765 F.Supp.2d 884 (S.D. Tex., 2011)........................... 13

*Shell Trademark Mgmt. B.V. v. Warren Unilube, Inc.*, 765 F. Supp. 2d 884 (S.D. Tex. 2011) ............... 20

*Sicilia Di R. Biebow & Co. v. Cox*, 732 F.2d 417 (1984) ............................................................. 13, 17

*Sunbeam Prods., Inc. v. West Bend Co.*, 123 F.3d 246 (5th Cir. 1997)..................................................... 23

*Tiffany & Co. v. Verrett*, 656 F. Supp. 706 (S.D. Tex. 1986).............................................................10

*Tools USA & Equip. Co. v. Champ Frame Straightening Equip. Inc.*, 87 F.3d 654
(4th Cir. 1996) ..............................................................................................................................12

*TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, S. Ct. 1255, 149
L. Ed. 2d 164 (2001).......................................................................................... 13, 16, 17

*Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768, 112 S.Ct. 2753
L.Ed.2d 615 (1992).......................................................................................... 15, 17, 18

*Union Nat'l Bank of Laredo, Tex. V. Union Nat'l Bank of Tex.*, Austin, Tex.,
909 F.2d 839 (5th Cir. 1990) .......................................................................................11, 12

*Walgreen Co. v. Hood*, 275 F.3d 475 (5th Cir. 2001) ...........................................................1

*Wal–Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205 (2000) ......................................... 13

*Warner Bros., Inc. v. American Broadcasting Co.*, 654 F.2d 204 (2d Cir. 1981) ..................................... 21

*Washington Speaker Bureau, Inc. v. Leading Authorities, Inc.*, 33 F. Supp. 2d 488
(E.D. Va. 1999).......................................................................................................... 19

## STATUTES

15 U.S.C. § 1116(a) ................................................................................................................10
15 USC 1114(1),1125(a)(1)(A)................................................................................................ 18
17 U.S.C. § 502 ......................................................................................................................10

## I.   NATURE AND STAGE OF THE PROCEEDING

Plaintiff asserts claims for trademark infringement, copyright infringement, unfair competition, theft of confidential information and breach of non-compete and confidentiality agreement, and related claims.  Plaintiff AMID, Inc. ("AMID") initiated this lawsuit on April 27, 2016 and now files this motion. Plaintiff is undertaking efforts to formally serve the Complaint and Summons on Defendants, along with this motion.

## II.   STATEMENT OF THE ISSUE TO BE RULED ON BY THE COURT AND A SHORT STATEMENT, SUPPORTED BY AUTHORITY, OF THE STANDARD OF REVIEW FOR THE ISSUE

AMID is moving the Court to enter a preliminary injunction against Defendants.  The standard of review for the district court's grant or denial of a preliminary injunction is abuse of discretion.  See *Walgreen Co. v. Hood*, 275 F.3d 475, 477 (5th Cir. 2001).

## III. SHORT SUMMARY OF THE ARGUMENT

Plaintiff AMID, Inc. is a seller of medical ID bracelets and tags, as well as other personal medical identification products.  Plaintiff is the creator and owner of trade dress in certain packaging and display for its products and in its marketing scheme, and party to a contract with Defendant Noland.  Defendant Medic Alert Foundation United States, Inc. d/b/a MEDIC ALERT FOUNDATION (hereinafter "Medic Alert"), prior to copying Plaintiff's trade dress, was primarily a subscription based medical data storage service accessible through an engraved wearable ID product and did not market into healthcare professional's offices.  It marketed its services by having customers sign up to a service that tied their medical data to an ID that could be renewed annually online.  Defendant Justin Noland is a former employee of AMID, Inc. who left in May 2014, and contrary to his employment agreement and non-compete, and without the knowledge of AMID, joined Medic Alert in direct competition using confidential information to permit Medic Alert to copy AMID's successful marketing scheme and trade dress.

AMID has devoted substantial time, money, and effort to marketing and promoting its products

and has established over the course of several years its distinctive and appealing counter display for the sale of medical ID bracelets, bands, necklaces and tags.  ("AMID Packaging Display and Marketing Plan Trade Dress").  This display and marketing scheme involves a number of arbitrary features that AMID tested extensively before committing the significant resources to have them printed, packaged and configured.  Without this market testing, it would have been impracticable to spend such money to print and create the thousands of displays required to blanket AMID's market segment.  AMID has exercised great care, skill, and diligence in the conduct of its business, and has maintained uniform standards of high quality in making and selling product under the AMID Packaging Display and Marketing Plan Trade Dress which has become its prominent mode of fostering sales in the industry by encouraging recommendations direct and implied from health care professionals to their patients, the end user.  The AMID Packaging Display and Marketing Plan Trade Dress has been used for over 10 years and has achieved recognition as source identifier and has come to represent and embody AMID's valuable goodwill and reputation for quality and value.

Medic Alert, with the help of Noland, embarked on a scheme to steal and pass off their products using the same display and marketing program.  These activities constitute trademark infringement, copyright infringement and unfair competition and should be restrained.  As is readily apparent from a comparison between the displays now being offered by Medic Alert and those created by AMID, intentional copying of AMID's entire Packaging Display and Marketing Plan has been committed.  Further, Noland and Medic Alert have benefited from Noland's use of AMID confidential marketing scheme and business methods.  AMID seeks immediate injunctive relief to prevent further harm to its business and reputation.

## IV. FACTUAL BACKGROUND[1]

### A.  Plaintiff AMID'S Trade Dress

---

[1] Factual support may be found in the Declarations of Rick Russell and Angela Flowers and accompanying exhibits all filed and served herewith.

AMID developed its trade dress over a period of more than 10 years and has been using the current display over 5 years, since 2010. Russell Decl., ¶¶ 3-6. The Packaging Display and Marketing Plan are distinctive and indicate the source of these products. Until Medic Alert's copying, AMID's was the most widely available display showing ID bracelets and plates at a point of sale with fillable order forms. Customers visiting their doctors or other health care professionals would see the display at the point of sale, and could place orders using the form or were directed to AMID's internet site. Russell Decl., ¶ 4.

