UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| AMID, INC., | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : Case No. 4:16-cv-01137 |
| MEDIC ALERT FOUNDATION UNITED | : |
| STATES, INC. d/b/a MEDIC ALERT | : |
| FOUNDATION and JUSTIN NOLAND, an | : |
| individual, | : |
| | : |
| Defendants. | : |
| | : |

**MEMORANDUM OF LAW IN SUPPORT OF OPPOSITION
OF MEDICALERT FOUNDATION AND JUSTIN NOLAND
TO PLAINTIFF'S MOTION FOR PRELIMINARY
<u>INJUNCTION</u>**

# <u>TABLE OF CONTENTS</u>

**Page**

NATURE AND STAGE OF THE PROCEEDING........................................................................1

STATEMENT OF THE ISSUE TO BE RULED ON BY THE COURT AND THE
      STANDARD OF REVIEW ...............................................................................................1

SHORT SUMMARY OF THE ARGUMENT ...........................................................................1

FACTUAL BACKGROUND ......................................................................................................2

ARGUMENT ..............................................................................................................................5

I.      PRELIMINARY INJUNCTION STANDARD....................................................................5

II.    AMID HAS NOT MET ITS BURDEN OF CLEARLY PROVING PROBABLE
      SUCCESS ON EITHER ITS TRADE DRESS OR COPYRIGHT CLAIMS....................5

      A.      AMID Cannot Meet Its Burden of Proving That It Has Valid, Distinctive,
              and Nonfunctional Trade Dress ...........................................................................6

            1.      AMID Has no Valid or Protectable Trade Dress in Its "Marketing
                  Plan"........................................................................................................8

                  a.      AMID's "Marketing Plan" Is an Unprotectible, Vague,
                         Functional Idea................................................................................8

                  b.      AMID Concedes That Its "Marketing Plan" Is not
                         Distinctive ......................................................................................9

                  c.      AMID Has not Met Its Burden of Proving That Its
                         Purported "Marketing Plan" is not Functional................................9

            2.      AMID Has No Valid Protectable Trade Dress in Its "Display" .................9

                  a.      AMID Has Failed to Meet Its Burden of Proving That the
                           "Display" Trade Dress is Inherently Distinctive ..........................11

                  b.      AMID Has not Met Its Burden of Proving that Its Purported
                           "Display" Trade Dress Is not Functional ......................................12

      B.      AMID Has Failed to Meet Its Burden of Proving Likelihood of Confusion.........14

      C.      AMID Has Failed Clearly to Prove Copyright Infringement and Its
               Request for Preliminary Injunctive Relief Is, in any Event, Moot .......................18

III.    AMID HAS FAILED TO DEMONSTRATE THAT IT IS LIKELY TO SUFFER
        IRREPARABLE HARM ON ITS "TRADE DRESS" CLAIM IN THE
        ABSENCE OF PRELIMINARY RELIEF ........................................................20

        A.    AMID's delay in seeking a preliminary injunction rebuts any arguable
              presumption of irreparable harm..........................................................20

        B.    AMID's Evidence Either Tends to Prove that Damages are Quantifiable or
              Is Without Foundation and Speculative................................................22

IV.     THE BALANCE OF EQUITIES FAVORS MEDICALERT .........................................24

V.      THE PUBLIC INTEREST WEIGHS AGAINST THE ISSUANCE OF A
        PRELIMINARY INJUNCTION IN THIS CASE ............................................25

CONCLUSION.....................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Federal Cases**

*Abercrombie & Fitch Stores, Inc. v. American Eagle Outfitters, Inc.*, 280 F.3d 619
    (6th Cir. 2002)...........................................................................................8, 14, 16-17

*Abraham v. Alpha Chi Omega*, 708 F.3d 614 (5th Cir. 2013)......................................21

*ADT LLC v. Capital Connect, Inc.*, 2016 U.S. Dist. LEXIS 65262 (N.D. Tex. May
    18, 2016) .................................................................................................................23

*Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225 (5th Cir. 2010)..................6

*Barbour v. Head*, 178 F.Supp. 2d 758 (S.D. Tex. 2001) ........................................ 18-19

*Board of Supervisors for LSU A&M Coll. v. Smack Apparel Co.*, 550 F.3d 465
    (5th Cir. 2008)........................................................................................................13

*Boston Professional Hockey Ass'n v. Dallas Cap & Emblem Mfg., Inc.*, 510 F.2d
    1004 (5th Cir. 1975)...............................................................................................24

*Bristol-Myers Squibb Co. v. McNeil P.P. C., Inc.*, 973 F.2d 1033 (2d Cir. 1992) .......16

*BuzzBallz, LLC v. JEM Bev. Co., LLC*, 2015 U.S. Dist. LEXIS 83652 (N.D. Tex.
    June 26, 2015).........................................................................................................22

*Chevron Chemical Co. v. Voluntary Purchasing Groups, Inc.*, 659 F.2d 695 (5th
    Cir. 1981) .........................................................................................................6, 10-11

*Citibank, N.A. v. Citytrust*, 756 F.2d 273 (2d Cir. 1985).............................................20

*Clearline Techs. Ltd. v. Cooper B-Line, Inc.* 948 F. Supp. 2d 691 (S.D. Tex. 2013)...... 7, 9, 12-13

*Doe v. Veneman*, 380 F.3d 807 (5th Cir. 2004) .............................................................5

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006). 991 F. Supp. ....................21

*Enrique Bernat F., S.A. v. Guadalajara*, Inc., 210 F.3d 439, 442 (5th Cir. 2000) .........1

*Enterprise Int'l, Inc. v. Corporation Estatal Petrolera Ecuatoriana*, 762 F.2d 464
    (5th Cir. 1985)......................................................................................................4, 22

*Eppendorf-Netheler-Hinz GmbH v. Ritter GmbH*, 289 F.3d 351 (5th Cir. 2002) ...................... 7-8

*Galvotec Alloys, Inc. v. Gaus Anodes Int'l, LLC*, 2014 U.S. Dist. LEXIS 86873
    (S.D. Tex. June 26, 2014) ......................................................................................21

*Gaylord Broadcasting Co. v. Cosmos Broadcasting Corp.*, 746 F.2d 251 (5th Cir. 1984) ............................................................................................................23

*GoNannies, Inc. v. GoAuPair.com, Inc.*, 464 F. Supp. 2d 603 (N.D. Tex. 2006) ................... 19-20

*H.G. Shopping Centers L.P. v. Birney*, 2000 U.S. Dist. LEXIS 21062 (S.D. Tex. Nov. 27, 2000) ......................................................................................................24

*Holland American Insurance Company v. Succession of Roy*, 777 F.2d 992 (5th Cir. 1985) ........................................................................................................23

*Kraft General Foods, Inc. v. Friendship Dairies, Inc.*, 1991 U.S. Dist. LEXIS 18213 (S.D.N.Y. June 26, 1991) .............................................................................24

*Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373 (2d Cir. 1997) ..........................8

*McKinney ex rel. NLRB v. Creative Vision Res., L.L.C.*, 783 F.3d 293 (5th Cir. 2015) ........................................................................................................24

*Mississippi Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618 (5th Cir. 1985) ..........................................................................................................5

