IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| AMID, INC. | § | |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | Case No. 4:16-cv-01137 |
| | § | |
| MEDIC ALERT FOUNDATION UNITED | § | |
| STATES, INC. d/b/a Medic Alert Foundation | § | |
| and JUSTIN NOLAND, an individual | § | |
| | § | |
| DEFENDANTS. | § | |

**PLAINTIFF AMID INC.'S REPLY MEMORANDUM IN SUPPORT OF ITS
MOTION FOR PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**

I.      NATURE AND STATE OF THE PROCEEDING ................................................1

II.     SHORT SUMMARY OF THE ARGUMENT .......................................................1

III.    ADDITIONAL FACTUAL BACKGROUND ......................................................1

        A.      AMID's Trade Dress Should Not Be Too Narrowly Construed.................1

        B.      As the Director of Marketing for AMID, Justin Noland had Significant
                Dealings with AMID's Packaging Display and
                Marketing Plan........................................................................................3

        C.      AMID Promptly Commenced Litigation Upon Learning of
                National Distribution .................................................................................3

IV.     ARGUMENT.....................................................................................................4

        A.      AMID'S Trade Dress is Protectable, Inherently Distinctive and
                Nonfunctional ............................................................................................4

                1.      AMID's Trade Dress, its Product Display and Marketing
                        Scheme, is Properly Tailored and Defined ....................................5

                2.      AMID's Trade Dress is Inherently Distinctive.............................7

                3.      AMID's Trade Dress is Nonfunctional...........................................9

        B.      AMID Has Clearly Demonstrated a Likelihood of Confusion .................12

                1.      AMID has Presented Strong Evidence of a Likelihood of
                        Confusion....................................................................................12

                2.      Display of Trade Name Does Not Dispel Likelihood of
                        Confusion....................................................................................15

        C.      Medic Alert's Infringement of AMID's Copyrighted Material is
                Clear and Harm is Properly Alleged.........................................................17

                1.      Copyright Infringement ...............................................................17

                2.      Harm Caused by Copyright Infringement.....................................18

                3.      Copyright Claim is Not Moot .......................................................19

D.    Harm in the Absence of Preliminary Relief.................................................20

        1.    AMID Did Not Inexplicably Delay Seeking Injunctive Relief................................................................................................20

        2.    Irreparable Harm Presumed From Likelihood of Confusion....................................................................................22

        3.    Even if Irreparable Harm Were Not Presumed, AMID Has Put Forth Ample Evidence of Harm ......................................23

E.    Balance of Equities ...................................................................23

F.    Public Interest ...........................................................................25

V.    CONCLUSION ....................................................................................25

# TABLE OF AUTHORITIES

## CASES

*Abbott Labs. v. Sandoz, Inc.*
    544 F.3d 1341 (Fed. Cir. 2008)..............................................................23

*Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*
    280 F.3d 619 (6th Cir. 2002) ...............................................6, 8, 15, 16

*Abraham v. Alpha Chi Omega*
    708 F.3d 614 (5th Cir. 2013) ...........................................................22, 23

*Alcatel USA, Inc. v. DGI Techs., Inc.*
    166 F.3d 772 (5th Cir. 1999) ..............................................................17

*Amazing Spaces, Inc. v. Metro Mini Storage*
    608 F.3d 225 (5th Cir. 2010) ...............................................................9

*AM Gen. Corp. v. Daimlerchrysler Corp.*
    311 F.3d 796 (7th Cir. 2002) ..............................................................21

*Berg v. Symons*
    393 F.Supp.2d 525 (S.D. Tex. 2005) ...................................................14

*Best Cellars Inc. v. Grape Finds at Dupont, Inc.*
    90 F.Supp.2d 431 (S.D.N.Y. 2000) ....................................................7, 9

*Board of Supervisors for LSU A&M Coll. v. Smack Apparel Co.*
    550 F.3d 465 (5th Cir. 2008) ...........................................................12, 14

*Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*
    973 F.2d 1033 (2d Cir. 1992)..........................................................15, 16

*Bush Bros. & Co. (In re)*
    884 F.2d 569 (Fed. Cir. 1989)..............................................................15

*BuzzBallz, LLC v. JEM Bev. Co., LLC*
    2015 U.S. Dist. LEXIS 83652 (N.D. Tex. June 26, 2015) ...................22

*Citibank, N.A. v. Citytrust*
    756 F.2d 273 (2d Cir. 1985)................................................................21

*Clearline Techs., Ltd. v. Cooper B-Line, Inc.*
    948 F.Supp.2d 691 (S.D. Tex. 2013) .............................................11, 22

*Daily Instruments Corp. v. Heidt*

998 F.Supp.2d 553 (S.D. Tex. 2014) ................................................................20

*Emerald City Mgmt., L.L.C. v. Kahn*
2014 U.S. Dist. LEXIS 105929 (E.D. Tex. Aug. 1, 2014) ...................................22

*Eppendorf-Netheler-Hinz GmbH v. Ritter GmbH*
289 F.3d 351 (5th Cir. 2002) ..............................................................................12

*Ferrari S.P.A. Esercizio v. Roberts*
944 F.2d 1235 (6th Cir. 1991) ............................................................................14

*Falcon Rice Mill, Inc. v. Cmty. Rice Mill, Inc.*
725 F.2d 336 (5th Cir. 1984) ................................................................................5

*Fruit-Ices Corp. v. CoolBrands Int'l Inc.*
335 F.Supp.2d 412 (S.D.N.Y. 2004) ...................................................................15

*Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.*
111 F.3d 993 (2d Cir. 1997).................................................................7, 8, 15, 16

*Galvotec Alloys, Inc. v. Gaus Anodes Int'l, LLC*
2014 U.S. Dist. LEXIS 86873 (S.D. Tex. June 26, 2014) ...................................22

*General Universal Sys. v. Lee*
379 F.3d 131 (5th Cir. Tex. 2004) ......................................................................18

*H.G. Shopping Centers L.P. v. Birney*
2000 U.S. Dist. LEXIS 21062 (S.D. Tex. Nov. 27, 2000)...................................24

*Hybritech Inc. v. Abbott Labs.*
849 F.2d 1446 (Fed. Cir. 1988)...........................................................................20

*Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*
58 F.3d 27 (2d Cir.1995).......................................................................................9

*Kraft General Foods, Inc. v. Friendship Dairies, Inc.*
1991 U.S. Dist. LEXIS 18213 (S.D.N.Y. June 26, 1991)....................................24

*McKinney ex rel. NLRB v. Creative Vision Res., L.L.C.,*
783 F.3d 293 (5th Cir. 2015) ..............................................................................24

*Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc.*
783 F.3d 527 (5th Cir. 2015) ................................................................................9

*Randolph v. Dimension Films*
634 F.Supp.2d 779 (S.D. Tex. 2009) ..................................................................18

*Shell Trademark Mgmt. B.V. v. Warren Unilube, Inc.*
    765 F.Supp.2d 884 (S.D. Tex. 2011) ...............................................................16, 17