This trade dress involves several features all of which contribute to the overall impression of the packaging and are associated with AMID by its customers. Customers are presented with this product through an innovative Marketing Plan using the display at health care professional offices. Among the distinctive features are the organization and content of the easel display as depicted below. See Russel Decl., ¶¶ 7-14.




The top of the package has a unique see through passage banner made of corrugated material displaying a single bracelet plate. Russell Decl., ¶ 8; Exhibits 3 and 4.

The packaging has a stack of horizontally arranged pull-off order forms that are glued together in a group for easy removal and ordering by potential end users. Russell Decl., ¶ 9. Wrapping the lower portion of the order forms is a banner tab with the trademark "Medical IDs save lives!" Exhibit 5.



Upon removal of the top banner cover, a group of facsimile plates or bracelets are revealed with a banner heading at the top, in this case stating "IdentifyYourself.com." Metallic looking facsimiles were arranged on the top of the display in a carefully determined configuration that showed their depth, embossed coloring, and the variety of tags and IDs. Russell Decl., ¶ 11. When shipped to various health care professionals' offices, the entire assembly is wrapped in a see-through plastic sleeve with a transmittal letter enclosed on the back side of the display. Russell Decl., ¶ 12 and Exhibit 6.

This letter provides information to the health care professional and other customers and outlines a complimentary medical identification program, as well as listing various potential end users to whom the health professional may recommend an identification bracelet or tag. Russell Decl., ¶ 13. In addition, the letter lists various institutions that recommend the use of a medical identification product. *Id*. The product display and ordering forms are contained on an easel type display so that end users see the products and the ordering form on a counter and can easily pull off the order form to buy. *Id*. at ¶ 14. Exhibit 7.




The marketing and sales success of this AMID product line is directly linked to the use of the AMID Packaging Display and Marketing Plan Trade Dress and Defendants were well aware of this association and the enormous goodwill associated therewith. Russell Decl., ¶ 15.

**B. Defendants' Activities and Copying**

Defendants launched their line of medical identification products which directly compete with Plaintiff's products using a near identical packaging and display which was calculated to create the mistaken impression in consumers and the medical community that Defendants' products come from, are sponsored or licensed by, or are associated or affiliated with, AMID.  This launch occurred sometime after Noland became employed by Medic Alert, utilizing confidential information Noland learned while at AMID.  Russell Decl., ¶ 16-17.

Healthcare professionals and their patients are misled into thinking that the two companies and their products are interchangeable and have upon information and belief, medical professional have purchased Defendants' products and recommended purchase of Defendants' products to end users as a substitute for AMID's products through confusion.  Russell Decl., ¶ 17; Flowers Decl. ¶ 6-7.  A side by side comparison of the AMID display and packaging and that of MEDIC ALERT shows the substantial similarity and confusion that is likely to ensue when healthcare professionals receive the display packaging in the mail. Russell Decl., ¶ 18. Exhibit 9.



AMID                Medic Alert

The AMID packaging and Medic Alert packaging are the same.  The upper see through portion displaying a metallic facsimile ID tag, the horizontal order forms and wrap-around red tape that use the phrase "saves

lives" are virtually identical.  AMID is the owner of the trademark "Medical IDs Save Lives" in addition to the trade dress of the display.  Russell Decl., ¶ 19.  Defendants' display when fully unpackaged and set up on the counter is also confusingly similar by displaying a group of metallic facsimile tags below a banner and above a square pull-off order form.  Russell Decl., ¶ 20; Exhibit 10.  Defendants even arranged their medals in a similar layout with two overlapping on the left, one horizontal, and one vertically disposed. Russell Decl., ¶ 20; Exhibit 10.

 

Defendants not only copied the display, its packaging, and appearance but also slavishly copied the text in the accompanying materials.  For example, the introductory letter, which is a registered copyright (Exhibit 2), is formatted to look the same and contains the same text and similar information.  Russell Decl., ¶ 22, Exhibit 11:



The introductory paragraph is almost identical and lists the same persons/maladies for which IDs are recommended.



AMID                                         Medic Alert

Russell Decl., ¶ 23-25; Exhibit 12.  Further, both letters list institutions that recommend a medical ID using the same appearance and formatting:



Russell Decl., ¶ 26; Exhibit 13.  Despite there being literally dozens of entities that recommend the use of medical identification bracelets, Medic Alert chose the same exact group for its letter, slightly rearranging their order.  *Id*. Further, both letters offer a free ID to healthcare professionals with identical language. Russell Decl., ¶ 27-29. Exhibit 14.

AMID:

> To assist you when educating your patients on the importance of medical IDs, we are offering a complimentary engraved medical ID to all healthcare professionals.  To obtain your free medical ID teaching sample, visit www.IdentifyYourself.com/HCPID for details.

Medic Alert:

> To assist you when educating your patients on the importance of medical IDs, we are offering a complimentary engraved medical ID to all healthcare professionals. To obtain your free medical ID teaching sample, email marketing@medicalert.org for details.

Indeed, the artwork and design has layout and language on the order forms that is nearly identical.  The stack of wristbands and use of bracelets and tags is the same, as well as the language "saves lives" Russell Decl., ¶ 30; Exhibit 15:



Both displays arrive in a clear cellophane wrapper with a visible transmittal letter:



Russell Decl., ¶ 31; Exhibit 16.  Medic Alert offers a direct copy of AMID's display, offers it for free (like AMID), and induces healthcare providers to set it up the same way, further damaging Plaintiff.  It even offers its displays to health care providers through its website at www.medicalert.org/display .