*Moore v. Tangipahoa Parish School Bd.*, 507 F. App'x 389 (5th Cir. 2013) ..............................23

*Nola Spice Designs, L.L.C. v. Haydel Ents., Inc.*, 783 F.3d 527, 540 (5th Cir. 2015) ..........................................................................................................6

*Paulsson Geophysical Servs., Inc. v. Sigmar*, 529 F. 3d 303 (5th Cir. 2008) ............................21

*Plains Cotton Coop. Ass'n of Lubbock, Tex. v. Goodpasture Computer Serv., Inc.*, 807 F.2d 1256, 1261 (5th Cir. 1987) ...................................................................19

*Poly-America, L.P. v. Stego Indus., L.L.C.*, No. 3:08-CV-2224, 2011 U.S. Dist. LEXIS 82647 (N.D. Tex. July 27, 2011) ....................................................................6

*Pro Hardware, Inc. v. Home Centers of America, Inc.*, 607 F. Supp. 146 (S.D. Texas 1984) .................................................................................................5, 17

*Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 162-63 (1995) ......................................6, 7

*Quantum Fitness Corp. v. Quantum LifeStyle Centers, L.L.C.*, 83 F. Supp. 2d 810 (S.D. Tex. 1999) .................................................................................16, 18

*Randolph v. Dimension Films*, 634 F.Supp. 2d 779 (S.D. Tex. 2009) ......................................19

*Regal Jewelry Co., Inc. v. Kingsbridge Int'l, Inc.*, 999 F. Supp. 477 (S.D.N.Y 1998) ........................................................................................................10

*Rouf v. Cricket Communs., Inc.*, 2013 U.S. Dist. LEXIS 163545 (S.D. Tex. Nov. 18, 2013) ...................................................................................................22

*Sicilia De R. Biebow & Co v. Cox*, 732 F.2d 417 (5th Cir. 1984) .................................................10

*Stutts v. Tex. Saltwater Fishing Magazine, Inc.*, 2014 U.S. Dist. LEXIS 53839 (S.D. Tex. Apr. 18, 2014) ................................................................. 18-19

*T-Mobile US, Inc. v. AIO Wireless LLC*, 991 F. Supp. 2d 888 (S.D. Texas 2014)............ 14-15, 21

*TrafFix Devices v. Marketing Displays*, Inc., 532 U.S. 23, 32 (2001) ...........................................7

*Wal-Mart Stores, Inc. v. Samara Bros., Inc.,* 529 U.S. 205 (2000) ...................................6-7, 9-10

*Wireless Agents, L.L.C. v. T-Mobile USA, Inc.*, 2006 U.S. Dist. LEXIS 36590 (N.D. Tex. June 6, 2006)...........................................................................................22

## NATURE AND STAGE OF THE PROCEEDING

AMID, Inc. filed its complaint against MedicAlert Foundation and Justin Noland on April 27, 2016, and filed this motion for a preliminary injunction on April 28.

## STATEMENT OF THE ISSUE TO BE RULED ON BY THE COURT AND THE STANDARD OF REVIEW

The ultimate decision of whether to grant a motion for preliminary injunction is subject to the "abuse of discretion" standard. *Enrique Bernat F., S.A. v. Guadalajara*, Inc., 210 F.3d 439, 442 (5th Cir. 2000). Because the four requirements for a preliminary injunction are mixed questions of law and fact, the appellate court reviews this court's factual findings for clear error and its legal conclusions are reviewed *de novo*. *Id*.

## SHORT SUMMARY OF THE ARGUMENT

This lawsuit is an improper attempt by AMID to force MedicAlert into a business "combination" and/or monopolize a common form of marketing. Over a year ago, AMID knew about MedicAlert's doctors' office "display" that it now argues infringes its "trade dress," and the accompanying cover letter it argues infringes its purported copyright. AMID wrote to MedicAlert at that time about its concerns about what it described as MedicAlert's "carbon copy" of AMID's display, but it conceded that it had no legal basis to stop MedicAlert from using common, functional display elements such as cellophane wrapping, an easel stand invented over five decades ago, and a square pad of tear-off sheets. Accordingly, AMID did not ask, much less demand, that MedicAlert stop using the displays, and even acknowledged last September that the matter was "closed." MedicAlert thought the matter was indeed closed, so it proceeded at great expense to distribute another 100,000 displays in February and April of this year.

1

AMID's one-year delay proves it has not suffered any irreparable harm, which alone would justify denying its motion.  Aside from that, AMID does not come close to clearly establishing probability of success on the merits of its trade dress and copyright claims.  AMID was correct a year ago when it conceded that its display is not legally protected as "trade dress."  As for the copyright claim, the one-page cover letter is so insignificant and the copyright claim so contrived that AMID did not even mention it in its numerous communications a year ago.  The motion should accordingly be denied.

## FACTUAL BACKGROUND

MedicAlert is a 501(c)(3) charitable organization founded in 1956 by Dr. Marion C. Collins.  Declaration of David Leslie ("Leslie Decl. ¶ 3).  Collins and his wife formed MedicAlert after their daughter went into anaphylactic shock from a skin test.  *Id.*  The daughter recovered, but the Collinses realized that there was a critical need for medical identification bracelets to warn emergency medical personnel of dangerous medical conditions.  Leslie Decl. ¶ 3.  The Collinses designed an emblem that has been used since then—the caduceous or staff of Aesculapius, flanked by the words "MedicAlert" in red.  Leslie Decl. ¶ 4.



Since its inception, MedicAlert has consistently used red as part of its branding strategy, and for decades has used the phrase "saves lives" in its marketing and promotional materials.  Declaration of Melody Howard ("Howard Decl.") ¶ 6; Exs. 1 and 2.  (AMID's use of red and "saves lives" was copied from MedicAlert, not the other way around.)

2

MedicAlert connects its members to their health records via a medical ID.  Leslie Decl. at ¶ 5.  The IDs include MedicAlert's toll-free phone number along with the member's unique ID number, which is used by first responders and healthcare professionals to obtain information through MedicAlert's 24/7 call center staffed by trained specialists.  Leslie Decl. ¶ 5.  MedicAlert does not sell any medical IDs without also enrolling the member in one of its health information service programs.  Leslie Decl. ¶ 8.  For decades, MedicAlert has marketed its products by distributing brochures and order forms in doctors' offices.  Howard Decl.  ¶  9; *see also* Ex. 3.  In spring 2015, MedicAlert distributed about 50,000 displays to healthcare professionals that included samples of its medical IDs.  Howard Decl. ¶ 10.  *See also* Ex. 4.

On July 6, 2015, AMID's CEO, Rick Russell, proposed to  MedicAlert board chair Barton Tretheway that AMID and MedicAlert enter into a partnership or business combination.  Leslie Decl. ¶ 9; July 6, 2015 Russell email, Ex. 21.  MedicAlert's CEO, David Leslie, said he was not interested.  Leslie Decl. ¶ 10; July 20, 2015 email from Leslie to Russell, Ex. 5.  In the meantime, on July 14, Russell sent Leslie a letter claiming that MedicAlert's marketing director, Justin Noland, who had been AMID's marketing director from 2012 to April 2014, had violated his noncompete and "totally disregarded" his confidentiality obligations to AMID.  Ex. 6 .  Russell noted:  "What action AMID will take with respect to these breaches is still being evaluated.  I just thought you should have knowledge that it took place and that we take it as a serious violation."  *Id.*  Russell also enclosed a photograph of MedicAlert's and AMID's doctors office displays, and asserted that MedicAlert's was a "virtual carbon copy of a display we have developed and marketed for many years, well before Noland was a part of the marketing staff here."  Russell asserted that the MedicAlart display was based on AMID's "intellectual property"

3

that Noland "may have brought with him and shared with MedicAlert marketing management." *See* Ex. 6.