*Spectrum Creations, Inc. v. Catalina Lighting, Inc.*
    2001 U.S. Dist. LEXIS 11861 (W.D. Tex. July 31, 2001) ...................................19

*Stutts v. Tex. Saltwater Fishing Magazine, Inc.*
    2014 U.S. Dist. LEXIS 53839 (S.D. Tex. Apr. 18, 2014) ...................................18

*Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*
    932 F.2d 1113 (5th Cir. 1991) ......................................................................10, 11

*T-Mobile US, Inc. v. Aio Wireless LLC*
    991 F.Supp.2d 888 (S.D. Tex. 2014)...............................................12, 13, 22, 23

*Two Pesos, Inc. v. Taco Cabana, Inc.*
    505 U.S. 763 (1992).............................................................................................10

*Wireless Agents, L.L.C. v. T-Mobile USA, Inc.*
    2006 U.S. Dist. LEXIS 36590 (N.D. Tex. June 6, 2006) ...................................22

*Xtreme Lashes, LLC v. Xtended Beauty, Inc.*
    576 F.3d 221 (5th Cir. 2009) ......................................................................13, 14

**STATUTES**

15 U.S.C. §1052(f)..............................................................................................15

17 U.S.C. 106(2) ...............................................................................................20

**RULES**

37 C.F.R. §2.41(a)(2) .........................................................................................15

## I.    NATURE AND STATE OF THE PROCEEDING

Plaintiff AMID, Inc. ("AMID") moved for Preliminary Injunction on April 28, 2016 (Dkt. 5).  Defendants filed their Opposition to Plaintiff's Motion on June 9, 2016 (Dkt. 14).  AMID now files this reply in support of its motion.

## II.    SHORT SUMMARY OF THE ARGUMENT

Defendants' behavior is exactly what the Lanham Act was enacted to prevent: one business trading on the established goodwill and reputation of another through the use of a deceptively similar trade dress and marketing plan.  Defendants cannot and do not deny in their Opposition to Preliminary Injunction ("Opposition," Dkt. 14) that they slavishly copied AMID, Inc.'s Packaging Display and Marketing Plan.  Instead, through a series of specious arguments and notable misrepresentations of the factual record and the law, they try to distract the court by arguing either that AMID's Packaging Display and Marketing Plan is not protectable, or that no harm was done by their infringement.  In doing so, Medic Alert completely ignores case law clearly protective of these kinds of displays and marketing schemes.  Plaintiff's Motion for Preliminary Injunction should be granted.

## III.    ADDITIONAL FACTUAL BACKGROUND

### A.  AMID's Trade Dress Should Not Be Too Narrowly Construed

In analyzing the trade dress AMID seeks to protect in its Packaging Display and Marketing Plan, Defendants would have the Court discard certain portions of that trade dress that they assert are not ultimately put before the purchasers of AMID's medical identification bracelets.  Opposition p. 11.  But doing so ignores valuable components of AMID's claimed trade dress. Defendants urge the Court to discount:  1) the clear wrapper in which the entire display and cover letter are mailed, 2) the see-through opening in the corrugated cardboard and

3) the banner wrapper around the tear-off order forms.  Opposition, p. 11.  The trade dress AMID seeks to protect through this litigation is not broadly and only focused on an easel display; rather it seeks protection for the unique trade dress and marketing scheme that results in the countertop display's use in the offices of healthcare professionals and pharmacies nationally.  (AMID's Opening Brief, Dkt. 5, pp. 4-5; 1st Russell Decl., Dkt. 5-1, ¶¶12-14, Ex. 6-7.)

The participation of healthcare providers or their staff is required in order for the display to be put before patients who might ultimately purchase medical ID bracelets.  First, the package containing the countertop display and cover letter is conveniently received in the mail.  1st Russell Decl., ¶18.  The package is wrapped in cellophane and is accompanied by a cover letter (that Medic Alert has also slavishly copied).  *Id*. at ¶¶19, 22.  The employee must open the cellophane wrapper, through which much of the display is visible and review the cover letter contained within (wherein AMID offers a free medical ID bracelet to the healthcare provider).  *Id*. at ¶¶28-29[1].  Next, before the easel display is set up, one must review and remove the corrugated cardboard protective top with see-through opening displaying a single ID bracelet and then tear off the banner covering the tear-off order forms.  *Id*. at ¶19.  Only after the office staff conducts this visual inspection, and decides to voluntarily use the display, will the display be placed in a location in the office where it will be viewed by patients.  *Id*. at ¶19-20.  Without these preceding steps by a healthcare provider or her staff, the countertop display never gets into the view of the ultimate purchaser of the products being sold.  Therefore, it is this entire scheme that requires the active participation of healthcare professionals and their staff, that is the trade

---

[1] Defendants incorrectly state that "most of the clear wrapper is covered by an opaque mailing label, obscuring much of the display."  Opposition p.11.  The label shown in Exhibit 13 is not the one used in the mass mailing but rather a much larger one used when delivered to a single request such as that done by Defendants' counsel Mr. Wohlfson, when he ordered a display.  2nd Flowers Decl, ¶¶27-29.

dress that AMID seeks to protect, and Defendants' copying of portions of this scheme outside the view of the end purchaser should not be ignored.

### B.  As the Director of Marketing for AMID, Justin Noland had Significant Dealings with AMID's Packaging Display and Marketing Plan

Defendants allege that Mr. Noland had "little involvement" with the at-issue Marketing Plan and Packaging Display.  Noland Decl., Dkt. 14-4, ¶8.  However, Mr. Noland was quite involved with the mass mail program (the Product Display and Marketing program at issue) during his tenure as brand manager with the company.  2nd Declaration of Angela Flowers, ¶¶17-26 filed and served herewith.  Mr. Noland was present in multiple meetings and audits throughout 2011 to 2014 regarding the performance of AMID's mass mail program that discussed details by target list.  *Id*. at ¶18.  He also played a major role in the design process for print order forms for the mass mail program in 2014.  *Id*. at ¶¶19-22.  During that time, Mr. Noland was exposed to and managerially responsible for every aspect of the artwork involved in the mass mail program.  *Id*. at ¶20.  Further evidence demonstrating Mr. Noland's involvement is found in a review of the files that he chose to save to AMID's shared drive.  *Id*. at ¶¶24-25.  These include a "Mass Mail Marketing Audit Summary" and a "Direct Marketing Collateral Audit," both of which relate to the at-issue marketing scheme.  *Id*. at ¶26.  Surely not a coincidence, the order forms in Medic Alert's copycat display virtually mirror the design that Mr. Noland observed while at AMID in 2014.  *Id*. at ¶23.