**C.  Breach of Non-Compete and Confidentiality Agreement**

Defendants' activity is by no means a mere coincidence.  Justin Noland, a former employee of AMID, left the company in May 2014, and despite an agreement not to compete, immediately went to work

for Defendant Medic Alert without AMID's knowledge.  Russell Decl. ¶ 34, Exhibit 1. (hereinafter "The Noland Agreement").  In fact, Noland initially misled AMID by telling them he was going to work for Exxon.  Russell Decl., ¶ 34.  The Noland Agreement is clear and required him not to work for a competitor for at least one year after leaving AMID.  See e.g. Exhibit 1, p 4 "Agreement Not to Compete."  But he did so nonetheless.  Medic Alert, knew or should have known, of Defendant Noland's former employment and hired him without regard to the agreement.  Mr. Tretheway, its Chairman, and CEO David Leslie were informed regarding AMID's concerns regarding its trade dress, unfair competition, violation of confidentiality and the non-compete agreement, and chose not to take action, or otherwise cease Medic Alert's unlawful actions.  Russell Decl., ¶ 35.  To the contrary, Medic Alert stated they would respect AMID's trade dress and that no further action would be necessary.  *Id.*

Medic Alert obtained valuable trade secrets including AMID's marketing information during the first year of Mr. Noland's employment and this provided Medic Alert a head start in creating and formulating its display so that it could begin using it as soon as possible.  Russell Decl., ¶ 36.  In a recent press release announcing an office move in April 5, 2016, Medic Alert admitted that over the past 18 months it had developed an "aggressive program to supply the medical community with information that properly directs patients to the Medic Alert IDs."  Russell Decl. ¶ 43;  Exhibit 19.  This coincides directly with Mr. Noland being at Medic Alert since June 2014, and the introduction of their infringing marketing display and wholesale theft of AMID's marketing scheme.

The Noland Agreement also required him not to disclose any confidential information or use any confidential information he learned while at AMID or after he left.  Exhibit 1, p. 2 "Obligation Not to Disclose Confidential Information."  This is important in that the entire marketing plan, the use of an expensive to design and execute display packaging, and the value of a referral base of healthcare professionals, and most critically the acceptance of the healthcare professionals and end users and success of the marketing method, were all proprietary to AMID.  Russell Decl. ¶¶ 36-37.  It is only with the knowledge of its success as a point of sale order form display and as a generator of sales, that one would

expend the significant resources and deploy this kind of marketing material nationally. *Id*. Medic Alert would not have embarked on this elaborate marketing scheme without Mr. Noland's participation and assurance that it would be a worthwhile marketing plan. Mr. Noland stole information from AMID that he knew to be confidential and used it for the benefit of Medic Alert. Medic Alert then took the information, with full knowledge of AMID's success, and slavishly copied every significant feature of the display and overall marketing technique. Russell Decl., ¶ 38-39.

### D. AMID's Copyrighted Work

AMID owns valuable copyright to the transmittal letter used in the AMID Packaging Display ("Transmittal Letter"). Exhibit 2. It is separately protectable under the Copyright Law and has been appropriated by Defendants. The transmittal letter is the first thing a potential health care professional sees when receiving the packaging and making a decision to display it on their counter. Medic Alert copied this letter in look and content as shown above, with direct copies of the wording, or near identical copying of wording. This constitutes copyright infringement.

## V. ARGUMENT

The Lanham Act provides for injunctive relief (among other remedies) for trademark infringement, unfair competition, and dilution. 15 U.S.C. § 1116(a). Similarly, the Copyright Act provides for injunctive relief. 17 U.S.C. § 502. To obtain preliminary injunctive relief, a plaintiff must show:

    (1)    a substantial likelihood of success on the merits;

    (2)    a substantial threat that failure to grant the injunction will result in irreparable injury;

    (3)    that the threatened injury to plaintiff outweighs any damage the injunction may cause defendants; and

    (4)    that the injunction will not disserve the public interest.

*Hoover v. Morales*, 164 F.3d 221, 224 (5th Cir. 1998); see also *Tiffany & Co. v. Verrett*, 656 F. Supp. 706, 709 (S.D. Tex. 1986). Consideration of each of these factors demonstrates that Plaintiff is entitled to a preliminary injunction in this case.

**A. Plaintiff is Highly Likely to Succeed on the Merits of its Claims**

    **1. Plaintiff is Highly Likely to Succeed on the Merits of its Trademark Infringement and Unfair Competition Claims**

The first factor in determining whether AMID is entitled to a preliminary injunction is a showing that the movant has a substantial likelihood of success on the merits.  In order to prevail on claims of trademark infringement and unfair competition under the Lanham Act, a plaintiff must establish ownership of a legally protectable mark, and infringement of that mark by demonstrating a likelihood of confusion. *See Bd. of Supervisors for La. State Univ. Agric. And Mech. College v. Smack Apparel Co.*, 550 F.3d 465, 474 (5th Cir. 2008), cert. denied, 129 S. Ct. 2759 (2009).  Ownership is determined by priority of use. *Union Nat'l Bank of Laredo, Tex. V. Union Nat'l Bank of Tex.*, Austin, Tex., 909 F.2d 839, 842-43 (5th Cir. 1990) ("The first one to use the mark is generally held to be the 'senior' user and is entitled to enjoin other 'junior' users from using the mark, or one that is deceptively similar to it.").  Here there is no question that Plaintiff owns a valid and protectable mark.

    **a. The AMID Display and Marketing Plan is Valid and Protectable Trade Dress**

"Trade dress is a concept which embraces the total image of a given product, including advertising materials and marketing techniques used to promote its sale." *Falcon Rice Mill, Inc. v. Cmty. Rice Mill, Inc.*, 725 F.2d 336, 337, n. 1 (5th Cir. 1984) (internal citations omitted).  Protectable trade dress includes "displays and other materials used in presenting the product to prospective purchasers." *Fun-Damental Too, Ltd. v. Gemmy Industries Corp.*, 111 F.3d 993, 999 (2d Cir. 1997) (citing Restatement (Third) of Unfair Competition § 16 cmt. a (1995).)  For example, the Southern District of New York found a kiosk display to be protectable trade dress. *Butterick Co. v. McCall Pattern Co.*, 222 U.S.P.Q. 314, 317 (S.D.N.Y. 1984) (cited with approval *Conference Archives, Inc. v. Sound Images, Inc.*, No. CIV. 3:2006-76, 2010 WL 1626072, at *11 (W.D. Pa. Mar. 31, 2010).

In the same way that AMID has developed and honed its sales technique and use of the AMID Display with health care professionals, courts have routinely protected sales techniques as trade dress, recognizing that consumers identify a source with these forms of marketing.  *See e.g.*, *John H. Harland Co.*

*v. Clarke Checks, Inc.*, 711 F.2d 966, 980 (11th Cir.1983) (Trade dress "involves the total image of a product and may include features such as size, shape, color or color combinations, texture, graphics, or even particular sales techniques."); *Original Appalachian Artworks, Inc. v. Toy Loft, Inc.*, 684 F.2d 821, 831 (11th Cir. 1982) (trade dress protection for sales technique for doll "adoption"); *Abercrombie & Fitch Stores, Inc. v. American Eagle Outfitters, Inc.*, 280 F.3d 619, 633 (6th Cir. 2002) (Abercrombie's in-store displays and a sales associate team constitute a "particular sales technique.").