On July 29, however, Russell acknowledged that the display was "not trademarked or protected formally, [and] it is certainly in a gray area from a legal standpoint." July 29, 2015 email from Russell to Leslie, Ex. 7. Leslie replied to Russell in early September, telling him that MedicAlert would not terminate Noland since the purported non-compete had already expired. Ex. 8. Leslie noted that MedicAlert would "remain mindful of all the operating boundaries concerning marketing materials between our two companies . . . ." *Id*. But he did not agree to recall or stop using any displays or MedicAlert marketing campaigns. *Id*. Russell responded: "Sounds like the matter is closed in your mind, but I may come back to you with some final thoughts." Sept. 4, 2015 email from Russell to Leslie, Ex. 9. He never did. But on January 6, 2016, Russell again proposed to Leslie a "business combination" with MedicAlert, while making no mention of the displays or Noland. *See* Ex. 10, *Id*. Leslie did not respond. Leslie Decl. ¶ 16.

Thinking that the matter was "closed," in February of this year, MedicAlert distributed 25,000 displays featuring its Safe Return® service. Leslie Decl. ¶ 17. Then, in April 2016, MedicAlert distributed approximately 75,000 additional displays to healthcare professionals at a cost of over $350,000. *Id*. MedicAlert also distributed approximately 14,000 displays featuring its Kid Smart® program in that same month. *Id*.; *see also* Ex. 11. Despite Russell's failure to come back with any "final thoughts," AMID filed this lawsuit and this motion on April 27 and 28 without prior notice. Leslie Decl. ¶ 19. On May 16, AMID's counsel requested that the preliminary injunction hearing not take place before mid-August. Ex. 22. That would make it 13 months since Russell first wrote to Leslie about the "carbon copy" display.

**ARGUMENT**

**I.    PRELIMINARY INJUNCTION STANDARD**

A preliminary injunction is an "extraordinary and drastic remedy."  *Enterprise Int'l, Inc. v. Corporation Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985).  A preliminary injunction should issue in a trademark case "*only* if the Plaintiff *clearly* demonstrates: (1) a *substantial* likelihood that the Plaintiff will ultimately prevail on the merits; (2) that the Plaintiff will suffer irreparable injury unless the injunction issues; (3) that the threatened injury to the Plaintiff outweighs whatever damage the proposed injunction may cause the Defendant; and (4) that the injunction, if issued, would not be adverse to the public interest."  *Pro Hardware, Inc. v. Home Centers of America, Inc.*, 607 F. Supp. 146, 150 (S.D. Texas 1984) (emphasis supplied). If the movant fails to carry that burden on any of the four prerequisites, the court cannot grant the injunction.  *Mississippi Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985).  The extraordinary delay by AMID in filing this motion alone justifies denying it. Moreover, AMID has failed to carry its burden on the other three factors.

**II.    AMID HAS NOT MET ITS BURDEN OF CLEARLY PROVING PROBABLE SUCCESS ON EITHER ITS TRADE DRESS OR COPYRIGHT CLAIMS**

Although AMID's proposed order seeks relief relating to its trademark, trade secrets, and breach of contract (noncompete) claims, AMID's motion makes substantive arguments about only two of its claims:  trade dress and copyright infringement.  AMID Opening Br. at 11-21; Pl. Proposed Order. Yet AMID asks the Court to enjoin MedicAlert from using its supposed "Medical IDs Saves Lives!" trademark or anything that "resembles" it; to broadly enjoin MedicAlert from "marketing into health care professional offices using a counter display and order form that permits purchasing of medical ID products or directs customers to an internet site to order same"; and to order MedicAlert to terminate Justin Noland—who has worked for

5

MedicAlert for over two years and whose purported "noncompete" expired over a year ago.

Pl.'s Proposed Order.  Whatever the reason for this omission, AMID simply cannot obtain the

"extraordinary remedy" of a preliminary injunction based on claims it cannot be bothered to

advance in its brief.  It is axiomatic that "[t]he scope of injunctive relief is dictated by the extent

of the violation established."  *Doe v. Veneman*, 380 F.3d 807, 817 (5th Cir. 2004).  Accordingly,

the remaining portion of this brief will address the only two claims that AMID asserts would

justify a preliminary injunction:  trade dress and copyright.

A.    **AMID Cannot Meet Its Burden of Proving That It Has Valid, Distinctive, and Nonfunctional Trade Dress**

AMID never registered its purported "trade dress."  Accordingly, it is not entitled to the

presumptions afforded by registration.  AMID bears the burden of establishing that its claimed

trade dress is valid, distinctive, and not functional.  *Wal-Mart Stores, Inc. v. Samara Bros., Inc.,*

529 U.S. 205, 211 (2000); *Poly-America, L.P. v. Stego Indus., L.L.C.*, No. 3:08-CV-2224, 2011

U.S. Dist. LEXIS 82647, at *18-24 (N.D. Tex. July 27, 2011); 1 *McCarthy on Trademarks* § 8.1.

Distinctiveness can be shown either by establishing that the trade dress is inherently

distinctive or that it has acquired distinctiveness, i.e., secondary meaning.  *Wal-Mart*, 529 U.S. at

210-11.  AMID argues that its alleged trade dress in its "Packaging Display" is inherently

distinctive; it does not attempt to establish secondary meaning. AMID Opening Br. at 13-16.

AMID admits that, to be inherently distinctive, the putative mark in question must by "its

intrinsic nature serves to identify a particular source."  *Amazing Spaces, Inc. v. Metro Mini*

*Storage*, 608 F.3d 225, 246 (5th Cir. 2010).  The mark must "almost automatically tell[] a

customer that it refers to a brand and . . . immediately signal a brand or a product source."  *Wal-*

*Mart*, 529 U.S. at 210 (quoting *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 162-63

(1995)).  As one of AMID's own authorities puts it, "[i]f the features of the trade dress sought to

be protected are arbitrary and serve no function either to describe the product or assist in its effective packaging" then secondary meaning need not be proven. *Chevron Chemical Co. v. Voluntary Purchasing Groups, Inc.*, 659 F.2d 695, 702 (5th Cir. 1981). As AMID concedes, "[m]arks are arbitrary that 'bear no relationship to the products or services to which they are applied.'" AMID Opening Br. at 15 (quoting *Nola Spice Designs, L.L.C. v. Haydel Ents., Inc.*, 783 F.3d 527, 540 (5th Cir. 2015)). The mark must be "'so unique, unusual or unexpected in this market that one can assume without proof that it will automatically be perceived by customers as an indicator of origin—a trademark.'" *Id.* (quoting *Amazing Spaces*, 608 F.3d at 243-44).