### C.  AMID Promptly Commenced Litigation Upon Learning of National Distribution

When AMID became aware of Mr. Noland's employment and of the copycat mock-up display depicted on Medic Alert's website in mid-summer 2015, it decided to appeal directly to Medic Alert's Chairman, Barton Trethaway (David Leslie's succession as CEO had been announced, but had not become effective).  2nd Declaration Russell, ¶¶56-57 filed and served

herewith.  Mr. Russell's initial letter to Mr. Trethaway was dated July 2015, less than a month after learning of Mr. Noland being at Medic Alert and seeing the display on their website.  *Id*. at ¶57.  AMID does not deny that during this period it explored various business relationships that might resolve this dispute.  *Id*. at ¶57.  At no time did AMID state or intimate it accepted Medic Alert's use of the display or that it would not pursue further action.  Mr. Leslie's final letter to Mr. Russell on the matter was sent on August 27, 2015.  *Id*. at ¶61; Exh. 21.  In that late August 2015 letter, Medic Alert assured AMID that they would remain mindful of boundaries in marketing materials concerning AMID and Medic Alert.  *Id*. at ¶61.  It wasn't until January of 2016 that a non-marketing employee from AMID encountered one of the actual copycat displays at the office of their personal physician in Houston and reported the discovery to management.  *Id*. at ¶65.  Only then did AMID learn that Medic Alert was not keeping its pledge to respect boundaries and was distributing its copycat marketing materials to healthcare providers.  *Id*. at ¶66.  AMID immediately began to investigate how widely distributed these displays were in Houston.  *Id*. at ¶67.  AMID confirmed widespread distribution, and approached counsel to get advice on the matter in mid-February 2016.  *Id*. at ¶66.  The long shelf life of the displays constitutes additional irreparable harm and results in lost market share.  *Id*. at ¶68.  AMID commenced litigation and sought a preliminary injunction in April 2016.

## IV.    ARGUMENT

### A.  AMID'S Trade Dress is Protectable, Inherently Distinctive and Nonfunctional.

AMID seeks protection for its trade dress – the marketing scheme involving the mailing of distinctive promotional countertop displays to healthcare professionals with the intention that those professionals will place AMID's display before their patients.  Defendants argue that AMID's trade dress is not protectable through a divide and conquer approach, urging this Court

to analyze the trade dress solely by way of its individual components, and without looking at the sum of its parts.  But the Court should not be misled by these efforts.  Protectable trade dress in the Fifth Circuit encompasses the "total image" of a product, including its advertising materials and marketing techniques used to promote its sales.  Opening Brief, p. 11 (citing *Falcon Rice Mill, Inc. v. Cmty. Rice Mill, Inc.*, 725 F.2d 336 (5th Cir. 1984)).

As stated in AMID's opening memorandum, the trade dress at issue here does not consist solely of the countertop display, but also includes the entire marketing scheme surrounding the countertop display, which includes the packaging and cover letter that accompany the display when the same arrives at the offices of healthcare professionals.  Opening Brief, pp. 3-8; 1st Russell Decl., ¶¶12-14, 18-20, 22, 28-29.  The effectiveness of AMID's marketing plan necessarily involves not only the end purchaser of the medical ID products, but also the healthcare professionals and their staff to whom the countertop display and accompanying marketing materials are mailed.

Courts have consistently held that displays, particular sales techniques and marketing schemes are protectable trade dress.  Opening Brief, pp. 11-12.  And Defendants concede this point, not alleging that that displays and marketing schemes are necessarily unprotectable.  Rather, Defendants argue that AMID's particular trade dress is too vague to be protectable, is lacking inherent distinctiveness and is functional.

### 1. AMID's Trade Dress, its Product Display and Marketing Scheme, is Properly Tailored and Defined

Defendants ask the Court to completely disregard those elements of AMID's trade dress that are viewed by healthcare professionals, but not seen by individuals who may ultimately purchase AMID's products.  However, disregarding these elements would discount the necessary involvement of the healthcare professionals and their staff in the marketing scheme.  AMID has

carefully developed each element of this marketing scheme of the Packaging Display and Marketing Trade Dress over time in order to maximize its effectiveness. It requires that healthcare providers accept the countertop display for use in their offices, in effect, endorsing AMID's products to their patients. Defendants' copying of the elements only involving healthcare professionals causes confusion among those professionals, to AMID's detriment.

In challenging AMID's trade dress, Defendants cite *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, (6th Cir. 2002) for the proposition that the trade dress sought to be protected is too broad and would leave competitors with few options, at a competitive disadvantage. That case is readily distinguishable, as the plaintiff (Abercrombie) sought to protect as part of its trade dress the use of, *inter alia*, broad categories of fabric, such as cotton, wool and twill and widely used words, such as "performance." Here, by contrast, AMID simply seeks to protect the arbitrary elements and the arbitrary combination of those elements in use in its Product Display and Marketing Plan, as described above and in its Opening Brief, such that unwary healthcare professionals, their staff and their patients will not be misled as to which company's products are being marketed. AMID does not seek to protect broad functional elements (like easel displays) that would leave Defendants without reasonable competitive alternatives.

Contrary to Defendants' narrowing characterization that "a marketing plan consisting of order forms for easy mailing and delivery is quintessentially functional," the trade dress in the marketing scheme is not the display itself or its appearance. The trade dress sought in the marketing plan to be protected is the use of a mass-mailed, convenient counter top ordering mechanism knowing that it is cost effective method of marketing. In other words, apart from the slavish copying of the trade dress in the display, Medic Alert also copied the marketing

technique of a directly delivered mass mailed order form concept, involving an easy to set up display that until perfected by AMID and known in confidence to Noland to be effective, Medic Alert had not, and would not have invested in such a scheme nationwide.

### 2. AMID's Trade Dress is Inherently Distinctive

It seems obvious that displays and advertisement are more akin to a product packaging than to product configuration. However, Defendants assert, without authority, that because AMID's trade dress is not precisely packaging, it cannot be analyzed in the packaging context (where the distinctiveness requirement may be satisfied by proving "inherent distinctiveness"), but instead should be analyzed in the context of product design. Opposition, p. 9-11. First, the display is not a product design nor is it properly analyzed as such. To the contrary, in cases where other courts have examined the distinctiveness of trade dress in the context of display or marketing materials, they have generally examined whether that trade dress is inherently distinctive, making their analysis more akin to packaging than product design under *Wal-Mart*. *See Best Cellars Inc. v. Grape Finds at Dupont, Inc.*, 90 F.Supp.2d 431, 451 (S.D.N.Y. 2000) (decided post *Wal-Mart*, finding retail store's trade dress inherently distinctive based on "total visual image"); *Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.*, 111 F.3d 993, 1000-01 (2d Cir. 1997) (product packaging display in store inherently distinctive). Notably, while Defendants urge the Court to adopt a product design over packaging analysis, they provide the Court with not a single case that analyzes displays or marketing schemes in the product design context. There are few cases analyzing trade dress in the precise context before this Court, in the Fifth Circuit or elsewhere. But displays and marketing schemes, like packaging, are used to promote a product, and are not themselves being sold. Displays and marketing schemes are symbolic and not related to the configuration of the product itself. *See Fun-Damental*, *supra,* 111 F.3d at