The AMID Packaging Display is essentially a counter top catalog displaying facsimile products, permitting an end user to select and ultimately purchase the item through the use of the pull-off order form (or the internet, as directed by the pull-off order form).  This is no different than other marketing schemes that have been afforded trade dress protection.  *See e.g. Tools USA & Equip. Co. v. Champ Frame Straightening Equip. Inc.*, 87 F.3d 654 (4th Cir. 1996) (company's catalog constituted protectable trade dress); *Scan–Plast Industries, Inc. v. Scanimport America*, 652 F. Supp. 1156, 1161–62 (E.D.N.Y.1987) (where defendant had copied plaintiff's sales brochures, plaintiff had protectable trade dress rights in their brochures sufficient to support a cause of action under § 43(a)).  A marketing display, like the AMID Packaging Display, is protectable trade dress so long as it is distinctive and non-functional.  AMID's Packaging Display and Marketing Plan is clearly trade dress.

Elements of the trade dress claimed by AMID are the following:

1.  Marketing Plan of Counter Display Order Forms Package for easy mailing and delivery to health care professional offices and others;

2.  Metallic looking bracelet or tag components on the Display;

3.  See through opening in Display Cover as shipped;

4.  Banner wrapper around Order Forms;

5.  Integral pull-off Order Form with photos of products, including metal tag elements and bracelets;

6.  Clear Wrapper enclosing Display Mailer; and

7. Easy customer display setup for counter use.

These elements and others comprise protectable trade dress which has been stolen and copied by Defendant in both the AMID Packaging Display Trade Dress and AMID Marketing Plan.

**b. The AMID Mark is Distinctive and Nonfunctional**

An unregistered trade dress may be protectable under section 43(a) of the Lanham Act if the trade dress is distinctive and nonfunctional. *See TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 28-29, 121 S. Ct. 1255, 149 L. Ed. 2d 164 (2001); *Eppendorf-Netheler-Hinz GMBH v. Ritter GMBH*, 289 F.3d 351, 354-55 (5th Cir. 2002).

**i. The Amid Mark is Inherently Distinctive**

Trade dress can meet the distinctiveness prong of the protectability inquiry either by demonstrating that it is "inherently distinctive" or by showing that it has acquired distinctiveness through secondary meaning. *Shell Trademark Mgmt. B. v. And Shell Oil Co.*, 765 F.Supp.2d 884, 895 (S.D. Tex., 2011) (citing *Wal–Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 210 (2000). A mark whose "intrinsic nature serves to identify their particular source" is inherently distinctive. *Wal-Mart*, 529 U.S. 205 at 210. The AMID Packaging Display and Marketing Plan are inherently distinctive.

AMID's trade dress should be viewed as inherently distinctive because it is a form of product packaging used to promote and sell its actual products. "The Supreme Court and the Fifth Circuit have recognized that product packaging has a tendency to be inherently distinctive. *Wal–Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 212 (2000); *Chevron Chemical Co. v. Voluntary Purchasing Groups, Inc.*, 659 F.2d 695, 702-03 (5th Cir. 1981) (noting that "the possible varieties of advertising display and packaging are virtually endless"); *Sicilia Di R. Biebow & Co.*, 732 F.2d at 426, n.7 ("The wide range of available packaging and design options allows a producer to appropriate a distinctive identity without unduly hindering his competitors' ability to compete."); see also *Regal Jewelry Co., Inc. v. Kingsbridge Intern., Inc.*, 999 F. Supp. 477, 489 (S.D.N.Y. 1998) (noting "tendency for trade dresses to be inherently

distinctive because the whole universe of materials and designs is available for packaging").  As the Fifth

Circuit stated:

> It is so easy for a business man who wishes to sell his goods upon their merits to select
> marks and packagings that cannot possibly be confused with his competitor's that 'courts
> look with suspicion upon one who, in dressing his goods for the market, approaches so near
> to his successful rival that the public may fail to distinguish between them.'

*Chevron Chemical Co. v. Voluntary Purchasing Groups, Inc.*, 659 F.2d 695, 704 (5th Cir. 1981) (citing

*Florence Manufacturing Co. v. J. C. Dowd & Co.*, 178 F. 73, 75 (2d Cir. 1910).).

AMID's counter top display is analogous to the catalogs and brochures to which other courts have

afforded trade dress protection.  With its easel display of AMID's products with corresponding pull-off

order forms, it is essentially a countertop catalog.  The consumer views the display, takes a pull-off form

and later orders the specific product by making a selection from that form or on the Internet.  Out of the

universe of potential combinations of colors, design elements and ordering of those elements, AMID has

developed in its countertop display a unique advertising presentation and a particular sales technique.

Beyond the packaging analysis, Courts, including the Fifth Circuit, use two additional tests in

inquiring whether a trade dress is "inherently distinctive."  The first, the *Seabrook* test, considers:

> [1] whether it was a "common" basic shape or design, [2] whether it was unique or unusual
> in a particular field, [3] whether it was a mere refinement of a commonly-adopted and well-
> known form of ornamentation for a particular class of goods viewed by the public as a dress
> or ornamentation for the goods, or [4] whether it was capable of creating a commercial
> impression distinct from the accompanying words.

*Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 232 (5th Cir. 2010) (citing *Seabrook Foods, Inc.*

*v. Bar–Well Foods Ltd.*, 568 F.2d 1342, 1344 (C.C.P.A. 1978).)   The Seabrook factors are "variations on a

theme, rather than discrete inquiries."  *Id*. at 244.   The Fifth Circuit further noted in *Amazing Spaces* that

"[t]he first three of the Seabrook Foods 'questions are merely different ways to ask whether the design,

shape or combination of elements is so unique, unusual or unexpected in this market that one can assume

without proof that it will automatically be perceived by customers as an indicator of origin—a trademark.'"

*Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc.*, 783 F.3d 527, 541 (5th Cir. 2015) (citing *Amazing*

*Spaces*, 608 F.3d 225, 243–44 (internal citations omitted).

Here, the combination of elements of the AMID Packaging Display and Marketing Plan Trade Dress include its upper see through window displaying an example of AMID's metallic facsimile ID tag, the unique display of AMID products, pull-off order forms and wrap-around red tape that states "saves lives." It also includes a uniquely formatted cover letter that includes a left side panel with recommending health care providers and AMID's name and symbol at the upper left corner. This combination of elements in the AMID Packaging Display and Marketing Trade Dress were unique in the marketplace prior to Medic Alert's slavish copying of the same.

Under the second test for inherent distinctiveness, the *Abercrombie* test, marks are "classified in categories of generally increasing distinctiveness ... [:] (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful." *Amazing Spaces*, 608 F.3d at 232 (citing *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992) (citing *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2d Cir. 1976). "While suggestive, arbitrary, and fanciful marks are inherently distinctive, generic marks cannot be distinctive, and descriptive marks are distinctive only if they have acquired 'secondary meaning.'" *Nola Spice Designs*, 783 F.3d at 537. Though the Fifth Circuit has questioned the application of the *Abercrombie* test to marks other than words, it did not "go so far as to hold that the Abercrombie test is eclipsed every time a mark other than a word is at issue." *Id*. at 540 (citing *Amazing Spaces*, 608 F.3d at 243.).

As the Second Circuit has noted, packaging displays are suitable for classification under the *Abercrombie* test:

> "[A] store display of a product's packaging style creates an image of the product more readily separated from the product itself. Moreover, although there may be a finite set of ways to configure a product, the variety of packaging available for a given product is limited only by the bounds of imagination. These factors render packaging more suitable than product configuration for classification under the *Abercrombie* system as arbitrary or fanciful, suggestive, descriptive, or generic."

*Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.*, 111 F.3d 993, 1000-01 (2d Cir. 1997).

Marks are arbitrary that "bear no relationship to the products or services to which they are applied." *Nola Spice Designs*, 783 F.3d at 540 (citing *Amazing Spaces*, 608 F.3d at 241 (citation omitted).) Here, the

unique combination of elements of display, packaging and accompanying materials of a see through window, the positioning of facsimile plates above the order form, use of pull-off order forms and a uniquely formatted cover letter are arbitrary and not descriptive or generic. These elements bear no relationship to the medical identification products that AMID offers. Nor does AMID's display itself use any common shapes or shapes normally associated with the medical industry. The use of these combined elements yields an arbitrary and therefore inherently distinctive Packaging Display and Marketing Trade Dress.

Whether analyzed in the context of the *Seabrook* or *Abercrombie* tests, the AMID Packaging Display and Marketing Plan Trade Dress are inherently distinctive and meet the distinctiveness prong of the trade dress protectability analysis.

### ii.   The AMID mark is non-functional

In addition to distinctive, a mark must be non-functional to be protectable. The Supreme Court has held that, "the traditional test of functionality is whether the product feature 'is essential to the use or purpose of the article or if it affects the cost or quality of an article.' *Clearline Technologies Ltd. v. Cooper B-Line, Inc.*, 948 F.Supp. 2d 691, 700 (S.D. Tex. 2013) (citing *TrafFix Devices*, 532 U.S. at 32 (internal citations omitted).) "The word 'essential,' as used in *TrafFix*, is a term of art; '[a] feature is essential to the use or purpose of a product if it serves any significant function other than to distinguish a firm's goods or identify their source.'" *Id*. (citing *Poly–Am., L.P. v. Stego Indus., L.L.C.*, 3:08–CV–2224–G, 2011 WL 3206687, at *10 (N.D. Tex. July 27, 2011)) (citing *Qualitex*, 514 U.S. at 165–66).

Applying the traditional functionality test to the AMID Packaging Display and Marketing Plan Trade Dress, the elements, individually or in combination, serve no significant function other than to identify the source of the display, packaging and accompanying materials. The individual elements are not essential to the purpose of these items, that purpose being the advertising and promotion of AMID's medical identification bracelets in the market. The Display could be designed in thousands of other ways, with elements in infinite combinations. Nor do the elements of these materials have any impact on the

quality or cost of the actual product being marketed.  AMID's Packing Display and Marketing Plan Trade Dress elements are non-functional.

"*TrafFix* also recognized a second test for functionality in aesthetic features: "a functional feature is one the 'exclusive use of which would put competitors at a significant non-reputation-related disadvantage.'" *Clearline Technologies*, 948 F.Supp. 2d 691 at 701 (citing *TrafFix*, 532 U.S. at 24) (quoting *Qualitex Co.*, 514 U.S. at 165, 115 S.Ct. 1300).  "The Fifth Circuit holds that a design is legally functional, and thus not protectable, if it is one of a limited number of equally efficient options available to competitors and free competition would be unduly hindered by according the design trademark protection." *Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 775 (1992) (citing *Sicilia Di R. Biebow & Co. v. Cox*, 732 F.2d 417, 426 (1984).)  This "competitive necessity" test allows the Court to consider the feasibility of alternate designs.  *Id*. at 703 (citing *Eppendorf*, 289 F.3d at 356, 358.).  The Second Circuit upheld a finding that packing was non-functional where the party alleging functionality "failed to prove that it would be placed at a significant competitive disadvantage if not allowed to use this particular open-style box design, plastic blister and tie-in." *Fun-Damental Too, Ltd.,* 111 F.3d 993 at 1002 (2d Cir. 1997).

This competitive necessity analysis cannot support a finding of functionality as to AMID's Packaging Display and Marketing Plan Trade Dress.  Here of course, AMID's trade dress is not one of a limited number of equally efficient options.  Rather, as noted above, it is one of a limitless number of combinations available to marketers of medical identification bracelets.  Its combination of elements, the see-through window displaying the bracelet before the package is opened, the pull-off order forms and the distinctive cover letter are one combination of a limitless number of potential elements combined to market AMID's products.  AMID carefully selected the elements of its Packaging Display and Marketing Plan Trade Dress over time to create a unique identity in the eyes of their customers.  Enjoining Defendants from copying and infringing on this trade dress would in no way put them at a "non-reputation-related

disadvantage" or prevent them from efficiently competing with AMID.[2]  An original design is highly

feasible and would likely take far less effort to create than that required to slavishly copy every detail of

AMID's trade dress.  But in creating a unique design, Defendants would no longer confuse the public as to

the origin of AMID's products and capitalize on AMID's established goodwill, which was clearly their

intent in copying AMID's trade dress.  Even if the Court determined that certain elements of AMID's trade

dress were functional, "the Fifth Circuit has recognized that, although functional features cannot be

protected, an arbitrary combination of functional features, 'the combination of which is not itself functional,

properly enjoys protection.'  *Clearline, supra*, 932 F.2d at 1119.