AMID must also prove that its purported "trade dress" is nonfunctional. *Clearline Techs. Ltd. v. Cooper B-Line, Inc*. 948 F. Supp. 2d 691, 700 (S.D. Tex. 2013); *Wal-Mart*, 529 U.S. at 210. "The requirement of non-functionality 'prevents trademark law, which seeks to promote competition by protecting a firm's reputation, from instead inhibiting legitimate competition by allowing a producer to control a useful product feature.'" *Eppendorf-Netheler-Hinz GmbH v. Ritter GmbH*, 289 F.3d 351, 355 (5th Cir. 2002), quoting *Qualitex,* 514 U.S. at 164. To prove that its purported trade dress is nonfunctional, AMID must show that the relevant feature is not "essential" to the use or purpose of the display and does not affect its cost or quality. *TrafFix Devices v. Marketing Displays*, Inc., 532 U.S. 23, 32 (2001); *Clearline Techs*., 948 F. Supp.2d at 700. Importantly, a feature is "essential" in this context if "it serves any significant function other than to distinguish a firm's goods or identify their source." *Clearline Techs*., 948 F.Supp. 2d at 700, quoting *Poly-America,* 2011 WESTLAW 3206687, at *10 (N.D. Tex. July 27, 2011). "The availability of alternative designs is irrelevant." *Eppendorf,* 289 F.3d at 355; *Clearline Techs*., 948 F. Supp. 2d at 700.

1.    **AMID Has no Valid or Protectable Trade Dress in Its "Marketing Plan"**

a.    **AMID's "Marketing Plan" Is an Unprotectible, Vague, Functional Idea**

AMID claims trade dress in its "Packaging Display and Marketing Plan."  AMID Br. at p. 12.  AMID redundantly defines the trade dress in the "Marketing Plan" as "Counter Display Order Forms Package for easy mailing and delivery to health care professional offices and others."  *Id.*  AMID does not adequately describe what it is precisely about its "Marketing Plan" that somehow constitutes "trade dress."  It is critical that a plaintiff claiming rights in "trade dress" in a marketing concept define with particularity what is being claimed so that it does not seek protection for "an unprotectable style, theme, or idea."  *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 381 (2d Cir. 1997);  *Abercrombie & Fitch Stores, Inc. v. American Eagle Outfitters, Inc.*, 280 F.3d 619,  632 (6th Cir. 2002) (observing that complaint is "perplexing" because of broad definition of trade dress).  Trade dress protection "is not intended to create patent-like rights in innovative aspects of product design.  Trade dress protection, unlike patent law, does not foster innovation by preventing reverse engineering or copying of innovative product design features."  *Eppendorf,*  289 F.3d at 355.  "Therefore, trade dress protection extends only to incidental, arbitrary or ornamental product features which identify the source of the product."  *Id.*

AMID fails to identify anything about its claimed "Marketing Plan" trade dress that is "incidental, arbitrary, or ornamental."  AMID cannot obtain a monopoly over such a broad concept.  "Were the law to grant [AMID] protection of these features, the paucity of comparable alternative features that competitors could use to compete in the market for casual clothing would leave competitors at a significant non-reputational competitive disadvantage and would,

therefore, prevent effective competition in the market." *American Eagle*, 280 F.3d at 643. The so-called "Marketing Plan" does not qualify as valid trade dress.

### b. AMID Concedes That Its "Marketing Plan" Is not Distinctive

AMID does not argue that the purported "Marketing Plan" is "distinctive." Nor could it. The idea of mailing counter display order forms dates back at least to the 1950s. *See* Ex. 12. And MedicAlert was sending its marketing materials into doctors' offices for years before AMID. Exh. 3; Howard Decl. ¶ 9. Even if the "Marketing Plan" constituted valid trade dress, it obviously has failed to meet the "distrinctiveness" requirement as well.

### c. AMID Has not Met Its Burden of Proving That Its Purported "Marketing Plan" is not Functional

Even if the "Marketing Plan" qualified as trade dress, and even if AMID had proven distinctiveness, AMID has failed to meet its burden of proving that it is nonfunctional. As noted, to prove that the relevant feature is not "essential" to the use or purpose of the display and does not affect its cost or quality, AMID must prove that the feature does not serve "any significant function other than to distinguish a firm's goods or identify their source." *Clearline Techs*., 948 F.Supp.2d at 700. A marketing plan consisting of order forms for easy mailing and delivery is quintessentially functional. The plan obviously serves a "significant function other than to distinguish" AMID's bracelets or to identify their source. Accordingly, AMID has failed to meet its burden of proving that the "Marketing Plan" is not functional.

### 2. AMID Has No Valid Protectable Trade Dress in Its "Display"

Amid defines the claimed "display" "trade dress" as containing the following elements[1]:

2. Metallic looking bracelet or tag components on the Display;
3. See through opening in Display Cover as shipped;

---

[1] Element No. 1 is the "Marketing Plan" defined as "Counter Display Order Forms Package for easy mailing and delivery to health care professional offices and others."

4. Banner wrapper around Order Forms;
5. Integral pull-off Order Form with photos of products, including metal tag elements and bracelets;
6. Clear Wrapper enclosing Display Mailer; and
7. Easy customer display setup for counter use.

AMID Opening Br. at p. 12-13.

AMID argues that its purported "trade dress" "should be viewed as inherently distinctive because it is a form of product packaging. . . ." AMID Opening Br. at p. 13. It then cites to a product design case (*Wal-Mart*) holding that product design cannot be inherently distinctive, and three cases involving packaging. But the "Display" is not "packaging." Packaging, as the word implies and as AMID's cases demonstrate, contains or accompanies the product to be sold. *Chevron Chem.,* 659 F.2d at 702-3 (bottle for gardening supplies); *Sicilia De R. Biebow & Co v. Cox,* 732 F.2d 417, 423 (5th Cir. 1984) (bottles containing lemon and lime juice); *Regal Jewelry Co., Inc. v. Kingsbridge Int'l, Inc.*, 999 F. Supp. 477, 481 (S.D.N.Y 1998) (colored boxes containing novelty items). AMID's products are bracelets,[2] but the display does not serve to "package" any actual bracelets, nor can the consumer purchase any AMID products where the displays are set up. Indeed, AMID's displays do not present any actual products. The standard for showing inherent distinctiveness that applies to "packaging" does not apply here. *See Wal-Mart*, 529 U.S. at 215 (noting difference between product packaging and product design in terms of inherent distinctiveness). Like product design, a display such as AMID's "almost invariably serves purposes other than source identification" thereby rendering "inherent distinctiveness problematic." *Id.* at 213. Unlike product packaging, there is not a wide range of available display options involving an easel stand with a pad of tear-off sheets. *Compare Chevron Chem.,*

---

[2] Russell Decl. at ¶ 3 ("AMID is in the business of marketing, selling and servicing a variety of medical *identification* products, including bracelets, necklaces, dog tags, alert charms, and designer style products.") (emphasis supplied).

659 F.2d at 702-03 (graphics on garden-product bottle were "arbitrary" and served no function "either to describe the product or assist in its effective packaging"). The displays at issue here "describe the product" by depicting it, and the elements in which AMID claims protection relate to the overall effectiveness of the displays. AMID must therefore prove inherent distinctiveness.