1000-01.  Ultimately, displays and marketing schemes are intended to promote the brand, rather than be the product itself, and thus are more like packaging than product design.  AMID's trade dress satisfies this inquiry though "inherent distinctiveness" rather than necessitating a showing of secondary meaning.[2]

Turning to the substantive distinctiveness inquiry, Defendants assert, as discussed *supra* (pp. 5-6) that the Court should disregard certain elements of AMID's trade dress.  As noted above, the Court should not be misled.  Defendants then address the distinctiveness of certain remaining elements of AMID's trade dress, claiming that each of those "elements bear a strong 'relationship to the products or services to which they are applied' and therefore are not arbitrary."  Opposition, p. 11 (focusing on the *Abercrombie* inquiry for distinctiveness).  According to Defendants, because certain elements either depict medical ID bracelets, allow a medical ID bracelet to be viewed or because the IDs are functional, those elements are not distinctive.  First, this ignores the arbitrary aspects of AMID's trade dress.  By way of just a few examples, AMID carefully selected the arbitrary and unique arrangement of the metallic looking ID tags on its countertop display; Medic Alert's display bears the same shapes of tags, in a virtual mirror image arrangement.  Opening Brief, p. 6.  The arbitrary red tear off banner that covers the pull off order forms during shipping bears the arbitrary phrase "save(s) lives" in both competitors' displays.  *Id*. at 5-6.  The black corrugated cardboard that bears a see-through passage banner allowing the package recipient to view one ID tag prior to opening the package is unique (or was unique prior to Defendants' copying of the same).  *Id*. at 3.  Nowhere does AMID claim ownership of metallic looking tags, an easel display as such, an order form, a cardboard

---

[2] While Defendants urge this Court to consider AMID's trade dress in the product design context, they repeatedly state that AMID must prove inherent distinctiveness, which of course is inapplicable to the product design analysis.  See also fn. 7, *infra* regarding a finding of secondary meaning due to copying.

cover or paper wrapper.  Rather, it is the combination and use of non-functional elements that create the trade dress.[3]  And, of course, the overall trade dress as part of the marketing scheme does not claim exclusively the use of an easel, or and order form, but rather a combination of arbitrary elements that all constitute a unique and heretofore unknown marketing method in this field.

This focus on the individual characteristics of the individual elements of the trade dress ignores completely what should be the focus of the inquiry, the unique *combination* of these elements, which as a whole is indicative that the trade dress originates with AMID.  *See Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 243-44 (5th Cir. 2010); *Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc.*, 783 F.3d 527, 541 (5th Cir. 2015).

> Although each element of a trade dress individually might not be inherently distinctive, it is the *combination of elements* that should be the focus of the distinctiveness inquiry. Thus, if the overall dress is arbitrary, fanciful, or suggestive, it is distinctive despite its incorporation of generic [or functional] elements.

*Best Cellars*, *supra*, 90 F.Supp.2d at 451 (emphasis added) (citing *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 31, 32 (2d Cir.1995)).  The total visual image that makes up AMID's trade dress is inherently distinctive even if some individual element of the dress is partially generic or otherwise lacking in distinctiveness.

### 3.  AMID's Trade Dress is Nonfunctional.

Defendants further argue that AMID's trade dress is functional and therefore not protectable.  Once again, they attempt to divide and conquer, seeking to show functionality of individual elements of the trade dress, and claiming this proves the overall trade dress is functional and not protectable.  Common sense dictates that if a total absence of functional

---

[3] The Court is invited to do a "google" search of images for the term "counter display" where literally hundreds of various designs exist that are available to Defendants.

elements were a requirement, there could be no protectable trade dress at all.  Nevertheless, this argument has been tried and rejected before:

> "Two Pesos' argument reduces to a fallacious syllogism: (1) functional elements do not enjoy protection; (2) Taco Cabana's trade dress includes functional elements; (3) therefore Taco Cabana's trade dress does not enjoy protection."

*Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1119 (5th Cir. 1991) (*cert. denied on functionality*, *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 767 n. 6, (1992)).

Defendants make the unsupported claim that "there is not a wide range of available display options involving an easel stand with a pad of tear-off sheets."  Opposition, p. 10.  However, in arguing that AMID's trade dress is functional, Defendants admit that "[t]he concept of using an easel design and attaching a pad to it is commonplace (*see* Ex. 23), as is the idea of attaching sample jewelry products.  *See* Ex. 15 (compiling utility patents of displays)."  Opposition p. 13.  Defendants' exhibits, however, amply provide the Court with examples of displays that do not infringe on AMID's trade dress.  Defendants, nevertheless, ask the Court to believe that they slavishly copied AMID's trade dress because they had to and because options are limited in creating their own display.

And, of course, the choice of a vertical easel stand itself is arbitrary, not functional.  There are a multitude of other perfectly valid ways to advertise their products in the same environment without using an easel stand configured the same as AMID[4].  Medic Alert itself shows the Court its own alternative options for countertop displays.  Defendants' Exhibit 3.  Contrary to Defendants' claim, AMID is not seeking to protect the easel, it is seeking to protect the overall look and feel of its trade dress and marketing scheme.

---

[4] It bears repeating, AMID is not claiming trade dress to generic easel displays or pull-off order forms.  See Opening Brief, Dkt. No. 5, p. 12 listing elements of claimed trade dress.

Defendants' argument regarding functionality is predicated on assertion that AMID's trade dress does not contain any significant arbitrary elements.  The hollowness of their claim is evident by looking at the face of the two countertop displays.  AMID Ex. 10.  Even assuming, arguendo, that Medic Alert were forced by competitive market pressure to use an easel stand with tear-off sheet and product mock-ups attached, many arbitrary elements with no functional purpose are still apparent.  They include, *inter alia*:  the color of the easel; the number of products samples; the arrangement of product samples (round medal at upper left slightly overlapping round medal lower to the right, followed by horizontal oblong, followed by vertical oblong); the solid color band with white lettering at top; the proportion of banner display area to tear-off pad; the placement of the "saves lives" slogan at the upper right of the tear-off sheet and the near identical stacking of rubber ID bracelets on the order form.  Likewise, AMID has pointed out many other arbitrary elements of its trade dress, including visual elements of the mailed package, as well as the introductory letter, and, of course, the arbitrary manner in which the whole is assembled and delivered to create its unique look and feel.

Presuming to have shown that every element of AMID's trade dress is functional, Defendants cite *Clearline Techs., Ltd. v. Cooper B-Line, Inc.,* 948 F.Supp.2d 691, 701 (S.D. Tex. 2013) as authority for the claim that AMID cannot "argue that the combination of functional elements somehow adds up to a nonfunctional whole."  Opposition p. 13, n. 4.  But *Clearline* doesn't support this.  In that case, the court is referring to functional elements "combined in a nonarbitrary manner".  *Clearline*, 948 F.Supp.2d at 701.  *See also Taco Cabana,* 932 F.2d at 1119 ("a particular arbitrary combination of functional features, the combination of which is not itself functional, properly enjoys protection").  Even if we were to assume that all of AMID's

trade dress elements have functional features, they are still assembled in an arbitrary manner creating a unique look and feel, and deserve protection.