Because the AMID Packaging Display and Marketing Plan Trade Dress are both inherently

distinctive and non-functional they are protectable.  AMID asks the Court to halt Defendants' infringement

of AMID's protectable mark and prevent future use of this channel for marketing Defendants' products.

### c.  Defendants' Use is Likely to Confuse Consumers

Defendants' use of the AMID Marketing Display Trade Dress and Marketing Plan is highly likely

to confuse consumers as to the source, affiliation and sponsorship of their products and services.  15 USC

1114(1),1125(a)(1)(A).  In determining whether a likelihood of confusing exists, the Fifth Circuit considers

a number of factors:

> (1) the type of mark allegedly infringed, (2) the similarity between the two marks, (3) the
> similarity of the products or services, (4) the identity of the retail outlets and purchasers,
> (5) the identity of the advertising media used, (6) the defendants' intent, and (7) any
> evidence of actual confusing. Courts also consider (8) the degree of care exercised by
> potential purchasers.  No single factor is dispositive, and a finding of a likelihood of
> confusion need not be supported by a majority of the factors.

*Smack Apparel Co*., 550 F.3 at 478; *see also Elvis Presley Enters c. Capece*, 141 F.3d 188, 194 (5th Cir.

1998); *American Auto. Assoc. v. AAA Ins. Agency Inc*., 618 F. Supp. 787, 792 (W.D. Tex. 1985).  A review

of these factors compels a conclusion of likelihood of confusion arising from Defendants' actions.

---

[2] Defendants' breach of the confidentiality agreement provides another basis to enjoin them from being
in this channel altogether for at least the pendency of this litigation.

The AMID Trade Dress and Marketing Plan are highly distinctive due to their inherent distinctiveness as well as AMID's long, extensive use and promotion of the Trade Dress. Defendants are using virtually identical imitations of the AMID Trade Dress in connection with their products and services. Both the distinctiveness and similarity factors weigh heavily in favor of a likelihood of confusion. The display by AMID was "unique, unusual" and "unexpected" in the health care professional space as to render it an identifier of source. *Amazing Spaces*, 608 F.3d at 243-44.

The similarity of the methods employed by the parties to transact their business also favors a likelihood of confusion. *Exxon Corp. v. Texas Motor Exchange, Inc*., 628 F.2d 500, 506 (5th Cir. 1980). Plaintiff and Defendants both promote their products to health care professionals using the counter display and order form configuration. Russell Decl. ¶¶ 17-18, 47. Additionally, until Noland left AMID, Medic Alert was not utilizing the professional health care office space for marketing through a product order form. It was only with the knowledge that such a marketing plan would work, that Medic Alert stole AMID's approach lock, stock and barrel and started marketing in professional health care offices. *Id*. at ¶ 37. This theft of confidential information is likewise enjoinable.

In addition, Plaintiff and Defendants operate Internet websites as an integral part of their business "which increase the likelihood of confusion between the two marks." *Washington Speaker Bureau, Inc. v. Leading Authorities, Inc*., 33 F. Supp. 2d 488, 499 (E.D. Va. 1999). Medic Alert shows its infringing displays on its website directed to health providers. See e.g. www.medicalert.org/display.

Defendants' intent also compels a finding of likelihood of confusion. This factor has been recognized as highly significant in the likelihood of confusion analysis. *Exxon*, 628 F.2d at 506 ("If, however, a plaintiff can show that a defendant adopted a mark with the intent of deriving benefit from the reputation of the plaintiff, that fact alone 'may be sufficient to justify the inference that there is significant similarity.'"). Here, Defendants have made extensive use of an imitation of AMID's trade dress in connection with their products and services, and have significantly expanded the geographic scope of their

use after, and despite, objections by Plaintiff.  Further, numeorus instances of customer confusion already exist.  See Flowers Decl., ¶¶ 4-9; 10-12 and Exhibits  17 and 20.

Further, there is compelling evidence that their use of the trade dress constitutes intentional copying. Noland worked at AMID after this marketing plan was conceived and launched for AMID.  Mr. Noland was the brand manager for an unsuccessful sport ID line and learned through insider information at AMID that there would be success in healthcare provider market, in contrast.  Noland left to work for Medic Alert and within 18 months Medic Alert created, designed and purchases thousands of the Counter Displays and then distributed them freely to the same health care professionals at which AMID already was operating. In some cases, they replaced AMID's display and in others they are at the same location.  Flowers Decl., ¶¶ 5-9.  The likely reaction by a consumer is to think these are related companies, affiliated with each other and working together.  This has actually happened.  *Id*. at ¶ 7.  Indeed, courts have held that intentional copying of a competitor's trade dress or mark "raises a presumption of secondary meaning which may be rebutted only by showing an alternative logical reason for copying." *Goscicki v. Custom Brass & Copper Specialities, Inc.,* 229 F.Supp.2d 743, 754 (E.D. Mich. 2002).  "'[E]vidence of intentional copying shows the strong secondary meaning of [the trade dress] because 'there is no logical reason for the precise copying save an attempt to realize upon a secondary meaning that is in existence.'").  *Shell Trademark Mgmt. B.V. v. Warren Unilube, Inc*., 765 F. Supp. 2d 884, 899, (S.D. Tex. 2011) (citing *Esercizio v. Roberts*, 944 F.2d 1235, 1239 (6th Cir. 1991)).