### a. AMID Has Failed to Meet Its Burden of Proving That the "Display" Trade Dress is Inherently Distinctive

AMID neglects to mention that three of the elements of the display—Nos. 3, 4, and 6-- *are not part of the display seen by potential customers*. *Compar*e AMID's Ex. 3 (showing red wrapper and black cardboard on top) *with* AMID's Ex. 7 (wrapper and cardboard removed). These parts are all thrown away before the display is set up. The "Clear Wrapper" must be removed to access the easel display inside; indeed, as AMID ships its displays, most of the clear wrapper is covered by an opaque mailing label, obscuring much of the display. Ex. 13. The "See through opening in Display Cover as shipped"—made of black corrugated cardboard—is removed after shipment so one can see the "Metallic looking bracelet or tag components" underneath. *See* AMID's Ex. 7. Indeed, AMID tells whoever opens the package to do just that. Ex. 14 ("REMOVE"); *see also* AMID Opening Br. at 4 ("Upon removal of the top banner cover, a group of facsimile plates or bracelets are revealed . . . ."). Likewise, the "Banner wrapper" must be torn off so that the easel will stand up and so that one can tear off a page from the pad.

Once items 3, 4, and 6 are disposed of, the claimed "trade dress" in the actual display seen by a potential purchaser consists of only the facsimiles of products attached to the top of the easel, the order forms with product photos, and the "[e]asy customer display setup for counter use." AMID Opening Br. at pp. 12-13. As noted, AMID does not argue that the display has acquired secondary meaning, instead asserting that it is "inherently distinctive." *Id.* at 14. AMID thus must prove that the "features of the trade dress sought to be protected are arbitrary and serve

11

no function either to describe the product or assist in its effective packaging." *Chevron,* 659 F.2d at 702.  As AMID concedes, "[m]arks are arbitrary that 'bear no relationship to the products or services to which they are applied.'"  AMID Opening Br. at 15 (quoting *Nola Spice Designs*, 783 F.3d at 540).

All of these elements bear a strong "relationship to the products or services to which they are applied" and therefore are not arbitrary.  The replicas of the "bracelet or tag components" represent the products themselves; the "see through opening" permits the viewer to see the "bracelet component" underneath; the order form "with photos of products" shows the products; and the "clear wrapper" permits one to see the photos and replicas of the products.  The banner wrapper used during shipping is not arbitrary because it serves the function of protecting the tear-off sheets and holding the easel flat so it can fit in the shipping container, and the "[e]asy customer display setup for counter use" is described by AMID itself in purely functional terms.  Because the claimed elements of the purported trade dress are not "arbitrary" or "unique, unusual, or unexpected," AMID has failed to meet its burden of proving that its purported trade dress in its display is inherently distinctive.[3]

> **b.**    **AMID Has not Met Its Burden of Proving that Its Purported "Display" Trade Dress Is not Functional**

As noted, the actual display viewed by potential customers does not contain the clear wrapper, corrugated protective cardboard, or the "banner wrapper" protecting the tear-off sheets. *Compare* AMID's Ex. 3 *with* Ex. 7.  It is difficult to understand why a company would try to build a brand strategy in a display around elements that are supposed to be thrown out and not

---

[3] Although AMID mentions in passing the "saves lives" language and refers in its brief to "color," AMID is not claiming that any of the words, color, or graphical elements in the display form part of its trade dress.  AMID Opening Br. at pp. 12-13.  Accordingly, any references in AMID's brief to elements other than those listed on pages 12-13 should be ignored for purposes of deciding this motion.

displayed.  But even if these shipping-related elements were considered part of the "display," the fact that these items have to be *removed* after shipping but before set-up proves that these elements are functional.  The "Clear Wrapper" protects the display during shipping and permits viewing of what's inside.  It has no arbitrary or fanciful aspects to it, being a common material with a common purpose.  The Banner Wrapper serves to keep the display flat for mailing and to ensure that the order forms do not get folded back during shipment.  The "See through opening" permits the recipient to "see through" the protective cardboard before it is removed.  These elements clearly serve a "significant function other than to distinguish" AMID's display or identify its source.  *Clearline Techs.*, 948 F.Supp.2d at 700.

The same goes for AMID's display if it is considered without its shipping-related elements.  Indeed, AMID admits that its display is functional: "It is essentially a counter top catalog displaying facsimile products, permitting an end user to select and ultimately purchase the item through the use of the pull-off order form (or the internet, as directed by the pull-off order form)."  AMID Opening Br. at p. 12.  The concept of using an easel design and attaching a pad to it is commonplace (*see* Ex. 23), as is the idea of attaching sample jewelry products.  *See* Ex. 15 (compiling utility patents related to various displays); *see also TrafFix,* 532 U.S. at 29-30 (utility patent is "strong evidence" that features claimed are functional; features are statutorily deemed functional "until proved otherwise by the party seeking trade dress protection.").  And the samples must be affixed to the top so that the display will not topple.[4]  Because the display

---

[4] Nor can AMID argue that the combination of functional elements somehow adds up to a nonfunctional whole.  "'[I]n order to receive trade dress protection for the overall combination of functional features, those features must be configured in an arbitrary, fanciful, or distinctive way. . . . In other words, where individual functional components are combined in a nonarbitrary manner to perform an overall function, the producer cannot claim that the overall trade dress is non-functional.'"  *Clearline Techs.*, 948 F. Supp. 2d at 701.

serves a "significant function other than to distinguish" AMID's display or identify its source, AMID cannot meet its burden of proving that the display is not functional.

### B.    AMID Has Failed to Meet Its Burden of Proving Likelihood of Confusion

AMID has utterly failed to prove valid trade dress, distinctiveness, or nonfunctionalness, obviating the need to consider "likelihood of confusion."  But even if one were to consider it, AMID is far short of proving that likelihood of confusion is "probable not just possible."  *Board of Supervisors for LSU A&M Coll. v. Smack Apparel Co.*, 550 F.3d 465, 478 (5th Cir. 2008).  As one of AMID's authorities puts it, "'What is important is not whether people will necessarily confuse the marks, but whether the marks will be likely to confuse people into believing that the goods . . . emanate from the same source.'"  *American Eagle*, 280 F.3d at 648.  AMID cannot meet this standard.

Remarkably, AMID offers up no properly conducted survey.  *Compare T-Mobile US, Inc. v. AIO Wireless LLC*, 991 F. Supp. 2d 888, 923-27 (S.D. Texas 2014).  Instead, AMID argues that its use of the "trade dress" has been "long" and "extensive."  AMID Opening Br. at p. 19.  But the Russell declaration upon which AMID relies is evasive and lacking in detail.  Russell argues that "AMID has devoted substantial time, money, and effort to marketing and promoting its products," Russell Decl. ¶ 3, but he does not quantify that effort, or relate it to the particular *display at issue here*—what is depicted in AMID's Exhibits 3 and 7—as opposed to other displays.  Russell goes on to say that "[t]his display involves a number of features that AMID tested and optimized over many years before committing the extensive resources to have them printed, packaged and configured," *id.*, but he does not quantify that effort or say which particular "features" found in the display depicted in AMID's Exhibits 3 and 7 were "tested and optimized over many years."  *Id.*  Russell states that, "[o]ver ten years ago, AMID began [] placing attractive customer order information in health care professional offices," but we are left

14

in the dark as to what that "information" looked like, and whether it embodied the same "trade dress" as that allegedly present in Exhibits 3 or 7. *Id.* ¶ 5. Indeed, Russell admits that the displays have not been consistent, saying that "these materials were gradually changed and refined to reduce mailing costs."