Defendants completely misstate the doctrine of functionality in citing to *Eppendorf-Netheler-Hinz GmbH v. Ritter GmbH*, 289 F.3d 351, 355 (5th Cir. 2002) that "the availability of alternative designs is irrelevant." Opposition , p. 7. That statement relates to product design, not product packaging, and is predicated on a finding that the design ***is*** functional, and thus proof of alternative designs does not undercut that finding. However, it does stand for the proposition that alternative designs are not powerful evidence of the lack of functionality. Because as noted in *Eppendorf,* a trade dress is functional "if it is essential to the use or purpose of the article" or has features that the "exclusive use of which would put competitors at a significant non-reputation-related disadvantage." *Id*. at 355-56. The combination of visual features used in the AMID display and the unique marketing program are neither essential to the function of the display or scheme or create an undue exclusivity that places Medic Alert at a significant disadvantage. Medic Alert would be at no competitive disadvantage if it were prohibited from using ***just one*** of the myriad options available to market medical ID business, the one developed by its competitor AMID.

**B. AMID Has Clearly Demonstrated a Likelihood of Confusion**

**1.     AMID has Presented Strong Evidence of a Likelihood of Confusion**

For purposes of preliminary injunction, AMID must prove only a likelihood of confusion.[5]  As this Court noted in *T-Mobile*, AMID is not required to demonstrate actual

---

[5] Defendants assert that confusion must be "probable not just possible," ostensibly paraphrasing *Board of Supervisors for LSU A&M Coll. v. Smack Apparel Co.*, 550 F.3d 465, 478 (5th Cir. 2008).  Opposition p. 14. Defendants have improperly presented to the Court paraphrased language from the Fifth Circuit and offered it as a quotation.  The actual quote is "[l]ikelihood of confusion is synonymous with a probability of confusion, which is more than a mere possibility of confusion."

confusion.  *T-Mobile US, Inc. v. Aio Wireless LLC*, 991 F.Supp.2d 888, 922-923 (S.D. Tex. 2014).  Certainly, AMID is not required to put on a survey in order to prove likelihood of confusion as Defendants imply.  Opposition, p. 14.  Whether actual confusion exists is just one of the eight factors that the Court should consider in determining whether a likelihood of confusion exists.  Opening Brief, p. 18.

Many of these factors, no one of which is dispositive, weigh heavily in AMID's favor. This includes the similarity between the two marks.  Here, the two trade dresses are virtually identical.  In a side-by-side review of the two marketing packages, as they arrive in the mail, are opened, and ultimately are assembled and viewed on display, the similarities are overwhelming. The overall appearance and arrangement of virtually identical arbitrary features is such that both healthcare providers and their staff, as well as the ultimate product purchasers, are likely to be confused as to the origin of the two advertisements and as to the relationship between the two companies.  *See Xtreme Lashes, LLC v. Xtended Beauty, Inc.,* 576 F.3d 221, 229 (5th Cir. 2009) (when viewed side-by-side marks are similar enough to suggest a common origin or association).

Another factor that weighs heavily in AMID's favor is the similarity of the products offered.  The countertop display itself makes the similarity obvious, with each displaying mock ID products.  The mock products are so similar and arranged identically such that it would be almost impossible to tell the two apart without close inspection.  And the unsolicited delivery of the displays for user set up as previously described constitute a way of doing business that is protectable trade dress and has caused actual confusion.

Defendants' intent also tips the likelihood of confusion scale forcefully in AMID's direction.  Defendants allege that AMID has put on no evidence of intentional copying, as no arbitrary features of the marketing scheme have been copied.  Opposition  pp. 16-17.  Notably,

Defendants do not deny intentional copying, rather they argue that nothing arbitrary was copied. But as discussed above, the proof on this point is found in the side-by-side review of the two marketing schemes. Without intentional copying, it would be impossible to yield two products that are so incredibly similar in so many arbitrary features. *Berg v. Symons*, 393 F.Supp.2d 525, 554 (S.D. Tex. 2005), citing *Ferrari S.P.A. Esercizio v. Roberts*, 944 F.2d 1235, 1239 (6th Cir. 1991) (copying strong evidence of secondary meaning and consumer identification).

The degree of care exercised by potential consumers also favors AMID. These bracelets and ID tags are relatively inexpensive purchases, costing as little at $20-30. 2nd Flowers Decl., ¶22 (Order Form). The product is not identified by brand itself, making customer discernment difficult. Further, "where items are relatively inexpensive, a buyer may take less care in selecting the item, thereby increasing the risk of confusion." *Xtreme Lashes*, 576 F.3d at 231 (citing *, Smack Apparel*, *supra*, 550 F.3d at 483).

And of course, AMID has put before the Court evidence of actual confusion and displacement in the form of the Flowers Declaration. Opening Brief, p. 20; 1st Flowers Decl., ¶¶4-12 (evidence of healthcare providers replacing AMID displays with Medic Alert displays; evidence of consumers placing orders with AMID using Medic Alert product codes). Again, this factor heavily favors AMID. Indeed, to the health care professional office, there is no cost factor at all as they display these products as a courtesy to their clients. Displacement by Medic Alert continues to occur due to confusion and likely on a belief that a "new" display has been delivered by AMID, not realizing it is a copycat version. See 2nd Russell Decl., ¶67-68.

Defendants also challenge the consistency of AMID's use of the at-issue countertop display. AMID has used a substantially similar display since 2010, and has used a visually identical display since 2012. 1st Russell Decl., ¶5. The display that Defendants presented to the

Court at their Exhibit 16 is indeed an AMID display, but for a wholly different recent marketing campaign, used in a test campaign for another product, and wholly irrelevant to the issues at hand.  2nd Flowers Decl., ¶30.[6]  AMID's use of the at-issue protectable trade dress and copyrighted material for more than five years certainly supports its claim for infringement[7].

### 2.      Display of Trade Name Does Not Dispel Likelihood of Confusion

Defendants would have the Court find that the presence of AMID's and Medic Alert's names on their respective displays necessarily dispels any potential confusion.  To support this claim, they cite two cases, *Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*, 973 F.2d 1033, 1046 (2d Cir. 1992); and *Abercrombie & Fitch Stores, Inc. v. American Eagle Outfitters, Inc*., 280 F.3d 619, 647-48 (6th Cir. 2002).