### 2. Plaintiff is Highly Likely to Succeed on the Merits of its Copyright Claims

This Court may also enjoin the use of aspects of Medic Alert's marketing scheme as copyright infringement under 17 U.S.C. § 502.  AMID's Copyright Registration relates to the Transmittal Letter that introduces a healthcare professional to the AMID's marketing materials.  The cover letter that accompanies the marketing display is wrapped within the cellophane and is the first thing a health care professional sees upon receiving the display package.  The content of that letter is copyrighted and Medic Alert's letter is a direct copy.  See Exhibit 2.  Apart from the layout and colors which are part of the protectable trade dress,

the letter itself is protected for its text.  See Russell Decl, ¶¶ 22-29.  A simple side-by-side comparison

establishes copying by Defendants.  See Exh. 11.

Just by way of example, the bottom text on the letter is virtually identical, and notably is called out

in a highlighted fashion.  See Russell Decl. ¶¶ 28-29.

AMID:

> To assist you when educating your patients on the importance of medical IDs, we are offering a complimentary engraved medical ID to all healthcare professionals.  To obtain your free medical ID teaching sample, visit www.IdentifyYourself.com/HCPID for details.

Defendant:

> To assist you when educating your patients on the importance of medical IDs, we are offering a complimentary engraved medical ID to all healthcare professionals. To obtain your free medical ID teaching sample, email marketing@medicalert.org for details.

The only difference is that Medic Alert directs customers to its website, rather than AMID's website.  Other

similarities are the opening lines and the side-list of health care entities that recommend IDs.  It is no

defense that these convey factual information.  The issue is how AMID configured its text, and Medic Alert

chose to copy it.  Copying is found where "an average lay observer would recognize the alleged copy as

having been appropriated from the copyrighted work.  " *Warner Bros., Inc. v. American Broadcasting Co*.,

654 F.2d 204,208 (2d Cir. 1981).  A simple comparison establishes copying in this case.  See *General*

*Universal Sys. v. Lee*, 379 F.3d 131, 279 F.3d 131 (5th Cir. 2004).

There is also no fair use in this context, nor does Medic Alert have any authorization to use

AMID's copyrighted material.  Applying the other factors for preliminary injunctive relief, requires an

injunction against the use of the letter in the Medic Alert materials.  See *Plains Cotton Co-op Association*

*of Lubbock, Texas v. Goodpasture Computer Service, Inc*. 807 F.2d 1256 (5th Cir. 1987).

**B.  Plaintiff Will Suffer Irreparable Harm Without Injunctive Relief**

"Irreparable harm requires a showing that: (1) the injury to Plaintiff[] is imminent (2) the injury

would be irreparable and (3) the Plaintiff [has] no other adequate legal remedy." *Gonannies, Inc. v.*

*Goupair.Com, Inc*., 464 F. Supp. 2d 603, 608 (N.D. Tex. 2006).  This court has help that "[w]hen a

likelihood of confusion exists, the plaintiff's lack of control over the quality of the defendant's goods or

services constitutes immediate and irreparable injury warranting entry of immediate injunctive relief."

*Quantum Fitness Corp. v. Quantum Lifestyle Ctrs.*, 83 F. Supp. 2d 810, 831 (S.D. Tex. 1990); *see also*

*Chemlawn Servs. Corp. v. GNC Pumps*, Inc., 690 F. Supp. 1560, 1569 (S.D. Tex. 1988), aff'd, 856 F.2d

202 (Fed. Cir. 1988); *Pro Hardware, Inc. v. Home Centers of America, Inc.*, 607 F. Supp. 146, 154 (S.D.

Tex. 1984), aff'd, 701 F.2d 408, 412 (5th Cir. 1983).  See also *Abraham v. Alpha Chi Omega*, 708 F.3d 614,

627 (5thCir. 2013) (likelihood of confusion, irreparable harm presumed.)

Because a likelihood of confusion and a likelihood of copyright infringement exist, this Court

should presume that irreparable harm exists.  Significantly, Defendants' infringement of the AMID Trade

Dress and Marketing Plan creates more than just a presumption of irreparable harm to Plaintiff.  Plaintiff

has spent decades advertising and promoting its AMID Mark, and has spent well over a $1 Million dollars

doing so.  See generally, Russell Decl.  ¶¶ 47-49.  As a result, the AMID Mark is an extremely valuable

asset to Plaintiff as an identified of its goods and of the substantial goodwill Plaintiff has earned over its

years in the market.  Russell Decl. ¶ 4.  Consumers are highly likely to inadvertently purchase Defendants'

products thinking they are Plaintiff's products.  Such a misperception among consumers would irreparably

damage the substantial goodwill that Plaintiff has built in its AMID brand.

The use of Plaintiff's copyrighted material has led to actual injury to Plaintiff in the form of lost

sales and market share.   Russell Decl., ¶ 48.  Customers that see the display use it to either directly order

with the order form, or go to Medic Alert's website and make orders.  Indeed, there is un-rebutted evidence

that customers have confused the two companies by using Medic Alert order codes on AMID order forms.

See Flowers Decl. ¶¶ 11-12.  Further, in some instances, AMID's display has been replaced altogether with

that of Medic Alert constituting a classic case of palming off.   Flowers Decl., ¶¶ 6-7.  The harm is ongoing

as well in that these displays can remain in a doctor's office for months, even a year.  Russell Decl. ¶ 47.

**C.   The Threatened Injury to Plaintiff Outweighs Any Damage the Injunction May Cause Defendants**

The harm to Plaintiff from Defendants' trade dress infringement and copyright infringement far

outweighs any inconvenience to Defendants if their use is enjoined.  As willful infringers, Defendants are

entitled to little equitable consideration.  "When considering the balance of hardships between the parties in

infringement cases, courts generally favor the trademark owner." *Krause Int'l, Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585, 587-88 (D.D.C. 1994). Any claimed harm by Defendants from being forced to cease infringing activity is not cognizable. *See Lakedreams v. Taylor*, 932 F.2d 1103, 1109, n. 12 (5th Cir. 1991); *see also Helene Curtis Indus. v. Church & Dwight Co.*, 560 F.2d 1325, 1333-34 (7th Cir. 1977) (finding that the hardship of requiring one who willfully infringes on another's mark to cease that infringement "merit[s] little equitable consideration"); *KFC Corp. v. Goldey*, 714 F. Supp. 264, 267 (W.D. Ky. 1989).) ("[C]ourts have usually held that where the plaintiff is an authorized trademark holder and the defendant is improperly using the trademark, then the threatened harm to the trademark owner outweighs the threatened harm to the defendant."). Here, the only consequence to Defendants of the Court's issuance of a preliminary injunction would be that Defendants would no longer be able to promote their business and products as though they were affiliated with or sponsored by Plaintiff. Defendants can continue operating their business using a marketing scheme of its own creation, but not that of AMID. Consequently, this factor weighs heavily in favor or preliminary injunctive relief.