Russell then argues that "[b]y 2010, AMID was using a display with elements similar to that in use today including a horizontally mounted order form, with simulated or facsimile bracelets and tag plates above it with a banner along the top. The mailing package was wrapped in clear cellophane material and was accompanied by an introductory letter from the company." *Id.* But we are left to wonder what the 2010 display looked like, and in what way the particular elements used in 2010 are "similar to that in use today." Finally, Russell states that "[i]n 2012, AMID introduced a see through corrugated top cover and a printed wrapper around the order forms with the slogan 'Medical IDs save lives!," but he does not show us whether the 2012 version is the same as the one at issue on this motion.

Had Russell been candid with the Court, he would have admitted that AMID has in fact distributed different-looking versions of its display over time. For example, AMID's August 2015 display[5] contains two pads of tear off sheets—one promoting bracelets and the other promoting "OneCallAlert," an entirely different product. Ex. 16. Unlike the display depicted in AMID's Exhibits 3 and 7, the pads are tall and thin, and only three bracelet pieces are shown at the top. The protective corrugated cardboard at the top, unlike the black-colored cardboard depicted in AMID's Exhibit 4, features the word "REMOVE" in large type, and contains pictures of two of the bracelet emblems, as well as a differently shaped cutout. The pads are wrapped with two bands rather than one, and they are predominantly black, rather than red. This lack of

---

[5] The date of the display is contained on the back of the tear-off sheets.

consistency destroys any argument that AMID owns a "strong mark"—or even any mark at all. *Compare T-Mobile US,* 991 F. Supp. 2d at 898-901 (magenta mark held strong because of consumer survey evidence, "billions spent on the pervasive and effective use of" it in a wide variety of advertising for 12 years).

Moreover, any arguable "confusion" would be dispelled because both AMID's and MedicAlert's displays prominently feature their respective names, in MedicAlert's case with its registered trademark appearing no fewer than *fourteen times*—and the domain name twice.  See Ex. 11.  Indeed, the largest lettering in MedicAlert's display is of the MedicAlert trademark—at the top of the easel and on the upper right of the tear-off sheets.  Three of the four medals pinned to the easel contain the MedicAlert trademark in large, red letters—with the ® symbol indicating its status as a registered trademark—as do eight of the medals depicted in the photograph on the tear-off sheets.  Where a defendant's mark is prominently displayed, it is "highly relevant" to confusion, going far to eliminate any.  *Bristol-Myers Squibb Co. v. McNeil P.P. C., Inc.*, 973 F.2d 1033, 1046 (2d Cir. 1992); *American Eagle*, 280 F.3d at 647-48 (where defendant's catalogue contained defendant's trademark, that indicated the defendant as the product's source; as a matter of law, trade dress was not similar).

AMID argues that MedicAlert intentionally copied AMID's display, but AMID presents no such evidence.  AMID Opening Br. at 20.  To be sure some of the functional aspects of the purported trade dress—a pad of tear off sheets, an easel, and shipping-related materials like cellophane and corrugated cardboard—are the same.  But AMID identifies no *arbitrary* features that are the same such that an intent to copy *protectable* elements of trade dress, as opposed to nonprotectable functions, could be inferred. To find bad faith, the Court must see evidence of "intent of deriving benefit from the reputation or goodwill" of AMID.  *Quantum Fitness Corp. v.*

16

*Quantum LifeStyle Centers, L.L.C.*, 83 F. Supp. 2d 810, 828 (S.D. Tex. 1999). Here, as noted, MedicAlert prominently uses its own trademark no fewer than 14 times and its own red hue from its longstanding style guide (which preceded AMID's use). Howard Decl. ¶ 7; Ex. 17. Likewise, the words "saves lives" have been used by and associated with MedicAlert and its affiliates for decades before they were ever used by AMID. Howard Decl. ¶ 8; Ex. 2. Finally, the tear off sheet features a large picture of a woman, whereas AMID's displays contain no depictions of any persons. These substantial visual differences when combined with the pervasive use of the MedicAlert trademark militate against a finding of bad faith.

Finally, AMID relies upon the declaration of its marketing director, Angela Flowers. AMID Opening Br. at 20. But Flowers' declaration is unreliable and contains inadmissible hearsay; moreover, it tends to *disprove* any likelihood or actual confusion regarding alleged trade dress. Flowers asserts that "[i]n early 2016, we began receiving information that our Ordering Form Display was being replaced with one from another company." Flowers Decl. at ¶ 3. She then notes that she "received further information from our representatives or customers that at several locations at which AMID, Inc. had delivered an Ordering Form Display, displays from MedicAlert had shown up." Flowers Decl. at ¶ 3. Accordingly, it would appear that the persons mentioned were aware that MedicAlert is a *separate* company from AMID, and that MedicAlert's displays are not AMID's, demonstrating the *absence* of confusion as to source. *American Eagle*, 280 F.3d at 648 (issue is not whether people will confuse marks, but whether marks will be likely to confuse people into believing that goods emanate from *same source*.).

Ms. Flowers next asserts that MedicAlert displays have replaced AMID displays. Flowers Decl. ¶¶ 5 & 6. But this proves nothing about *why* they were replaced, much less that replacement was caused by confusion as to *trade dress* or that people think the two displays

17

emanate from the same source.  Ms. Flowers also recounts what "[o]ne of our representatives" told Ms. Flowers about what "a clinic manager" named Flores supposedly told the "representative."  Flowers declares that, "When [a rep] asked [Flores] if [the AMID display] was still in their lobby she told our representative it was not."  *Id.* ¶ 7.  Thus Flores  was *not* confused, since she knew before being prompted that the AMID display was not in the lobby; instead a MedicAlert display was there, and Flores could tell the difference.  In any event, this is inadmissible double hearsay.  *Pro Hardware,* 607 F. Supp. at 152 (testimony by retail owners that customers expressed confusion is inadmissible hearsay).[6]

Flowers then notes a few instances in which persons with order codes from MedicAlert called AMID.  Flowers Decl. ¶¶ 10-12.  This proves nothing about either of the displays. Flowers does not assert that the persons who called AMID had ever even seen either AMID's or MedicAlert's display.  Indeed, that would be implausible:  The tear off sheet on MedicAlert's display obviously has *MedicAlert's* number and domain name, not AMID's.  The likely reason for the calls that AMID received from MedicAlert customers is that AMID purchases ad words from Google on the words "Medical ID" and variations of that phrase.  Ex. 18.  Thus AMID itself has created the "confusion" about which it complains.  In sum, AMID has utterly failed to prove that confusion relating to trade dress is probable.