In *Bristol-Myers*, the court was dealing with a situation where "the trade name is the most prominent and distinctive feature in each of the two trade dresses" and, while finding in those specific circumstances the prominence of the trade name tended against confusion, the court also made it clear that "[w]e do not mean to intimate that the distinctive elements of any trade dress may be freely appropriated as long as the junior user clearly identifies the source of the goods," precisely what Defendants claim this case does allow.  *Bristol-Myers*, 973 F.2d 1033, 1047 (2d Cir. 1992).  Other courts have rejected Defendants' use of *Bristol-Myers*.  *See Fruit-Ices Corp. v. CoolBrands Int'l Inc.*, 335 F.Supp.2d 412, (S.D.N.Y. 2004) (Visual similarity not cured by display of respective logos, reliance on *Bristol-Myers* "misplaced".); *Fun-Damental Too, Ltd. v.*

---

[6] Defendants' Exhibit 16 is not properly before this Court, as there is no accompanying affidavit attesting to its authenticity.

[7] Indeed, uninterrupted use for over 5 years is a basis for establishing secondary meaning at the Trademark Office. Section 2(f) of the Trademark Act, 15 U.S.C. §1052(f), provides that "proof of substantially exclusive and continuous use" of a designation "as a mark by the applicant in commerce for the five years before the date on which the claim of distinctiveness is made" may be accepted as prima facie evidence that the mark has acquired distinctiveness as used in commerce with the applicant's goods or services.  See 37 C.F.R. §2.41(a)(2).  See also *In re Bush Bros. & Co*., 884 F.2d 569, 570 (Fed. Cir. 1989)

*Gemmy Indus. Corp.*, 111 F.3d 993, 1003 (2d Cir. 1997) ("the instant case involves trade names much less recognized than 'Tylenol' and 'Excedrin,' at issue in *Bristol-Myers Squibb*, and we think the district court had ample ground for concluding that consumers are more likely to remember the coin bank's packaging than its name."). Here, the displays use monikers like "identifyyoursel.com" and "MedicAlert.org;" neither are particularly well known, or act to distinguish the otherwise identical display.

Defendants would further mislead the Court, alleging that *American Eagle Outfitters* found, as a matter of law, trade dress was not similar because of the presence of defendant's trademark. While the presence of the trademark was a factor, the court found that the two at-issue catalogs "contain[ed] too many significant dissimilarities, in terms of both style, layout, and content" to find a similar overall appearance. *American Eagle*, 280 F.3d at 648[8]. In *Shell Trademark Mgmt. B.V. v. Warren Unilube, Inc.,* 765 F.Supp.2d 884 (S.D. Tex. 2011) the court closely examined the issue. After explaining that "even where a prominent brand-name is featured on a trade dress," the law is clear that "courts should look at all relevant factors in determining if there is a likelihood of confusion," the court rejected reliance on *Bristol-Myers* and found a likelihood of confusion despite the presence of trade names.

Moreover, even if the presence of trade names triggered the differentiation of AMID and Medic Alert in the mind of the observer, there is still the risk that the near identical overall visual impression of the two displays would lead to the conclusion that the two are associated. See *Shell*, 765 F. Supp. 2d at 900. There is no evidence that consumers or health care professionals even distinguish between "Medic Alert.org," "Identifyyourself.com" or American Medical IDs

---

[8] *American Eagle*, 280 F.3d 647-48 is completely inapposite as the trade dresses at issue were "so clearly distinguishable…to all but the most obtuse consumer," had a "strong visual impression of dissimilarity" and there was "little danger of a consumer picking up the two catalogs and not quickly realizing that they emanate from different sources."

when used in a virtually identical display and overall marketing scheme.  In facts, the evidence is

to the contrary.  1st Flowers Decl., ¶¶8-12.  In the instant case, there is a strong danger that

Defendants' copying of the display, in conjunction with its method of distribution, insinuating

Medic Alert's display into the position of AMID's display, is leading consumers to the mistaken

assumption that Medic Alert is affiliated with, related to, or a successor of AMID, even if they

observe that the Medic Alert display shows a different trade name.  The presence of AMID's and

Medic Alert's names on their respective displays does not dispel the confusion created by Medic

Alert in copying AMID's trade dress.

### C.  Medic Alert's Infringement of AMID's Copyrighted Material is Clear and Harm is Properly Alleged

#### 1.  Copyright Infringement

Similar to its approach to trade dress, Defendants do not deny AMID's claim that

Defendants copied AMID's letter.  Instead they argue that AMID's work shouldn't be

copyrightable, or, alternately, even if Medic Alert did infringe, that AMID hasn't argued that the

infringement caused it any harm.

Defendants first attack the copyrightability of AMID's work.  As with trade dress,

Defendants invite the court to fixate on details while ignoring the whole.  Defendants correctly

note that insignificant copying is not actionable.  But according to the Fifth Circuit's standard for

actionable copying, *Defendants'* copying is actionable.  "A copy is legally actionable if (1) the

alleged infringer actually used the copyrighted material to create his own work, and (2)

substantial similarity exists between the two works."  *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166

F.3d 772, 790 (5th Cir. 1999).  Medic Alert launched the copycat advertising within months after

Mr. Noland, who worked directly on the copied material while working for AMID, arrived at

Medic Alert.  2d Flowers Decl., ¶20.  This is a strong indicator that Defendants actually used the

copyright material to create their own work.  And even a cursory side-by-side review of the two letters makes their similarities obvious.  *See General Universal Sys. v. Lee*, 379 F.3d 131, 142 (5th Cir. Tex. 2004) ("[a] side-by-side comparison must be made between the original and the copy to determine whether a layman would view the two works as substantially similar.")

Defendants rely on *Randolph v. Dimension Films*, 634 F.Supp.2d 779, 789 (S.D. Tex. 2009) for the proposition that "[w]here the similarities between two works are either insignificant or involve such unprotectable elements, the works are not substantially similar." But in its Opening Brief (p. 3, *et seq*) AMID demonstrated many similarities between its letter and the copycat.  Medic Alert does not point to a single one of these noted similarities as either insignificant or involving unprotectable elements.  Rather, Medic Alert simply concludes that "AMID has failed to make a 'clear' showing that infringement is 'probable,'" an irrelevant non sequitur.  Opposition p. 19.  AMID has presented this Court with significant evidence that its letter is a copyright protectable work, and that Defendants have copied the same[9].

### 2.    Harm Caused by Copyright Infringement

Defendants next argue that, even if it had infringed, AMID makes no argument that Medic Alert's infringement is causing any harm.  This is not accurate.  AMID has most definitely argued that Medic Alert's infringement has caused AMID harm by causing lost sales and damage to goodwill.  Opening Brief, p. 22; 2d Russell Decl. ¶¶67-68.  To counter AMID's claim of harm, Medic Alert further argues that because each party's respective name is on its respective letter, it would be impossible for there to be confusion (this argument is addressed at p. 16-17, *supra*), and without confusion, there can be no damages.  Opposition , p. 19.  But Medic

---

[9] Defendants' case, *Stutts v. Tex. Saltwater Fishing Magazine, Inc*. 2014 U.S. Dist. LEXIS 53839, at *11 (Opposition p. 19), involved unprotectible "images [that] feature the state of Texas or the words 'Texas Saltwater Fishing.'"  Here, the two letters have extensive virtually identical language, format, and selected arbitrary information.