There is no harm to the copyright infringer in preventing its continued use. Absent a fair use defense, which does not exist here, the public interest is best served by an injunction preventing further copyright infringement and use of AMID's protected works.

### D. The Injunction Will Not Disserve the Public Interest

Where a plaintiff's trademark is entitled to protection, "it necessarily follows that the preliminary injection served the public interest." *Sunbeam Prods., Inc. v. West Bend Co.*, 123 F.3d 246, 260 (5th Cir. 1997). Indeed, issuance of a preliminary injunction does "not frustrate competition, but will foster it." *Id.*; *see also Quantum Fitness*, 83 F. Supp. 2d at 810 ("The public interest is always served by requiring compliance with Congressional statutes such as the Lanham Act and by enjoining the use of infringing marks."). This view is widely held among federal courts. *See, e.g., American Dairy Queen Corp. v. New Line Prods.*, 35 F. Supp. 2d 727, 733 (D. Minn. 1998) ("Infringement and dilution of trademarks are inherently contrary to the public interest."); *Long John Silver's, Inc. v. Washington Franchise, Inc.*, 1980

U.S. Dist. LEXIS 16635, *13 (E.D. Va. June 24, 1980) ("There is an overriding public interest in preventing further public confusion, and the granting of a preliminary injunction will satisfy this need."). An immediate preliminary injunction is imperative to protect the consuming public from the likelihood of confusion between Defendants and AMID.

For all the same reasons, there is a public interest in preventing blatant copyright infringement. A preliminary injunction supports that public interest.

Courts have enjoined such activities and fashioned appropriate relief to prevent the ongoing harm. Removal and recall of infringing goods pending trial has been ordered. See e.g. *Positive Software Solutions, Inc. v. New Century Mortg. Corp.*, 259 F. Supp. 2d 531, (N.D. Tex. 2003) (Court ordered return of software (copyright); *Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.*, 111 F.3d 993 (2d Cir. 1997) (Court upheld district court order of removal and storage of infringing product from retail locations inside and outside US pending trial); *Jordache Enterprises v. Vaswani*, 1980 U.S. Dist. LEXIS 17424 (C.D. Cal. Dec. 30, 1980) (impoundment ordered on TRO); *Kraft Gen. Foods, Inc. v. Friendship Dairies, Inc.*, 1991 U.S. Dist. LEXIS 18213, 19 U.S.P.Q.2D (BNA) 1691 (S.D.N.Y. June 26, 1991) (court ordered impoundment of "all packaging labels, wrappers, receptacles, advertisements, brochures, circulars, promotional materials or the like."); *Oliva v. Poma Ramirez*, 2007 U.S. Dist. LEXIS 62011, 2007 WL 2436305 (D.P.R. Aug. 15, 2007) (court ordered impound and destruction of infringing advertising materials).

Courts have also ordered recalls and corrective advertising, and notice to third parties. See e.g. *Perfect Fit Indus. v. Acme Quilting Co.*, 646 F.2d 800 (2d Cir. N.Y. 1981). 9Trade dress – recall upheld); *Chere Amie, Inc. v. Windstar Apparel, Corp.*, 191 F. Supp. 2d 343 (S.D.N.Y. 2001) (recall); *Graphic Design Mktg. v. Xtreme Enters.*, 772 F. Supp. 2d 1029 (E.D. Wis. 2011) (recall required); *McNeil-Ppc, Inc. v. Merisant Co.*, 2004 U.S. Dist. LEXIS 27733, 2004 WL 3316380 (D.P.R. July 29, 2004) (product recall ordered pending trial); *Abbott Laboratories v. Mead Johnson & Co.*, 971 F.2d 6 (7th Cir. 1992) (trade dress case, district court ordered to consider corrective advertising as remedy on remand); *Eastman Kodak Co. v.*

*Photaz Imports*, 853 F. Supp. 667, 1993 U.S. Dist. LEXIS 19903 (W.D.N.Y. 1993) (defendant ordered to notify customers and public that infringing products not plaintiff's); *Miramax Films Corp. v. Columbia Pictures Entm't, Inc.*, 996 F. Supp. 294 (S.D.N.Y. 1998) (defendants ordered to provide instructions to recipients of infringing advertising for correcting same).

In addition to preventing further dissemination of the Defendants' infringing displays, Plaintiff requests that it be provided a list of the Medic Alert customers to whom an infringing display was delivered so that AMID can replace those displays with minimal interference with its customers. Given the sensitivity to litigation present in the health care professional office space, it will do further damage to AMID if Medic Alert attempts a recall directly, or notifies AMID customers that litigation is the cause of the replacement. See Russell Decl., ¶ 50.

## VI. CONCLUSION

For the foregoing reasons, Plaintiff is respectfully requesting that this Court grant its Motion for Preliminary Injunction and enter the proposed order filed herewith.

Dated: APRIL 28, 2016

THE PETRUZZI LAW FIRM

/s James D. Petruzzi
James D. Petruzzi
Attorney-in-charge
Texas Bar No. 15853280
SD Tex. Bar No. 13827
4900 Woodway, Suite 745
Houston, Texas 77056
Tel: (713) 840-9993
Fax: (713) 877-9100
Jim@Petruzzi.com

Attorneys for Plaintiff
AMID, Inc.

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this day, April 28, 2016, I caused a copy of the foregoing PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION to be electronically filed with the Clerk of the United States District Court for the Southern District of Texas, Houston Division by using the CM/ECF system, which will send notice of such filing to all counsel of record and certify that the foregoing was served with process on Defendants at the addresses shown below:

Medic Alert Foundation
5226 Pirrone Court
Salida, CA 95368

Justin Noland
1168 Mono Street
Manteca, CA 95337

<u>/s/ James D. Petruzzi</u>
James D. Petruzzi