### C.    AMID Has Failed Clearly to Prove Copyright Infringement and Its Request for Preliminary Injunctive Relief Is, in any Event, Moot

AMID's copyright claim is based on a one-page form letter consisting of boilerplate language, and short lists of leading American medical institutions.  *See* AMID Ex. 11.  To prove copyright infringement, AMID must prove that the "works" in question are "substantially

---

[6] Even if Flores' statement fell within a hearsay exception, the representative's recounting to Flowers of what Flores said is hearsay. *Compare Quantum Fitness,* 83 F. Supp. 2d at 830.

similar." Not all copying by a defendant is actionable copyright infringement. *Barbour v. Head*, 178 F.Supp. 2d 758, 762 (S.D. Tex. 2001). "Substantial similarity" means that AMID must clearly prove that MedicAlert's letter misappropriates "protectable" elements of AMID's letter. *Stutts v. Tex. Saltwater Fishing Magazine, Inc.*, 2014 U.S. Dist. LEXIS 53839 at \*8-9 (S.D. Tex. Apr. 18, 2014). In conducting the substantial similarity analysis, "the Court can consider only the protectable elements." *Id.* at \*11. Short phrases, slogans, and facts are not copyrightable. *Id.* at \*11; 37 C.F.R. §202.1(a). Where the similarities between two works are either insignificant or involve such unprotectable elements, the works are not substantially similar. *Randolph v. Dimension Films*, 634 F.Supp. 2d 779, 789 (S.D. Tex. 2009); *Barbour*, 178 F. Supp. 2d at 762 ("recitations of facts" "are not subject to copyright protection"). While there is some overlap in minor portions of language used in the two letters, AMID has failed to make a "clear" showing that infringement is "probable."

Moreover, even if AMID had met its high burden of proving infringement, AMID makes no argument that any such supposed infringement is causing it any harm at all, much less irreparable harm. *GoNannies, Inc. v. GoAuPair.com, Inc.*, 464 F. Supp. 2d 603, 608 (N.D. Tex. 2006) (citing *Plains Cotton Coop. Ass'n of Lubbock, Tex. v. Goodpasture Computer Serv., Inc.*, 807 F.2d 1256, 1261 (5th Cir. 1987) (presumed injury upon finding of likelihood of success on copyright claim not established in Fifth Circuit). AMID received MedicAlert's letter over a year ago and did not even mention it in its numerous communications with MedicAlert last summer and fall. Moreover, both parties' cover letters have each party's name and URL listed prominently, making it quite clear which entity is sending the letter. It is thus difficult to fathom how someone who actually saw either letter would be confused as to its origin, and without

19

confusion, even if there were infringement, AMID does not explain how it would impact its sales or good will.

That aside, neither AMID nor MedicAlert is using the cover letters that AMID argues would justify a preliminary injunction. AMID attaches a version of the cover letter that MedicAlert used in its spring 2015 distribution (AMID Ex. 11) but before this lawsuit was filed, the language in the letter was changed so that it does not contain the language emphasized by AMID in its brief at page 21. Compare Exs. 19 and AMID's Ex. 12. Moreover, since at least August 2015, AMID's letter differs from the one identified in its motion. *Compare* Ex. 20 with AMID's Ex. 12. AMID simply has not met its burden of proving "substantial similarity," and there is no need at all for a preliminary injunction on the copyright claim.

## III. AMID HAS FAILED TO DEMONSTRATE THAT IT IS LIKELY TO SUFFER IRREPARABLE HARM ON ITS "TRADE DRESS" CLAIM IN THE ABSENCE OF PRELIMINARY RELIEF

### A. AMID's delay in seeking a preliminary injunction rebuts any arguable presumption of irreparable harm.

"Absent a good explanation, a substantial period of delay militates against the issuance of a preliminary injunction by demonstrating that there is no apparent urgency to the request for injunctive relief." *GoNannies,* 464 F. Supp. 2d at 609. As the Second Circuit put it:

> Preliminary injunctions are generally granted under the theory that there is an urgent need for speedy action to protect the plaintiffs' rights. Delay in seeking enforcement of those rights, however, tends to indicate at least a reduced need for such drastic, speedy action. Significant delay in applying for injunctive relief in a trademark case tends to neutralize any presumption that infringement alone will cause irreparable harm pending trial, *and such delay alone may justify denial of a preliminary injunction for trademark infringement.*

*Citibank, N.A. v. Citytrust*, 756 F.2d 273 (2d Cir. 1985) (delay of 10 weeks in trademark case precluded finding of irreparable harm) (emphasis supplied).

As noted, the two companies' CEOs exchanged numerous communications about the displays and Noland's employment beginning in July 2015. *See* Exs. 5-9. Although Russell argued that MedicAlert's display was "a virtual carbon copy" of AMID's, he did not demand that MedicAlert stop using them. Ex. 6. Russell even acknowledged in July that the display was "certainly in a gray area from a legal standpoint." Ex. 7. After Leslie made no promise to stop using the display, Russell did not object, instead acknowledging that MedicAlert considered the "matter [to be] closed" and saying he might have some further thoughts, but never communicating any such thoughts. Until this lawsuit, AMID never raised the issue again, even though, in January 2016, Russell invited Leslie to do a "business combination." Even after filing this motion, AMID is in no rush to enjoin MedicAlert, requesting that any hearing not take place until at least mid-August. AMID's inaction in the face of its knowledge of MedicAlert's rollout of its display in spring 2015 is alone a sufficient ground to deny this motion. *Cf. Galvotec Alloys, Inc. v. Gaus Anodes Int'l, LLC*, 2014 U.S. Dist. LEXIS 86873, *8-9 (S.D. Tex. June 26, 2014) (no irreparable harm where plaintiff knew of competitor's existence for years and therefore could not claim it only had only recently learned of allegedly infringing trademark).

AMID argues that the irreparable harm is presumed when likelihood of confusion has been established. As set forth above, AMID has not established any such likelihood. That aside, this Court has noted that the case law in the Fifth Circuit suggests that any presumption of irreparable harm "is somewhere between shaky and reaffirmed." *T-Mobile US,* 991 F. Supp. 2d at 928. In *Paulsson Geophysical Servs., Inc. v. Sigmar*, 529 F. 3d 303, 312 (5th Cir. 2008), the Fifth Circuit expressly declined to adopt the presumption of irreparable harm for preliminary injunctions in trademark cases even where the movant has demonstrated a likelihood of confusion. And since *Paulsson*, as this Court has noted, other circuits have expressly abandoned

the presumption in light of the Supreme Court's decision in *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006). 991 F. Supp. at 928. AMID nonetheless relies upon *Abraham v. Alpha Chi Omega*, 708 F.3d 614, 627 (5th Cir. 2013) for the proposition that when likelihood of confusion is proven, irreparable harm is presumed. But that statement from *Abraham* is dicta, since the court was deciding whether laches should have barred a preliminary injunction, not whether there was irreparable harm. 708 F.3d at 625-627.

In any event, this Court need not decide whether there is a presumption of irreparable harm in the Fifth Circuit since any such arguable presumption has been rebutted. AMID's delay is powerful evidence of no irreparable harm, rebutting any arguable presumption. *BuzzBallz, LLC v. JEM Bev. Co., LLC*, 2015 U.S. Dist. LEXIS 83652, at *16 (N.D. Tex. June 26, 2015) ("Plaintiff's delay in seeking a preliminary injunction rebuts any presumption of irreparable harm."); *Wireless Agents, L.L.C. v. T-Mobile USA, Inc.*, 2006 U.S. Dist. LEXIS 36590, at *9 (N.D. Tex. June 6, 2006) (even if the court were to presume irreparable harm, that presumption would be rebutted by the plaintiff's delay in seeking injunctive relief).