Alert cites no authority for the proposition that proof of confusion is required in order to prove harm in seeking preliminary injunction for copyright infringement.  As the Western District of Texas has succinctly stated, "[l]ikelihood of confusion is not an element of copyright infringement..." *Spectrum Creations, Inc. v. Catalina Lighting, Inc.*, 2001 U.S. Dist. LEXIS 11861, at *64 (W.D. Tex. July 31, 2001).  And of course, confusion is not an element that must be established in order to obtain a preliminary injunction.  Rather, the moving party must sufficiently allege irreparable harm should the infringer's conduct not be enjoined.  And, as stated above, AMID has alleged such harm in the form of damage to reputation and goodwill. Opening Brief, p. 22.

And even if it were true, as Defendants claim, that it would be impossible for a consumer to mistake the origins of the two letters, it would nonetheless be not just possible, but likely for the intentional copying to create confusion as to the relationship between two entities sending out identical looking letters.

### 3.    Copyright Claim is Not Moot

Finally, Defendants argue that AMID's claim for copyright infringement is moot because Medic Alert is no longer using the infringing letter identified in AMID's Exhibit 12.  Opposition, p. 20.  As a preliminary matter, in support of this position, Defendants refer to their own Exhibits 19 and 20 (these two exhibits are also improperly submitted, without accompanying affidavit and the Opposition statements about them also lack testamentary support).  But even if these exhibits were properly before the Court, they do not render the copyright infringement claim moot.  First, Exhibit 20 is an AMID letter that accompanies a wholly different and unrelated marketing campaign.  2nd Flowers Decl., ¶30.  Exhibit 20 is not relevant to the claims before this Court. Next, even if Exhibit 19 (the letter Medic Alert claims to be using in place of the infringing

AMID Exhibit 12) has replaced the infringing letter, Medic Alert's past copyright infringement is not excused, nor is the necessity for injunction alleviated[10].  AMID should not be forced to take Medic Alert's word that it will permanently stop infringing AMID's copyrighted work.  In fact, Medic Alert hasn't even made that claim.  Injunctive relief is necessary.

### D.  Harm in the Absence of Preliminary Relief

#### 1.  AMID Did Not Inexplicably Delay Seeking Injunctive Relief

Defendants claim AMID inexplicably delayed in seeking injunctive relief.  They argue this delay rebuts any presumption of irreparable harm and is therefore a stand-alone basis dictating the denial of injunctive relief[11].  But those are neither the facts nor the law.

> [A] showing of delay does not preclude, as a matter of law, a determination of irreparable harm. A period of delay is but one circumstance that the district court must consider in the context of the totality of the circumstances.

*Hybritech Inc. v. Abbott Labs.*, 849 F.2d 1446, 1457 (Fed. Cir. 1988)

To be sure, AMID did not seek injunctive relief the moment it first realized that Medic Alert showed a mock-up display on its website.  Nor was it required to, especially when Medic Alert assured AMID that it would respect boundaries between the two companies in the future.

Russell's statement regarding his lack of knowledge of the pertinent law on trade dress, apparently offered by Medic Alert as license for them to ramp up their trade dress infringement, instead demonstrates how, as a relatively small company without in-house legal representation, AMID did not initially recognize the nature of the offense being committed against it, explaining what might appear to be an initial lack of urgency.  See *Daily Instruments Corp. v. Heidt*, 998

---

[10] The "revised" letter Exhibit 19 still uses copyrightable features of the AMID letter and constitutes a derivative infringing work.  17 U.S.C. 106(2).

[11] Notably, Medic Alert does not assert an estoppel to the trademark claim itself, nor could it.  Medic Alert acted not in reliance on any statement implied or otherwise, but went forward for its own economic interests in secret and then intentionally misled AMID, inducing AMID to proceed cautiously before coming to the realization that Medic Alert had instituted a nationwide infringement and had no intention of respecting AMID's trade dress rights.

F.Supp.2d 553, 571 (S.D. Tex. 2014) ("Plaintiff's initial delay of perhaps four months does not preclude it from recovering the equitable preliminary relief it seeks in the present motion" where plaintiff, a small company without in-house attorney did not initially recognize nature of defendant's actions; preliminary injunction granted.)

It was not until the Spring of 2016 that AMID became aware that Medic Alert was actually placing its infringing displays in the offices of healthcare professionals, corresponding with Medic Alert's ramping up its infringement with an admitted "huge" new campaign of infringement.  Opposition , p. 24.  Upon learning of this new effort to attack AMID's business, AMID immediately sought legal representation, suit was quickly filed, and injunctive relief sought simultaneously.  2d Russel Decl., ¶¶61-67.  Plaintiff's delay is acceptable when a defendant begins to "gradually edge[] into causing serious harm or suddenly expands or changes its mark. 5 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 31:21 (4th ed. 2001)" *AM Gen. Corp. v. Daimlerchrysler Corp*., 311 F.3d 796, 823 (7th Cir. 2002).

In the case Defendants cite for the proposition that delay alone may justify denial of a preliminary injunction for trademark infringement, *Citibank, N.A. v. Citytrust*, 756 F.2d 273 (2d Cir. 1985), the Second Circuit did not find, as Defendants claim in their reply, that "delay of 10 weeks in trademark case precluded finding of irreparable harm".  Opposition , p. 20.  Instead, while they considered the "more than 10 week" delay, they also found:

> Any sense of urgency is further undercut by additional facts. Long before this dispute over its Long Island branch had arisen, Citytrust had advertised its services in the New York media, apparently, as Citibank asserts in its appellate brief, as early as 1980. . . .Yet, aside from administratively contesting Citytrust's attempt to register the Citytrust mark under federal trademark laws, Citibank sought no relief against defendants until it began this suit in September 1984.

*Citibank, N.A. v. Citytrust*, 756 F.2d at 277 (2d Cir. 1985).  This is hardly an apt analogy to the instant case.

Defendants' other "delay" case, *Galvotec Alloys, Inc. v. Gaus Anodes Int'l, LLC*, 2014 U.S. Dist. LEXIS 86873 (S.D. Tex. June 26, 2014) is even less convincing. In that case, the plaintiff had knowledge of the alleged infringer's trademark use for approximately 5 years before seeking relief. And, as in *Citibank*, the court did not find the delay dispositive, as Defendants claim, but merely one factor in its decision.

Medic Alert's other cases fare no better. In *BuzzBallz, LLC v. JEM Bev. Co., LLC*, 2015 U.S. Dist. LEXIS 83652, at *16 (N.D. Tex. June 26, 2015) an unexplained delay provided "an additional basis" for a denial the court had already wrapped up. In *Wireless Agents, L.L.C. v. T-Mobile USA, Inc.*, 2006 U.S. Dist. LEXIS 36590, at *9 (N.D. Tex. June 6, 2006) the plaintiff waited a year after filing suit to seek injunctive relief, hardly analogous to the present case where AMID sought injunctive relief virtually simultaneously with filing suit.