**B.    AMID's Evidence Either Tends to Prove that Damages are Quantifiable or Is Without Foundation and Speculative**

Citing to Russell's declaration, AMID argues that "Plaintiff has spent decades advertising and promoting its AMID mark, and spent well over [] $1 Million dollars doing so." AMID Br. at p. 22. But Russell does not say that the $1 million was spent on the particular display at issue—the one shown in AMID Exhibits 3 and 7. It may have been spent on some of the very different displays that AMID has distributed. Russell also speculates that AMID displays are often displaced by MedicAlert displays, but he does not explain the foundation for such an assertion. Russell Decl. ¶ 49. Has Russell interviewed the many thousands of recipients? Russell argues that "it is becoming apparent that confusion has deceived nurses, doctors, pharmacists and

educators sufficiently to use the MedicAlert display due to the deceptively similar design," Russell Decl. ¶ 49,  but he identifies none of these people and does not explain the basis for his impression.  Finally, Russell quantifies the sales he believes have been lost because of MedicAlert's display, proving that damages are quantifiable and therefore disproving irreparable harm.  *Enterprise Int'l,* 762 F.2d at 474 (vacating preliminary injunction and holding that "[M]onetary loss alone . . . does not constitute irreparable harm sufficient to justify the issuance of a preliminary injunction."); *Rouf v. Cricket Communs., Inc.*, 2013 U.S. Dist. LEXIS 163545, at *8 (S.D. Tex. Nov. 18, 2013) (plaintiffs did not carry burden of proving irreparable harm where they could be "compensated for any alleged loss through monetary damages").

In short, "[c]learly demonstrating irreparable harm is a heavy burden to overcome."  *ADT LLC v. Capital Connect, Inc.*, 2016 U.S. Dist. LEXIS 65262, at *11-12 (N.D. Tex. May 18, 2016) (declining to find customer confusion based on declaration of one customer).  The part of Russell's declaration quantifying damages proves there is no irreparable harm, and the remaining parts of it are without foundation and speculative.  Flowers' declaration either proves there is no confusion, or is inadmissible.  *See Moore v. Tangipahoa Parish School Bd.*, 507 F. App'x 389, 397-99 (5th Cir. 2013) (granting partial stay of preliminary injunction order where movant offered two speculative affidavits); *ADT LLC v. Capital Connect, Inc.*, 2016 U.S. Dist. LEXIS 65262, at *11 (N.D. Tex. May 18, 2016) ("Assertions of injuries not supported by evidence fail to clearly establish irreparable harm."); *Holland American Insurance Company v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985)("Speculative injury is not sufficient; there must be more than an unfounded fear on the part of the applicant.").  In light of AMID's delay in bringing this action, its sworn testimony quantifying damages, and its failure to present evidence supporting irreparable harm, AMID has clearly not met its burden of proving irreparable harm.

## IV.   THE BALANCE OF EQUITIES FAVORS MEDICALERT[7]

By never demanding that MedicAlert cease distributing its displays, telling Leslie that the trade dress issue was a "grey area" based on, presumably, his attorney's advice, and acknowledging that the matter was closed, AMID lulled MedicAlert into believing that AMID was fine with MedicAlert's display, that no changes needed to be made, and that certainly no recall was in order.  Relying upon AMID's statements and continued inaction, MedicAlert devoted over $350,000 to a huge, second distribution of similar displays in spring 2016.  Given AMID's conduct, it would be unfair to now force MedicAlert to forego the benefit of its huge investment in the displays over the past 14 months.  In light of AMID's failure to explain why it waited over a year and why it never told MedicAlert to stop, it would be inequitable to grant the injunction.  *McKinney ex rel. NLRB v. Creative Vision Res., L.L.C.*, 783 F.3d 293, 302 (5th Cir. 2015)(movant's inaction and delay in pursuing injunctive relief weighed in favor of non-movant); *cf. H.G. Shopping Centers L.P. v. Birney*, 2000 U.S. Dist. LEXIS 21062, at *36-37 (S.D. Tex. Nov. 27, 2000) (plaintiff's pattern of sending cease and desist letters without legal action misled defendants into believing it would not sue).[8]

---

[7] As noted, although Noland's purported noncompete is mentioned in AMID's "factual background section," AMID does not argue that Noland should be fired now—over a year after his purported noncompete expired, nor could it so argue.  Even assuming the noncompete were enforceable, AMID "cannot enforce specifically the terms of the now-lapsed covenant to compete" because it long ago expired.  *Gaylord Broadcasting Co. v. Cosmos Broadcasting Corp.*, 746 F.2d 251, 254 (5th Cir. 1984).  Tellingly, AMID makes no mention of the great disruption such an order would entail for Mr. Noland and his family.  Noland Decl. ¶ 22.

[8] AMID's request for an order requiring a recall of the over 100,000 displays would be an "onerous . . . economic penalty."  *Kraft General Foods, Inc. v. Friendship Dairies, Inc.*, 1991 U.S. Dist. LEXIS 18213, at *15-16 (S.D.N.Y. June 26, 1991).  Such an economic penalty is particularly inappropriate where the plaintiff has delayed filing a motion for preliminary injunction.  In *Kraft*, the court was unwilling to issue a recall order where the plaintiff had delayed only "several months" before seeking relief.  *Id.* at * 15-16.

## V.    THE PUBLIC INTEREST WEIGHS AGAINST THE ISSUANCE OF A PRELIMINARY INJUNCTION IN THIS CASE

Granting AMID's request for an injunction would work against the public interest. Trademark laws, including the Lanham Act, are enacted as a means to protect public and business interests. *Boston Professional Hockey Ass'n v. Dallas Cap & Emblem Mfg., Inc*., 510 F.2d 1004, 1011 (5th Cir. 1975). The public's interest includes that of choice in a free market. In this case, if MedicAlert were not permitted to place its display in the offices of healthcare providers, AMID would essentially have a monopoly in that marketing channel for medical IDs by eliminating one of its strongest competitors from that channel. Accordingly, allowing AMID to monopolize a crucial marketing channel for medical IDs would contradict and undermine the public policy that the Lanham Act was created to protect.

## <u>CONCLUSION</u>

Because AMID has failed to prove even one, let alone all four, of the requirements for obtaining a preliminary injunction, the Court should deny AMID's motion.

Respectfully Submitted,

**DUANE MORRIS LLP**

David J. Wolfsohn (57974) (pro hac vice)
E-mail: djwolfsohn@duanemorris.com
Jessica Priselac (208524) (pro hac vice)
E-mail: jpriselac@duanemorris.com
30 South 17th Street
Philadelphia, PA 19103-4196
Tel: (215) 979-1000
Fax: (215) 979-1020

By: /s/ Thomas W. Sankey
Thomas W. Sankey, P.C.
E-mail: twsankey@duanemorris.com
1330 Post Oak Boulevard, Suite 800
Houston, TX 77056-3166
Tel: (713) 402 3900
Fax: (713) 402 3901

*Attorneys for Defendants*
*Medic Alert Foundation and Justin Noland*

Dated: June 9, 2017