2. **Irreparable Harm Presumed From Likelihood of Confusion**

AMID notes that in the Fifth Circuit irreparable harm may be presumed from likelihood of confusion. *Abraham v. Alpha Chi Omega*, 708 F.3d 614, 627 (5th Cir. 2013). Medic Alert quotes this Court's analysis that the presumption of irreparable harm in the Fifth Circuit is "somewhere between shaky and reaffirmed." This range would seem to describe currently "precedential" fairly well. Indeed, while Medic Alert derides AMID's reliance on *Abraham,* it cannot cite any examples of courts declining to follow it. *See T-Mobile US, Inc. v. Aio Wireless LLC*, 991 F.Supp.2d 888, 926-8 (S.D. Tex. 2014) (Irreparable harm found.); *Emerald City Mgmt., L.L.C. v. Kahn*, 2014 U.S. Dist. LEXIS 105929, at *3-4 (E.D. Tex. Aug. 1, 2014) (Irreparable harm found.); *Clearline Techs., Ltd. v. Cooper B-Line, Inc.*, 948 F. Supp. 2d 691, 714-5 (S.D. Tex. 2013) (Irreparable harm found.) Because AMID has demonstrated a likelihood of confusion, irreparable harm should be presumed.

### 3. Even if Irreparable Harm Were Not Presumed, AMID Has Put Forth Ample Evidence of Harm

In its Opening Brief (p. 22), AMID put before the Court evidence of irreparable harm that has been and will continue to be caused by Defendants' actions. This harm is not only in the form of monetary damages as Defendants allege, but also in the form of ongoing damage to reputation, goodwill and ongoing potential loss of undeterminable sales. Opening Brief, p. 22; 1st Russell Decl., ¶4. The long shelf life of the displays, and the costs of ongoing vigilance and replacement means that every day AMID is potentially losing sales until the improper pads are replaced or run out. 2nd Russell Decl. ¶68. Continuing acts of infringement and a loss of sales and market share constitute irreparable harm. *Abraham*, *supra*, 708 F.3d at 627 (continuing acts); *Abbott labs. v. Sandoz, Inc.,* 544 F.3d 1341, 1362 (Fed. Cir. 2008) (lost sales and market share). Even if denied a presumption of irreparable harm, ample evidence of irreparable harm is before this Court to support AMID's motion for preliminary injunction involving these directly competitive entities. See e.g. 1st Russell Decl., ¶¶47-49; 2d Russell Decl. ¶¶65-68; *T-Mobile US, Inc.*, *supra* 991 F.Supp.2d 888, 901-903.

### E. Balance of Equities

There can be no question where the balance of equity lies in this case; it is with the victim of infringement, not the infringer. Defendants claim that AMID could have been more vigilant in protecting itself against Medic Alert's infringement, but because they weren't, Medic Alert was then free to infringe away. This is much the same argument that the burglar makes when claiming the homeowner's failure to lock their door was permission to steal and then come back and steal again. To support its argument Defendants makes the baseless presumption that AMID had received legal advice, and then falsely claims that AMID acknowledged the matter was closed. On the contrary, Mr. Russell indicated that he wasn't sure of the legal position, and did

not consider the matter closed.  Regardless, Defendants did not seek, nor receive (implicitly or otherwise), permission to copy AMID's trade dress.

Medic Alert cites two cases to support its equitable argument, *McKinney ex rel. NLRB v. Creative Vision Res*., L.L.C., 783 F.3d 293, 302 (5th Cir. 2015); and *H.G. Shopping Centers L.P. v. Birney*, 2000 U.S. Dist. LEXIS 21062, at *36-37 (S.D. Tex. Nov. 27, 2000).

*McKinney* is cited as a case in which "movant's inaction and delay in pursuing injunctive relief weighed in favor of non-movant."  Opposition p. 24.  This is not so.  *McKinney* is a labor case under § 10(j) of the National Labor Relations Act, 29 U.S.C. § 160(j).  This specialized area of law, with specific injunction requirements and relief available at an administrative level, is obviously not analogous to the instant case.  There is no discussion in *McKinney* of "movant's inaction and delay", or anything similar (although the District Court had previously issued an injunction over the defendant's delay-based objection).  The *McKinney* court found an injunction unnecessary because the matter was then before the NLRB for final decision.

In *H.G. Shopping Centers*, the plaintiff spent *20 years* demanding the defendant stop using its mark, and threatening litigation.  The extreme factual difference between that case and the instant case completely dissipates any analogous equitable authority.  It is simply apples and oranges.

Finally, Defendants cite *Kraft General Foods, Inc. v. Friendship Dairies, Inc*., 1991 U.S. Dist. LEXIS 18213, at *15-16 (S.D.N.Y. June 26, 1991), claiming that a recall of its infringing displays would be an "onerous economic penalty".  In *Kraft*, however, the item to be recalled was perishable sour cream, and its recall would have meant its destruction, not maintenance of the *status quo ante*.  This is clearly not the case with Medic Alert's infringing displays.  In fact, AMID has requested that it, not Medic Alert, conduct the recall, reducing the economic impact

on Medic Alert.  Further, Medic Alert's inability pending trial to use the infringing display is always the cost of an injunction when improper trade dress is involved.  There is no way to resolve this ongoing irreparable harm without requiring complete withdrawal of the infringing displays that live on for many months or years after placement.  2nd Russell Decl. ¶68.

As stated in the Opening Brief (p. 23), the equitable balance in a case of trademark infringement is presumed to lie with the victim of the infringement.  Defendants have failed to show that in this case how they have somehow gained the equitably favorable position.

### F.  Public Interest

Public interest is served by compliance with the Lanham Act.  Opening Brief, p. 23-24. Defendants' argument that an injunction here is contrary to public policy as AMID would be allowed to monopolize a marketing channel if the injunction were granted is completely without support.  AMID does not seek to deprive healthcare professionals from access to medical IDs.  It simply seeks to bar Defendants from doing so in a manner that infringes AMID's protectable trade dress and copyright material.

## V.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court grant its Motion for Preliminary Injunction and order the relief requested in its Proposed Order (Dkt. 5-3).

Dated: JUNE 27, 2016

THE PETRUZZI LAW FIRM
/s/ James D. Petruzzi
James D. Petruzzi
4900 Woodway, Suite 745
Houston, Texas 77056
Tel: (713) 840-9993
Fax: (713) 877-9100
Jim@Petruzzi.com


Attorneys for Plaintiff
AMID, Inc.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this day, June 27, 2016, I caused a copy of the foregoing PLAINTIFF AMID INC.'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION to be electronically filed with the Clerk of the United States District Court for the Southern District of Texas, Houston Division by using the CM/ECF system, which will send notice of such filing to all counsel of record.

<u>/s/ James D. Petruzzi</u>
James D. Petruzzi