# EXHIBIT A



US 20040060211A1

(19) **United States**

(12) **Patent Application Publication** (10) Pub. No.: **US 2004/0060211 A1**

Thomas et al. (43) **Pub. Date:** **Apr. 1, 2004**

(54) **DISPLAY FOR COLLECTIBLES**

(76) Inventors: **Diane Lynn Thomas**, Queensville (CA); **Linda Joy McClure**, Georgetown (CA)

Correspondence Address:
**MILLER THOMPSON, LLP**
**20 QUEEN STREET WEST, SUITE 2500**
**TORONTO, ON M5H 3S1 (CA)**

(21) Appl. No.: **10/435,459**

(22) Filed: **May 12, 2003**

**Related U.S. Application Data**

(60) Provisional application No. 60/413,746, filed on Sep. 27, 2002.

**Publication Classification**

(51) Int. Cl.⁷ ....................................... G09F 1/00

(52) U.S. Cl. ....................................... 40/124.11

(57) **ABSTRACT**

A display for collectibles includes a first portion or wall and second portion or wall. The first and second walls are joined at one end thereof and together provide a self-supporting structure. Each of the first wall and second wall has a display surface. The display surface is puncturable for mounting one or more display pins in a variety of positions and patterns. The display surface is also suitable for display of photographs, labels, stickers and the like, or any combinations thereof.







**FIG. 3**

# DISPLAY FOR COLLECTIBLES

## FIELD OF THE INVENTION

[0001] This invention relates in general to a display for pins and other collectible items. This invention relates more particularly to a self-supporting display for pins and other collectible items.

## BACKGROUND OF THE INVENTION

[0002] Prior art pin displays are known. For example, U.S. Des. Pat. No. 405,296 issued to Komarov on Apr. 16, 1991 shows a pin display having a display surface with a curved bottom portion. The display surface includes an aperture for receiving a pin. The display surface is supported by a flat bottom wall. Opposite to the display surface is a back surface with a recess. The aperture extends from the display surface to the recess whereby the length of the aperture generally corresponds to the length of a pin.

[0003] U.S. Des. Pat. No. 316,197 issued to Baker on Feb. 9, 1991 in regard to a "Pin Display or Similar Article". The pin display of the present invention includes a display surface with a plurality of equally spaced apart apertures covering substantially all of the display surface. The wall that includes the display surface is supported by a flat base.

[0004] U.S. Pat. No. 4,739,886 issued to Seaberg on Apr. 26, 1998 for a "Pierced Earring Holder". The display surface includes a plurality of spaced apart apertures. The wall that includes the display surface is supported by a base that includes a slot for receiving the display surface and supporting the display surface in an upright position.

[0005] A display for collectible items having a simple self-supporting structure is required. A display is required for showing collectible items such as pins, stickers, collectible cards, ribbons, photographs, plaques and labels. More particularly, a display for collectible items is required that permits a plurality of different arrangements of pins, stickers, collectible cards, ribbons, photographs, plaques, and labels.

## SUMMARY OF THE INVENTION

[0006] An object of one aspect of the present invention is to provide an improved display for pins and other collectible items.

[0007] An object of another aspect of the present invention is a self-supporting display that permits the display of different arrangements of pins and other collectible items.

## BRIEF DESCRIPTION OF THE DRAWINGS

[0008] A detailed description of particular embodiments are provided herein below by way of example only and with reference to the following drawings, in which:

[0009] FIG. 1 is a perspective view of the display of the present invention, in one embodiment thereof;

[0010] FIG. 1a is a partial cross-sectional view of the display along line 1a-1a shown in FIG. 1;

[0011] FIG. 2 is a second perspective view of the embodiment of the present invention shown in FIG. 1; and

[0012] FIG. 3 is a perspective view of a second embodiment of the present invention.

[0013] In the drawings, preferred embodiments of the invention are illustrated by way of example. It is to be expressly understood that the description and drawings are only for the purpose of illustration and as an aid to understanding, and are not intended as a definition of the limits of the invention.

## DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENT

[0014] Referring to FIG. 1, there is illustrated in a perspective view, a self-supporting display in accordance with an embodiment of the present invention.

[0015] The display 2 includes a first portion or first wall 4 and second portion or second wall 6. Each of the first wall 4 and second wall 6 has a first end 8 and second end 10. At the first end 8, the second wall 6 and first wall 4 are spaced apart. At the second end 10, the second wall 6 and first wall 4 are generally connected. This connection may consist of said first wall 4 and second wall 6 being integral at one end, or alternatively a hinge means may be used to connect the first wall 4 and second wall 6.

[0016] When the display 2 is placed on a flat surface (such as a desk or shelf) such that the first end 8 of each of the second wall 6 and first wall 4 are disposed adjacent to the flat surface, the display is self-supporting. In the embodiments of the present invention shown in FIGS. 1-3, this is achieved because the first wall 4 and second wall 6 are substantially of the same length and are connected at the second end 10 such that a cross-section of the display along its length corresponds substantially in profile to an isosceles triangle. It should be understood, however, that other self-supporting structure where the first wall 4 and second wall 6 are of different lengths are also possible, without departing from the present invention.

[0017] At least one of the first wall 4 and second wall 6 includes a display surface 12 for receiving display items such as pins, stickers, photographs, collectible cards, ribbons and the like. In one embodiment of the present invention, both the first wall 4 and the second wall 6 includes a display surface 12 whereby users can display their collectible items on both the first wall 4 and he second wall 6, as described below, if they so choose. A user may decide, however, to display collectible items only on the first wall 4.

[0018] The display surface 12 is provided such that it can be perforated relatively easily using the pin portion of a pin of the well known collectible type having a face 14 integral with a pin, and a back 16 that is adapted to releasably engage the pin shaft 18, as best shown in FIG. 1a. It should be understood that back 16 shown in FIG. 1a is a representative illustration of a pin back, and other types of back are also contemplated. The display surface 12 may comprise a number of materials that permit perforation by such a pin, including for example plastic. In a particular embodiment of the present invention, PVC is used to provide the display surface 12, manufactured in a manner that is known. The thickness of each display surface 12 is provided such that the display surface 12 is readily manually puncturable using a pin. In view of the size of the dimensions of the average collectible pin, in a representative embodiment of the present invention, this was achieved with a display surface 12 made of PVC having a thickness of approximately 0.08

inch. It should be understood that alternate puncturable materials such as cardboard can also be used.

[0019] The advantage of the puncturable display surface 12 is that not every user will want to display the same number of pins, the same sized pins, in the same configuration. To this end, a puncturable display surface 12 is more desirable than providing a series of apertures on a display surface 12 in that unused or uncovered apertures may interfere with the aesthetic impression of the display overall. Thus, the display 2 of the present invention may be readily tailored, including on an ongoing basis, to suit particular aesthetic or organizational objectives in displaying collectible items and/or labels.

[0020] In another aspect of the present invention, each display surface 12 has a selected thickness. The thickness of the material is selected so as to permit relatively rigid mounting of pins on the display surface 12, as best shown in FIG. 2. The pin shaft 18 is manually forced through the first wall 4 or second wall 6 that includes the display surface 12. The pin shaft 18 is thereby forced across to the other side of the first wall 4 or second wall 6. The thickness of the display surface 12 is selected such that the length of the pin shaft 18 thus extending to the other side of the first wall 4 or second wall 6 permits the back 16 to be attached to the end of the pin shaft 18 distal to the face 14, as shown in FIG. 2. The thickness of the display surface 12 is further selected so that once the back 16 is so attached to the pin shaft 18 the second wall of the face 14 and the back 16 frictionally engage the first wall 4 or second wall 6 providing the display surface 12 such that, for example, the face 14 does not tend to rotate once the pin is mounted on the first wall 4 or second wall 6 providing the display surface 12.

[0021] As best shown in FIG. 1, the display surface 12 may be used to mount a plurality of pins. In addition, to pins, a variety of other collectible items such as collectible cards (e.g. hockey cards, baseball cards), and photographs can be attached to the display surface 12 using a suitable adhesive. Stickers can also be adhered to the display surface 12. Various arrangements including combinations of the foregoing collectible items are possible.

[0022] Also, as shown in FIG. 1, a label 20 can also be attached to the display surface 12, also using an adhesive. The label 20 may include a sticker or an engraved plaque. The label 20 may include text to personalize a display 2, for example, an engraved plaque including the name of an intended recipient. In this way, it should be understood that the display of the present invention can be used to mount a label 20 and one or more pins, stickers or photographs to provide a trophy of sorts.

[0023] Graphic material such as designs or text can also be printed or screened on the display surface 12, in a manner that is known. Such graphic material may include promotional material or designs that correspond with a particular use of the present invention. For example, in relation to use of the present invention as a promotional item sold by pet stores, for example, paw prints or the like can be screened on the display surface 12.

[0024] The display surface 12 can also be provided in a manner that the display can be personalized by drawing on a surface suitable for drawing. The display surface 12 itself in this case is provided such that it is suitable to be drawn

upon using a drawing implement of some sort, or alternatively a sticker providing a drawing surface is applied to the display surface 12.

[0025] The label 20 can also be used to include promotional information such as the name of a vendor providing the display 2 such that the display can be used as promotional item.

[0026] In an embodiment of the invention illustrated in FIG. 3, the display surface includes a recess 22, having a representative size and shape. The recess 22 may receive a label (not shown), preferably sized to fit within the recess 22. The recess 22 permits a label 20 having a thickness to be attached to the display surface 12 whilst being disposed substantially in the same plane as the rest of the display surface 12.

[0027] It should also be understood that the display surfaces 12 may consist of a variety of different shapes in addition to the generally rectangular profile illustrated in the drawings. For example, one or each of the display surfaces 12 may be provided with a profile such as that of a Christmas tree or some other design in a manner that is known.

1) A display for collectibles comprising:

a) A first portion;

b) A second portion connected to the first portion at one end thereof,

   wherein the first portion and second portion define a self-supporting structure; and

   wherein at least one of said first portion and second portion defines a display surface for receiving collectibles.

2) The display claimed in claim 1, wherein said display surface consists of a material manually puncturable by a pin.

3) The display claimed in claim 2, wherein each of the first portion and second portion includes a display surface.

4) The display claimed in claim 3, wherein the pin consists of a pin portion and a back, and wherein the display surface is puncturable such that a pin can be mounted on the display surface by puncturing a first side of the display surface with the pin portion, and connecting the back to the pin portion protruding at a second side of the display surface opposite to the first side of the display surface.

5) The display claimed in claim 4, wherein the display surface is of a selected thickness adapted to maintain a pin in a fixed position on the display surface when said pin is mounted on the display surface.

6) The display claimed in claim 5, wherein said collectibles consist of one or more articles including pins, stickers, photographs, collectible cards and ribbons.

7) The display claimed in claim 6, wherein the display surface generally consists of a material suitable for affixing articles such as labels, plaques, collectible cards or photographs using an adhesive.

8) The display as claimed in claim 7, wherein the first portion and second portion are connected by a hinge.

9) A promotional product comprising:

a) A display for collectibles comprising:

   i) A first portion;

   ii) A second portion connected to the first portion at one end thereof,

wherein the first portion and second portion define a self-supporting structure; and

wherein at least one of said first portion and second portion defines a display surface for receiving collectibles; and

b) A promotional message displayed in the display surface.

**10**) A kit for assembling a display of collectibles comprising:

a) A display for collectibles comprising:

i) A first portion;

ii) A second portion connected to the first portion at one end thereof,

wherein the first portion and second portion define a self-supporting structure; and

wherein at least one of said first portion and second portion defines a display surface for receiving collectibles; and

b) A plurality of collectibles including one or more of pins, stickers, photographs, collectible cards and ribbons whereby a user selects one or more of such pins, stickers, photographs, collectibles cards or ribbons and selectively mounts same on the display surface.

*   *   *   *   *



US006493969B2

(12) **United States Patent** (10) Patent No.: **US 6,493,969 B2**

Devos (45) Date of Patent: **Dec. 17, 2002**

(54) **DESKTOP INFORMATION CARRIER**

(75) Inventor: **Birgitte Devos**, Berchem (BE)

(73) Assignee: **Drukkerij Stockmans, naamloze vennootschap**, Merksem (BE)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **09/754,362**

(22) Filed: **Jan. 5, 2001**

(65) **Prior Publication Data**

US 2002/0088151 A1 Jul. 11, 2002

(51) Int. Cl.[7] ................................. **G09D 3/04**
(52) U.S. Cl. ............................ **40/120**; 40/119; 40/530; 283/2; 281/33; 248/459
(58) Field of Search .......................... 40/119, 120, 530; 283/2; 248/459; 281/33

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 2,208,213 A | * | 7/1940 | Ericson | 283/2 |
| 2,328,645 A | * | 9/1943 | Panzetta | 283/2 |
| 3,620,552 A | * | 11/1971 | Woodcock | 281/33 |
| 3,704,037 A | * | 11/1972 | Glassberg | 293/128 |
| 5,715,618 A | * | 2/1998 | Whang | 40/119 |
| 5,784,814 A | * | 7/1998 | Capehart | 40/120 |

FOREIGN PATENT DOCUMENTS

| GB | 553 478 | 5/1943 |
|---|---|---|

* cited by examiner

*Primary Examiner*—Cassandra H. Davis
(74) *Attorney, Agent, or Firm*—Bacon & Thomas, PLLC

(57) **ABSTRACT**

The invention relates to a desktop information carrier which comprises a support (1) of foldable material with a bottom part (3) and two walls adjoining thereto and converging towards the top, namely, a front wall (4) and a rear wall (5), and comprises a number of pages (2). One of the walls (4) has a lip (4A) at its upper extremity, and the pages (2) are exclusively attached to the upper extremity of the other wall (5), and in such a manner that, in between two locations, over a distance larger than the largest width of the lip (4A), they are loose from this wall (5). In usage condition, the aforementioned lip (4A) protrudes between said wall (5) and at least one page (2) which then is situated on the wall (4) with the lip (4A).

**9 Claims, 2 Drawing Sheets**





*Fig.1*

*Fig.2*

*Fig.3*



*Fig.4*

# DESKTOP INFORMATION CARRIER

## BACKGROUND OF THE INVENTION

### 1. Field of the Invention

This invention relates to a desktop information carrier which comprises a unitary support of foldable material, mostly of cardboard, having a bottom part and two wall portions adjoining thereto, namely, a front wall and a rear wall, and which comprises a number of pages attached to at least one of the walls, whereby, in usage condition, the front wall and the rear wall are converging from the bottom part on.

### 2. Discussion of the Related Art

Such desktop information carriers are, for example, desk calendars, thus, calendars which, contrary to the calendars suspended on a wall, are placed or a table, a desk or similar.

Known desk calendars consist of a folded rectangular piece of cardboard, the free extremities of which are fixed to each other over their entire length by means of spiral wire or wire bent to rings which is provided through openings in the extremities. By means of these rings or this wire, the calendar pages, too, are attached.

As a result of the fact that, after folding, the extremities of the piece of cardboard and the paces have to be attached to each other simultaneously, the manufacturing of these known desk calendars is rather complicated.

The extremities of the piece of cardboard are fixedly attached to each other, and afterwards it is no longer possible for the user to enfold the calendar without damaging it.

Furthermore, the extremities of the piece of cardboard which are fixed to each other, have to be straight, such that a special design of the desk calendars practically is excluded. In the known desk calendars, the walls, which the calendar pages are situated, are rectangular.

## SUMMARY OF THE INVENTION

The present invention has an object a desktop information carrier which does not show the aforementioned disadvantages and is of a simple construction, offers a high design variability and can be unfolded again.

According to the invention, this aim is achieved in that one of the walls, at its upper extremity, shows at least one lip and in that the pages are fixed exclusively to the upper extremity of the other wall, and in such a manner that they are attached to this upper extremity only locally and that, in between two locations, over a distance larger than the largest width of the lip, they are loose from this wall, whereby, in usage condition, the aforementioned lip, there where the pages are loose from the last-mentioned wall, protrudes between this wall and at least one page which then is situated on the wall with the lip.

Thus, the two walls are not fixed to each other, as a result of which manufacturing is easy and, by pulling the lip from one wall away from in between the pages and the other wall, the desktop information carrier at any time can be unfolded to a flat unit which Wakes little space for storing or transport.

The lip can be given different shapes. As the lip, in mounted condition of the desktop information carrier, protrudes at the top, this shape, of course, will catch the eye.

The pages can be attached to the one wall by means of bent wire.

## BRIEF DESCRIPTION OF THE DRAWINGS

With the intention of better showing the characteristics of the invention, hereafter, as an example without any limita-

tive character, a preferred form of embodiment of a desktop information carrier according to the invention described, with reference to the accompanying drawings wherein:

FIG. 1 represents a view in perspective of a desktop information carrier, more particular a desk calendar according to the invention, in usage condition;

FIG. 2 represents a lateral view of the table calendar from FIG. 1;

FIG. 3 represents a cross-section according to line III—III in. FIG. 1, drawn at a larger scale;

FIG. 4 represents a view of the desk calendar from the preceding figures, however, in unfolded condition.

## DESCRIPTION OF THE PREFERRED EMBODIMENT

The desk calendar represented in FIGS. 1 and 2 consists of a support 1, formed by a unitary piece of cardboard, and of a number of calendar pages 2, for example, one for every month, an extra front page and possibly a rear page.

This calendar is in usage condition, which means that the piece of cardboard of the support 1 is folded such that it shows a rectangular bottom part 3 and two wall portions adjoining thereto and standing inclined thereupon namely, a front wall 4 and a rear wall 5 converging towards the top, whereby the front wall 4, at its free extremity, has an upward-protruding lip 4A in the center.

The calendar pages 2 are fixed to the other extremity of the piece of cardboard and, therefore, at the free extremity or upper extremity of the rear wall 5.

It is important that the calendar pages 2 are not fixed over the entire length of the upper extremity of the rear wall a, but exclusively over a small distance starting from the two extremities of the upper edge, this is from the lateral edges of the rear wall 5. In between, and therefore over a large part which is symmetrically in respect to the middle, the calendar pages 2 are loose from the rear wall

The distance over which the calendar pages 2 are loose from the rear wall 5, is larger or equal to the largest width of the lip 4A, measured parallel to the bottom part 3, and this lip 4A, in fact, protrudes upward between said rear wall 5 and at least a rubber of the calendar pages 2.

Thus, the last-mentioned calendar pages 2 are situated on the Front side of the front wall. The portions of the upper edge of the front wall 4 which are situated next to the lip 4A are held by the connections 6 between these calendar pages 2 and the rear wall 5.

In the represented example, two such connections 6 are present, respectively one between the lip 4A and each of the lateral edges of the rear wail 5.

These connections 6 consist of a wire folded in such a manner that it forms springy rings 7 which can be pulled open. Each of these rings 7 protrudes through an opening 6 in the rear wall 5 and opposite openings 9 in each of the calendar pages 2, as, above all, is clearly visible in FIG. 4 in which the desk calendar is represented in unfolded condition.

As is also visible in said FIG. 4, in consideration of folding, the piece of cardboard of which the support 1 is made, is provided with grooves 10, for example, by indentations, perforations or other weakened portions.

Said piece of cardboard is punched out in the desired shape, whereby the lip 4A can take different forms, the grooves 10 are provided and, alongside the edge which is opposed to the edge provided with the lip 4A, the openings 8 are provided.

Before, in between or after said processing steps, the piece of cardboard is printed.

The calendar pages 2 are cut to size and printed and provided with openings 9. Package per package, by means of connections 6, they are connected to the afore-mentioned piece of cardboard, which takes place before the piece of cardboard is folded and which, therefore, is rather simple.

Subsequently, the desk calendar can be shipped or commercialized in not yet folded condition. The user only has to fold the piece of cardboard according to the grooves 10 and put the lip 4A between the rear wall 5 and the package of calendar pages 2, while letting this package drop around the connections 6 onto the front side of the front wall 4.

Possibly, the piece of cardboard can already be folded according to one of the grooves 10 in order to form a more compact unit.

Indeed, it is possible to ship or to commercialize the desk calendar in folded condition. To this aim, the bottom part 3 temporarily has to be folded, such that an additional groove has to be provided in the center of this bottom part 3 and in the longitudinal direction thereof. In usage condition, the bottom part 3 can be flat or still a little bit folded.

If a calendar page 2 is no longer necessary, it can be torn off from the connections 6, whereby the openings in this calendar page 2 can form the tear-off line. Possibly, a separate tear-off line can be present.

Instead of tearing off the calendar page 2, it can also be turned around connections 6 towards the rear against the rear wall 5, whereby the lip 4A has to be drawn downward temporarily.

The calendar pages 2 do not necessarily have to connected to the rear wall 5 in the above-described manner. For example, the calendar pages 2 may be glued to the rear wall 5, more particularly to that side thereof which, after the calendar has been formed, is directed towards the front

The afore-mentioned lip 4A can be given different shapes which, for example, are adapted to the print on the support and/or the calendar pages. As this lip 4A protrudes at the top, this shape is very eye-catching such that this lip 4A is particularly suitable for carrying advertisements.

The front wall 4 is not fixedly attached to he rear wall 5, such that, by pulling the lip 4A off, the front wall 4 and the rear wall 5 can be unfastened from each other again.

In fact, the calendar pages 2 hold the front wall 4 against the rear wall 5. In order to avoid that, at the end of the year, when most of the calendar pages 2 are no longer situated on the from wall 4, the support 1 becomes less stable, a stable extra calendar page 2, for example, made of cardboard, can be fixed on the support 1 as a lowermost calendar page 2.

The information printed on the pages does not necessarily always have to be related to the date. Some, or, in certain forms of embodiments, even all pages car carry other information, such as, for example, advertisements, tables of charges, timetables or similar. The desktop information carrier therefore does not necessarily have to be a desk calendar, and the paces not necessarily calendar pages.

The invention is in no way limited to the form of embodiment described heretofore, on the contrary may such desktop information carrier be realized in different variants without leaving the scope of the invention.

I claim:

1. A desktop information carrier that includes a plurality of pages and a unitary support of a foldable material,
    said support including a bottom portion and first and second wall portions each adjoining said bottom portion;
    said first and second wall portions having bottom edges hinged along said bottom portion to permit convergence of top edges of said first and second wall portions towards one another;
    said first wall portion having a lip extending from said top edge thereof;
    said plurality of pages hingedly affixed to said second wall portion along the top edge thereof, only said second wall portion of said support having a series of apertures cooperating with corresponding apertures defined along the top edge of said plurality of pages to thereby permit coupling of said support with said plurality of pages;
    wherein said first and second wall portions are configured such that said lip protrudes between said plurality of pages and said second wall portion, said plurality of pages resting against said first wall portion and at least one page of said plurality of pages arranged to be positioned to rest against the lip.

2. The desktop information carrier of claim 1 wherein the foldable material is cardboard.

3. The desktop information carrier of claim 1 wherein wire is inserted through and operable within each of said apertures of said second wall portion and said plurality of pages so as to couple said second wall with said plurality of pages.

4. The desktop information carrier of claim 3 wherein said apertures of said second wall portion and said plurality of pages are divided into two sections disposed respectively in opposite end regions along the top edges thereof.

5. The desktop information carrier of claim 1 wherein the second wall portion is a rear wall and the first wall portion is a front wall.

6. The desktop information carrier of claim 1 wherein a first groove is disposed between the bottom edge of the first wall portion and the bottom portion, and a second grooves disposed between the bottom edge of the second wall portion and the bottom portion.

7. The desktop information carrier of claim 6 wherein the bottom portion includes a middle groove longitudinally and centrally located thereon.

8. The desktop information carrier of claim 1 wherein at least one of the plurality of pages is a calendar page.

9. The desktop information carrier of claim 1 wherein the lip is centrally located along the top edge of the first wall portion.

* * * * *



US005720464A

# United States Patent [19]

## Meinscher et al.

[11] Patent Number: 5,720,464

[45] Date of Patent: Feb. 24, 1998

[54] **COMBINATION PRESENTATION EASEL AND CARRYING CASE**

[76] Inventors: **Charles August Meinscher; June Lorene Parker**, both of 13642 Wycliff Rise, San Antonio, Tex. 78231

[21] Appl. No.: **711,818**

[22] Filed: **Sep. 10, 1996**

[51] **Int. Cl.⁶** ..................................................... **A47B 97/04**

[52] **U.S. Cl.** ............................ **248/447;** 40/610; 248/461; 312/230

[58] **Field of Search** ..................................... 248/447, 451, 248/452, 453, 455, 457, 461; 312/230, 231; 108/14; 40/610

[56] **References Cited**

U.S. PATENT DOCUMENTS

2,538,318   1/1951   Mitchell ............................... 248/455 X
2,981,030   4/1961   Knop ..................................... 312/230 X
3,952,989   4/1976   Bannister Hatcher ................. 248/453
4,093,326   6/1978   Ford ..................................... 312/231
4,978,096  12/1990   Struckmann ........................ 248/461 X

*Primary Examiner*—Ramon O. Ramirez

[57]   **ABSTRACT**

A combination presentation easel and carrying case for use in transporting and displaying items related to an audience presentation. The portable presentation easel consists of a two-part cover supported by extendable legs for the display of visual aids at a variety of heights, and for use with a white board or paper flipchart. The easel is equipped with storage compartments and attachments for any items related to the presentation. The easel may be folded in half and its legs retracted for easy transport. A hard outer covering protects the easel's contents. The easel is further equipped with a carrying handle, a display window for identification information, and security locks.

**13 Claims, 2 Drawing Sheets**





**Fig. 1**



**Fig. 2**



Fig. 3

## 1

**COMBINATION PRESENTATION EASEL AND CARRYING CASE**

### BACKGROUND OF THE INVENTION

1. Field of the Invention

The present invention relates to a unique presentation easel and carrying system for use in transporting and displaying items related to an audience presentation. The presentation easel provides a stand for the display of graphics, or for use with an erasable marking surface, such as a white board, or a large paper tablet. In addition, the easel is equipped with storage compartments for items such as handouts, business cards, and reference materials. It also has attachment capabilities for markers and an eraser. The easel may be folded in half and its tripod legs retracted for easy transport of its contents. When folded into its transportation configuration, the invention protects its contents with a hard, plastic covering. It further comprises a carrying handle, a display window for owner identification information, and a security locking mechanism. The transportation configuration has dimensions which permit it to be checked as a regular piece of luggage with most airlines.

2. Description of the Related Art

Various types of presentation and display easels are known in the art. Typically, they consist of a small shelf or tray located at the bottom of a generally rectangular backing. Items to be displayed rest on the shelf and lean against the backing. Alternatively, the backing may support a white board or a flipchart. In addition, it is common for such prior art presentation easels to be located on some type of stand for easier audience viewing of the items placed on the easel shelf. Typically, the stand consists of three legs: two which are parallel to and extend from the bottom of the backing and a third offsetting leg attached to the top rear of the backing and placed so that the easel will stand on its own. This third leg is typically adjustable so that the easel leans slightly to the rear such that display items placed on the shelf and resting against the backing will remain where positioned. These presentation easels may be placed on the floor (provided the legs are long enough) or may be placed on a table or podium, the idea being that presentation items placed on the easel can be readily viewed by an audience.

Prior art presentation easels tend to vary in the ways in which they extend to their full height for use. As described above, three legs in a tripod configuration are normally used to support the stand. These legs may be telescoping legs which allow the presentation easel to be adjustable in height. Other presentation easels use an outside frame that is generally U-shaped with two upward, parallel arms. When not in use, the backing and presentation materials rest between the two arms of the frame. When ready for use, the backing may be pulled up from the two arms of the frame which then serve as tracks for a separate frame which holds the backing. Once in its fully extended position, the backing frame is secured in place above the U-shaped frame in any of a number of ways, typically through the use of pop-out pins located on the U-shaped frame. The pins extend through holes in the two frames which align themselves when the easel is fully extended. Attached to the back of the backing frame is the third tripod leg which may be rearwardly extended and adjusted so that the presentation easel is stable.

Although quite functional and collapsible, the prior art presentation easels are not easily transportable. Because they typically do not have any type of outer covering, materials which are left attached to the presentation easel may become lost, rearranged, or damaged. If a large paper

## 2

flipchart is attached to the backing, some of its pages may become torn or completely ripped off of the pad. Additionally, the repeated flipping of the paper chart pages up and over the top of the backing damages the pages. Further, the prior easels do not have any convenient means to keep related items such as white board pens or pointers together with the presentation easel; these must be separately carried and looked after. Finally, prior art presentation easels are typically limited in the type of presentation materials which they are designed to display. They usually house a pad of paper or a white board, or simply serve as a stand for graphics. Rarely do they serve more than one of these functions.

### OBJECTS OF THE INVENTION

It is, therefore, an object of this invention to provide a portable presentation easel that enables easy transport of both its display items as well as related articles commonly used during a presentation.

It is another object of this invention to provide a presentation easel which is designed to protect its presentation materials and other related contents.

It is still another object of this invention to provide a presentation easel which is versatile and can be adapted to accommodate various types of presentation media.

It is yet another object of this invention to provide a presentation easel which is dependable, and easy to set up.

To achieve these and other objects which will become readily apparent upon a reading of the attached disclosure and appended claims, an improved portable presentation easel is provided. Additional objects, advantages, and novel features of the invention will be set forth in part in the description which follows, and in part will become apparent to those skilled in the art upon examination of the following, or may be learned by practice of the invention. The objects and advantages of the invention may be realized and attained by means of the instrumentalities and combinations particularly pointed out in the appended claims.

### SUMMARY OF THE INVENTION

According to the present invention, the foregoing and other objects and advantages are attained by an improved combination portable presentation easel and carrying case designed to display a variety of visual aids. The device generally comprises a hard outer carrying case which consists of two pieces, a top cover and a bottom cover, hinged together at one edge. Along an outer side edge of the bottom cover is attached a carrying handle. A display window for owner identification information is located on the outside of the cover. When the top and bottom covers are folded along the hinge so that they meet, they are held together by a security locking mechanism. Housed within the bottom cover and extending from the side opposite the hinge are two telescoping legs which are parallel to the plane of the bottom cover. A third telescoping, offsetting leg is pivotally attached to the outside of the bottom cover along its central axis. When the three legs are deployed in a tripod fashion regardless of whether the legs are extended, the presentation easel will stand on its own in either a high or low configuration. The top cover may then be opened upward along the hinge until it lies in the same plane as the bottom cover, thus exposing its display side. The strength of the materials used to form the legs, covers, framework, and hinge allows the top cover to remain upright once placed in that position. The exposed top cover display side may contain typical presentation media such as a white board, flip charts, a paper tablet,

etc. In addition, the top cover contains multiple spaced rings protruding perpendicularly from the plane of the top cover which allow visual aids to be attached to the rings so that they may be easily leafed through while remaining in the proper order. Further, along the top edge of the top cover are a series of protruding pins to which visual aids may be attached and held in place. The bottom cover is equipped with a series of slightly protruding, variously sized pockets as well as attachment locations for needed items such as white board markers and a white board eraser.

The portable presentation easel thus reliably houses and transports visual presentation aids. In addition, the easel is easy to both set up and take down when making visual presentations.

Still other objects and advantages of the present invention will become readily apparent to those skilled in this art from the detailed description, wherein multiple preferred embodiments of the invention are shown and described, simply by way of illustration of the best mode contemplated by the inventor for carrying out the invention. As will be realized, the invention is capable of other and different embodiments, and its several details are capable of modifications in various obvious respects, all without departing from the invention. Accordingly, the drawings and description are to be regarded as illustrative in nature, and not as restrictive.

## BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a perspective view of a preferred embodiment of the presentation easel device of the present invention.

FIG. 2 is a perspective view of the presentation easel in a partially open position with the telescoping legs extended.

FIG. 3 is a front view of the presentation easel in a fully open position.

## DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENT

As generally described above, the device of the present invention has practical application in a number of situations. The portable device may be used to secure, carry, ship and store related presentation materials. The invention described may be used as an aid when making presentations to a variety of audience sizes. It allows the presenter to convey information with visual aids placed at the presenter's side while facing the audience. When the device is placed on the floor with its legs fully extended, the presenter can make his presentation while standing. Alternatively, the legs of the device may be deployed in a tripod configuration without being extended, thus allowing the device to be placed on a table or other stand for seated presentations. The device further allows the presenter to emphasize important points with a pointer or felt marker, and generally aids in making a lasting impression on the audience. Use of the presentation easel eliminates the need for slide or overhead projectors, screens, wires, outlets, other types of easels, white boards, or paper flip charts. Furthermore, storage and transportation of these items are facilitated by the device.

Reference is made, therefore, to FIG. 1 for a description of a preferred embodiment of the current invention. FIG. 1 shows a combination portable presentation easel and carrying case (10) in its fully closed and locked position. The easel (10) includes a protective carrying case (20) made up of two, equal sized halves: a top cover (22) and a bottom cover (24). The carrying case (20) is constructed out of a high-strength, high-impact plastic and is typically precision molded. In the preferred embodiment, the carrying case (20)

is rectangular in shape although it may have any other desired shape. A carrying handle (26) is attached to one edge of the bottom cover (24). The top cover (22) is connected to the bottom cover (24) along one edge of each cover by a plurality of hinges (28) which allow the top cover (22) to be rotated from a closed position parallel to and on top of the bottom cover (24) to an open position, also parallel to but in the same plane as the bottom cover (24). While a plurality of hinges (28) are used in the preferred embodiment, a single hinge or other pivotal connection may be used to connect the covers (22, 24).

FIG. 2 depicts a perspective side view of the preferred embodiment of the portable presentation easel (10). The bottom cover (24) is shown visibly distinct from the top cover (22). The bottom cover (24) has a top edge (51), a bottom edge (52), and two side edges (53). The bottom cover (24) also has an interior side (54) and an exterior side (not shown). Similarly, the top cover (22) has a top edge (55) (viewed when the easel (10) is completely open for presentations), a bottom edge (56), two side edges (53), an interior side (not shown) and an exterior side (57). The preferred embodiment includes a flat support sheet (not shown), preferably made of aluminum, along the interior side of the top cover (22) to give the top cover (22) strength and support when the easel (10) is in its fully open position. FIG. 2 shows the easel (10) in a partially open position with its legs partially extended. In the preferred embodiment, the easel (10) has three telescoping legs: two forward, parallel legs (30) and one offsetting leg (32). In the preferred embodiment, the legs (30, 32) are made of square tubing, although the legs (30, 32) may have any cross-sectional shape. The bottom cover (24) is equipped to house all three legs (30, 32). The parallel legs (30) are housed in channels (not shown) which run vertically just inside the two side edges (53) of the bottom cover (24). The parallel legs (30) may be extended to any length when the easel (10) is being used to make presentations and are retractable within the channels when the easel (10) is being stored or transported. By varying the amount the legs (30, 32) are extended, the easel (10) may be placed on a variety of presentation settings, from the floor (legs fully extended) to a table top (legs fully retracted) and anywhere in between. Each leg (30, 32) is biased, preferably with an internal spring (not shown), to cause the leg to extend once released from any locked position.

The offsetting leg (32) attaches to the outside of the bottom cover (24) near the center of the top edge (51) of the bottom cover (24) closest to hinges (28). When not in use, the offsetting leg (32) snaps into a groove located down the middle of the exterior side (not shown) of the bottom cover (24). This aids in the transport and storage of the easel (10). Conversely, when the presentation easel (10) is being set up, the offsetting leg (32) is pivoted from its storage position to its support position so that the easel (10) will remain standing on its own. This is accomplished through a pivoting connection between the top of the offsetting leg (32) and the exterior side of the bottom cover (24).

The easel (10) is securely held closed through the use of a locking mechanism. In the preferred embodiment, the locking mechanism consists of clasp covers (34) attached along the top edge (55) of the top cover (22). When the easel (10) is closed, each clasp cover (34) may be flipped down to lockingly engage a corresponding clasp head (36) located on the bottom edge (52) of the bottom cover (24). The clasp covers (34) and clasp heads (36) are positioned so that when the carrying case (20) is closed, the clasp covers (34) and heads (36) align with one another. Other types of securing

mechanisms may be used to hold the carrying case (20) closed, and additional security measures, such as combination locks, may be employed as needed.

FIG. 3 depicts the combination easel and carrying case (10) in its fully open position for displaying presentations. The interior side (58) of the top cover (22) contains a full-sized white board (40). Alternatively, the top cover (22) may be designed to house a typical flip chart (not shown) mounted on its interior side (58). In the preferred embodiment, the interior side (58) of the top cover (22) contains a number of pins (42) arranged along the top edge (55), which protrude perpendicularly from the interior side (58) of the top cover (22). Along the bottom edge (56) of the inside of the top cover (22) are located a plurality of binder-like rings (44) which also protrude from the interior side (58) of the top cover (22). The rings (44) may be opened such that display graphics are placed on the rings (44) in the order needed for the presentation. The rings (44) are then closed. The display graphics are held in place for viewing by inserting the pins (42) through holes located in the top of each graphic. As the presentation proceeds, each exposed graphic may be released from the pins (42) and allowed to flip down about the rings (44) into the lower half of the carrying case (20) next to the bottom cover (24). In the preferred embodiment, approximately thirty pages of graphics may be stored on the pins (42) and rings (44). After the last graphic is flipped down in this fashion, the white board (40) is available for notes or discussion comments.

Once the presentation is complete, the top cover (22) may be folded down along the hinges (28) over the bottom cover (24) and secured thereto. The legs (30, 32) may then be retracted, making the combination portable presentation easel and carrying case (10) ready for transport. Not only does the interior side (54) of the bottom cover (24) serve as a resting place for graphics which have been flipped down, but it also houses various storage capabilities, such as various sized pockets (46). The pockets (46) are an integral part of the interior side (54) of the bottom cover (24). The pockets (46) may be used to store items to be distributed during the presentation, note pads, flyers, a calculator, a white board eraser, a pointer, extra business cards, and any other item which might be needed during the presentation. In the preferred embodiment, the interior side (54) of the bottom cover (24) is also equipped with a VELCRO fastener (48) to which additional items may be attached, such as a white board markers and an eraser. When the combination presentation easel and carrying case (10) is closed and secured with its locking clasps (34, 36), the graphics or flip chart as well as any other items stored in the pockets (46) or with the fasteners (48) are securely locked inside the carrying case (20) for easy transportation. These contents are further protected by the outside surfaces of the top and bottom covers (22, 24).

It is intended that the above description of the preferred embodiment of the structure of the present invention is but one enabling best mode embodiment for implementing the invention. Variations in the above description likely to be conceived of by those skilled in the art still fall within the breadth and scope of the disclosure of the present invention. For example, the material from which the carrying case may be made has been described as a molded plastic; it could also be made from any of a number of materials, including various metals or even wood. Further, the specific contents which the easel is designed to present may be modified to aid in the presentation of other types of exhibits. The primary import of the present invention lies in its portability as well as its ability to protect its contents while remaining quick

and easy to set up and take down. Its benefits derive from the versatility of application of the present invention and its low cost. Again, it is understood that other applications of the present invention will be apparent to those skilled in the art upon the reading of the preferred embodiments and a consideration of the appended claims and drawings.

What is claimed is:

1. A combination presentation easel and carrying case comprising:

a top cover having at least one edge;

a bottom cover having at least one edge;

a connection means for attachment of said top cover to said bottom cover;

at least two legs housed in said bottom cover;

an offsetting leg pivotally attached to said bottom cover;

at least one ring extending from said top cover, said ring allowing removable attachment of at least one display graphic such that said display graphic may be rotated about said ring for viewing;

at least one pin extending from said top cover, said pin providing a point of attachment for viewing said display graphic; and

a carrying handle attached to said bottom cover.

2. The combination presentation easel and carrying case of claim 1, further comprising storage means for items used in conjunction with said easel.

3. The combination presentation easel and carrying case of claim 2, wherein said storage means is at least one pocket positioned on said bottom cover.

4. The combination presentation easel and carrying case of claim 2, wherein said storage means is at least one VELCRO fastener.

5. The combination presentation easel and carrying case of claim 1, further comprising a locking mechanism for securing said top cover to said bottom cover.

6. The combination presentation easel and carrying case of claim 1, wherein said connection means is at least one hinge attached to one of said edges of said top cover and of said bottom cover.

7. The combination presentation easel and carrying case of claim 1, wherein said top cover and said bottom cover have a generally rectangular shape.

8. The combination presentation easel and carrying case of claim 1, wherein said top cover houses an erasable writing surface.

9. The combination presentation easel and carrying case of claim 1, wherein said top cover houses a flip chart.

10. The combination presentation easel and carrying case of claim 1, wherein said legs are extendable.

11. The combination presentation easel and carrying case of claim 1, wherein said top cover includes a support sheet.

12. A combination presentation easel and carrying case for presenting display graphics comprising:

a top cover having a top edge, a bottom edge, two side edges, an interior side and an exterior side, said top cover having a generally rectangular shape;

a bottom cover having a top edge, a bottom edge, two side edges, an interior side and an exterior side, said bottom cover having a generally rectangular shape;

at least one hinge attached to said top edge of said bottom cover and to said bottom edge of said top cover;

a carrying handle attached to one of said edges of said bottom cover;

a pair of telescoping legs housed in said bottom cover and capable of being extended from said bottom edge of said bottom cover;

an offsetting leg pivotally attached to said exterior side of said bottom cover;

a locking mechanism for securing said top cover to said bottom cover in a closed position;

at least one pin extending from said interior side of said top cover adjacent said top edge of said top cover;

at least one ring extending from said interior side of said top cover adjacent said bottom edge of said top cover; and

at least one pocket attached to said interior side of said bottom cover.

13. A combination presentation easel and carrying case for presenting display graphics comprising:

a top cover;

a bottom cover;

connecting means for hingedly attaching said top cover to said bottom cover;

securing means for holding said display graphics adjacent said top cover;

retain means capable of permitting said display graphics to be sequentially present and then flipped down adjacent to said bottom cover;

said connecting means is at least one hinge attached to an edge of said top cover and an edge of said bottom cover;

said securing means is at least one pin extending from said top cover opposite said connection means;

said retaining means is at least on e ring extending from said top cover adjacent said connection means;

a pair of legs housed in said bottom cover; and

an offsetting leg pivotally attached adjacent said bottom cover.

\* \* \* \* \*

# United States Patent [19]

## Farnsworth

[11] **4,024,656**

[45] **May 24, 1977**

[54] **GREETING CARD CALENDAR**

[76] Inventor: **Barbara Farnsworth**, P.O. Box 141, Camden, N.Y. 13316

[22] Filed: **Apr. 19, 1976**

[21] Appl. No.: **678,203**

[52] **U.S. Cl.** ................................ **40/121; 40/124.1; 40/152.1**

[51] **Int. Cl.²** ........................................ **G09D 3/04**

[58] **Field of Search** .................... 40/107, 119–122, 40/126 A, 152, 152.1, 124.1, 155, 156; 283/2; 46/35

[56] **References Cited**

### UNITED STATES PATENTS

| | | | |
|---|---|---|---|
| 828,984 | 8/1906 | Sweet | 40/152.1 |
| 1,705,116 | 3/1929 | Howland | 40/120 |
| 2,128,989 | 9/1938 | Dickerson | 40/119 |
| 2,504,277 | 4/1950 | Otterson | 40/155 X |
| 3,113,559 | 12/1963 | Friedman | 40/120 X |

Primary Examiner—John F. Pitrelli
Attorney, Agent, or Firm—Lee A. Strimbeck

[57] **ABSTRACT**

A greeting card-calendar comprises a single folded sheet of card stock forming a front panel or cover over a back panel. The fold is on the vertical side of the card and the front panel is made to be manually removable from the back panel as by the fold being perforated. The front panel has an aperture. A calendar pad or like tablet is mounted on the back panel so that it can be viewed through the aperture. The calendar pad has a decorative top sheet which when the card is in the closed position is seen through the aperture in the front panel. The back panel is scored and/or die cut to permit it being folded into a triangular easel that mounts and displays the calendar pad.

**3 Claims, 4 Drawing Figures**





FIG. 1

FIG. 2



FIG. 3

FIG. 4

**1**

## GREETING CARD CALENDAR

### THIS INVENTION

This invention pertains to message-carrying cards such as greeting cards and is more particularly concerned with a greeting card calendar that is adapted to having the front portion of the card carrying the message or greeting removed leaving that portion containing the calendar for continued use.

This present invention is particularly concerned with cards for the Christmas season which when the card has served its purpose of conveying the greeting can find use as a calendar for the coming year. While the present card is designed particularly with an eye for use as a desk calendar its use as a flat wall hang-up type calendar is not precluded. Also, while particular reference is made to calendars, this invention emcompasses the use of other types of tablets in the place of the calendars, such as prayer pads, recipe pads, astrology notes, a series of get well messages, etc. "Tablet" as here used means a collection of sheets bound together at one edge.

The present card-tablet is of course eminently suited for carrying advertising messages on the portion of the card that remains and supports the tablet such as the same may be viewed and considered by the recipient of the card during the life of the pad-throughout the year in the case of a calendar.

### DRAWINGS

The nature of this invention and its advantages will become clear by the following description made with reference to the drawings attached to and made a part hereof, in which:

FIG. 1 is a front view of the greeting card;

FIG. 2 is a view of the card in its open position;

FIG. 3 is a perspective view of the easel supporting and displaying the calendar, formed from the back panel of the card; and

FIG. 4 is a side elevational view of the easel shown in FIG. 3.

### DESCRIPTION

With reference to the drawing, the card of this invention comprises a sheet generally indicated at 10 preferably of a card stock that may be white or colored, mat, smooth or glossy as desired, folded but once along a vertical edge (when the card is oriented for reading the message thereon) 11 to form front panel 12 and back panel 13.

The front panel has an aperture 14 which while it may be of any desired shape and located in any artful position on the card, is preferably circular and is preferably located in the lower portion of the front panel as shown. Aperture 14 could have an outlining configuration to better display the material on the back panel.

A calendar 15 is located on back panel 13 so that it is centered underneath aperture 14 for viewing. The calendar 15 may consist of but a single sheet and/or may be directly printed on the back panel but is preferably a series of tear off sheets each of which contains a calendar for the months of the year. Overlaying the calendar 15 is a cover page 16 that preferably has an artful design thereon, as shown, and which is pleasantly viewable through the aperture 14 when the card is in the closed position.

The card contains a greeting as illustrated at 20 and 21 and in its most useful embodiment would also carry an advertising message as at 22 or at 23 associated with

**2**

the calendar pad and to be displayed therewith as the calender is used. While as illustrated the year is shown at 23, this could be as well be an advertising message.

The back panel is scored and die cut as at 24 to permit it to be folded horizontally at line 25 into a triangular easel shape leaving a display tab or pop-up 26 formed by score line 24 upstanding which display tab can carry message 23. Line 24 can of course be of any artful configuration. For example it could outline and thus highlight and advertisers logo. In some instances it is desirable to also have a portion or all of the message or art work in tab 26 viewable through aperture 14 when the card is in the closed position.

Preferably the back panel 13 is also scored behind the calendar 15 to provide a locking tab 30 as shown in FIG. 4 that can be bent downwardly to help form and hold the easel in its shape. A slot 31 may be cut into back panel 13 to receive the locking tab 30 when that portion of 27 of back panel 13 is bent down around line 25 onto place to form the easel. The calendar pad can be mounted to the back panel by a staple, hot melt adhesive or such other means as desired. Top page 16 of the calendar could well be a personal photograph to be removed and kept by the recipient.

Preferably the whole of the card is of size and shape to be mailable to a conventional manner. Generally speaking a card that is about twice as high as it is wide is preferred as it permits the formation of the easel having a desirable size and shape.

Other methods of permitting usual separation of the front panel 12 from the back panel 13 will occur to the skilled in the art. For example, while normally a single sheet 10 will be used so that only a single sheet need be printed, panels 12 and 13 could be separated, be printed separately, and be joined by an easily tearable tissue hinge or by a removeable strip of pressure sensitive tape. The tear line 11 of perforations need not coincide with the fold line.

What is claimed is:

1. A greeting card having a height at least twice its width and comprising:

  a. a single sheet of card stock folded along a vertical side thereof when the greeting of said card is oriented for reading and forming thereby a front panel and a back panel, said front panel having an aperture in the lower portion of the panel, the fold between said panels being perforated to permit ready manual separation of said panels, and said back panel being scored and adapted when separated from said front panel to being folded into an easel supporting and displaying a tablet, said easel being triangular in shape when viewed from the side and being formed by folding said back panel approximately in half along a horizontal line; and

  b. a tablet mounted on said back panel for viewing through said aperture when said card is in the closed position and for display on said easel, said tablet comprising a detachable cover page with a display thereon and thereunder additional pages.

2. The greeting card of claim 1 wherein said greeting is located on the face of said front panel and is suitable for the Christmass season and said tablet is a calendar pad.

3. The greeting card of claim 1 wherein said back panel is scored to provide a locking tab and receptive slot therefor as means for holding said triangular shape and to provide a display tab above said tablet and wherein said aperture is round.

* * * * *

Jan. 4, 1966
S. R. SOUTHARD
3,226,863
FOLDABLE EASEL-TYPE DESK CALENDAR SUPPORT
WITH EXTENSIBLE AND RETRACTABLE TAB
Filed Jan. 28, 1964



INVENTOR.
STANLEY R. SOUTHARD
BY
MAHONEY, MILLER & RAMBO
BY W. S. Rambo
ATTORNEYS.

1

3,226,863
FOLDABLE EASEL-TYPE DESK CALENDAR SUP-
PORT WITH EXTENSIBLE AND RETRACTABLE
TAB
Stanley R. Southard, Columbus, Ohio, assignor to The
Southard Company, Columbus, Ohio, a corporation
of Ohio
Filed Jan. 28, 1964, Ser. No. 340,603
3 Claims. (Cl. 40—120)

This invention relates to a foldable easel-type desk
calendar support with extensible and retractable tab. The
extensible and retractable tab or panel of the support is
particularly useful for bearing printed advertising matter
or other indicia although it is not limited thereto. Also,
the support is not limited to use in a desk calendar but
is capable of use as a support for other purposes.

According to this invention, there is provided a sup-
port of the easel type which includes front and rear panels
that are joined together at an upper hinge or fold line
for relative swinging movement from a flat folded lami-
nated position to an unfolded or spread angular support-
ing position. Operatively connected between the two
panels is a diagonal bracing tongue which not only
automatically assumes a bracing position when the panels
are swung apart into supporting position but also includes
a connected panel or tab which moves automatically be-
tween a withdrawn or retracted position between the sup-
port panels, when they are folded, to an extended visible
position when the panels are unfolded into supporting
position. The tab slides inwardly and outwardly through
a slot at the fold line and the connection of the tab to
the bracing tongue is made in such a manner that the
proper extending and retracting movement of the tab
occurs automatically in accordance with and as a result
of the unfolding and folding of the support panels.

In the accompanying drawing, there is illustrated a
desk calendar embodying the principles of this invention
but as previously indicated, this invention is not neces-
sarily limited to a desk calendar.

In this drawing:

FIGURE 1 is a perspective view of a desk calendar
embodying this invention showing the supporting panels
thereof in unfolded or supporting position with the ex-
tensible and retractable tab in extended or visible position.

FIGURE 2 is a vertical transverse sectional view taken
along line 2—2 of FIGURE 1.

FIGURE 3 is a view similar to FIGURE 2 but show-
ing the calendar in folded laminated condition.

FIGURE 4 is a horizontal sectional view taken along
line 4—4 of FIGURE 3.

With reference to the drawing, there is illustrated a
structure which embodies this invention and which, for
example, is shown as being in the form of a foldable
easel-type desk calendar support. The entire support is
preferably made of cardboard, paperboard, or other rela-
tively inexpensive material although it could be of plastic
or other suitable material. The support comprises a front
panel 11 and a rear panel 12 which are connected together
at an upper hinge line 13. It is preferred that these two
panels 11 and 12 be formed from a single blank of mate-
rial which is folded along the line 13 although they could
be formed as separate panels and suitably joined by an
attaching hinge structure. The front panel may carry
pages or sheets 14 for particular months of a calendar
or any other matter which it is desired to display. The
rear panel 12 may serve merely as a support in coopera-
tion with the panel 11, when it is unfolded relative there-
to, to provide an easel-type display structure, as indicated
in FIGURES 1 and 2.

In addition to the panels 11 and 12, a combination

2

brace and display tab member 15 is operatively con-
nected between the two panels 11 and 12. This member
15 is preferably made of the same material as the panels
11 and 12 and comprises a brace section or tongue 16
which has an angular flange 17 on its rear or inner edge
hinged thereto at a fold line 18a and which is disposed
in flat contact with the inner surface of the support 12
at a location substantially above the midpoint of the
height of the panel 12, being preferably bonded thereto
or attached in any other suitable manner. The brace
16 is also connected by a fold and hinge line 18 to the
lower end of a tab or panel 20. This tab 20 is slidably
mounted between the outer or face part of the panel 11
and the inner or guide flap 11a of that panel. The flap
11a is provided preferably by folding the panel 11 in-
wardly and upwardly along a lower edge fold line 19
so that the forward face of the flap 11a is in flat contact
with the rear face of the panel 11 although these members
could be formed as separate members hinged together.
The laminations 11 and 11a are preferably glued together
along their contacting bottom edges and along their con-
tacting side edges but along the other side edge and top
edge they are not glued together so that the flap 11a is
yieldable inwardly relative to the panel 11.

The flap 11a is provided with a substantially rectangu-
lar opening 21 of substantial height which extends from
substantially the mid-level thereof downwardly for a sub-
stantial distance, the lower edge of the opening being
indicated at 22 and its upper edge being indicated at 23.
In its lateral extent, the opening is just slightly greater
than the lateral extent of the member 15. Consequently,
the member 15, as indicated in FIGURE 2, can extend
through the opening 21 and the tab 20 can extend up-
wardly between the upper portions of flap 11a and the
panel 11 when the panels 11 and 12 are spread. The
upper or distal end of the tab 20 is adapted to pass out-
wardly through a slot 24 in the fold or hinge line 13
between the hinged support panels 11 and 12. It will
be understood that the slot 24 is of a length slightly
greater than the width of the tab 20 but substantially less
than the width of the panels 11 and 12 so that the slot is
closed at each end by substantial amounts of material 13a
at the hinge line 13. The opening 21 is of corresponding
length.

It will be noted from FIGURE 3 that when the struc-
ture is in folded condition, a laminated structure is pro-
vided which consists from front panel 11, the tab 20, the
front panel 11, the tab 20, the guide flap 11a, the brace
section 16 which will be in substantial alignment with the
attach-
ing flange 17 and finally, the rear support panel 12. At
this time, the hinge line 18 will be located slightly above
the lower edge 22 of the opening 21. The tab 20 will,
at this time, be retracted downwardly to such an extent
that it just projects slightly upwardly through the slot 24.

If the structure is now unfolded from the laminated
condition illustrated in FIGURES 3 and 4 to the spread
condition illustrated in FIGURES 1 and 2 by swinging
the flaps 11 and 12 apart about the hinge line 13, the
brace portion 16 will be pulled upwardly and rearwardly
relative to the flap 11 and this will exert an upward
pull on the tab 20 causing the fold line 18 to move
upwardly in the opening 21 and causing the tab to slide
upwardly between the guide flap 11a and the panel 11
and out through the slot 24 to its extended position illus-
trated in FIGURES 1 and 2. This movement will con-
tinue until the fold line 18 engages the upper edge 23 of
the opening 21 which will provide a stop arrangement
that will limit spreading of the flaps 11 and 12 to a
predetermined angular position and they will be held in
such relative easel-like arrangement by the friction of
the tab 20 in the slot 24 and in between the flap 11a

and the panel 11. If the structure is again folded by pressure applied on the diverging lower ends of the panels 11 and 12, the brace 16 will be automatically moved downwardly and forwardly with the fold line 18 moving downwardly through the opening 21 toward its lower edge and thereby pulling the tab 20 downwardly to cause it to be retracted through the slot 24 and between the flap 11a and panel 11 to the retracted condition shown in FIGURE 3.

It will be apparent that the projecting portion of the extended tab 20 may contain advertising or other desired printed matter. When the structure is folded, the tab is in retracted condition thereby providing the laminated structure illustrated in FIGURES 3 and 4 which is of minimum area. This will greatly facilitate packaging and mailing of the unit. When the supporting structure is unfolded, the tab 20 is automatically extended to a position where the printed matter is displayed in an attractive and readily visible manner and simultaneously the brace 16 is arranged in angular position between the panels 11 and 12 to provide an easel-like supporting arrangement.

According to the provisions of the patent statutes, the principles of this invention have been explained and have been illustrated and described in what is now considered to represent the best embodiment. However, it is to be understood that, within the scope of the appended claims, the invention may be practiced otherwise than as specifically illustrated and described.

Having thus described this invention, what is claimed is:

1. A supporting structure of the easel type comprising a front supporting member and a rear supporting member hinged together at a hinge joint adjacent their upper ends for relative swinging movement between folded and sup-

porting positions, a member positoned between the front and rear supporting members and slidable through said hinge joint between a downwardly retracted position substantially within the hinged supporting members when in folded condition and in extended position upwardly beyond said hinge joint when said supporting members are in supporting position, and a brace connected between said supporting members and operatively connected to said slidable member to move it to said extended and retracted positions automatically as a result of the unfolding and folding of said supporting members.

2. An easel-type support comprising a front support panel and a rear support panel hinged toegther at one end at a hinge joint, a tab portion disposed on one of said panels for guided sliding movement between a retracted position and an extended position relative to said hinge joint, and a brace connected to the other of said panels and to said tab portion for moving it between extended and retracted positions as a result of relative movement of said panels about said hinge joint.

3. An easel-type support comprising a flat front panel and flat rear panel connected together at an upper hinge fold line, one of said panels having a flap turned upwardly over its inner surface, said flap having a transverse opening formed therein of substantial height, a tab slidably mounted between said flap and its cooperating panel and having an upper end extending upwardly through a slot in said hinge fold line and a lower end extending into the area of said opening, and a brace hingedly connected to the inner face of the other panel and extending through said opening where it is connected by a fold line to the said lower end of said tab.

No references cited.

EUGENE R. CAPOZIO, *Primary Examiner.*



*Fig. 1*

THIS COUPON GOOD FOR
ONE FREE LUBE
DURING THE MONTH OF
JANUARY 1960
STATION · NAME

1960  JANUARY  1960

| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
|-----|-----|-----|-----|-----|-----|-----|
|     |     |     |     |     |  1  |  2  |
|  3  |  4  |  5  |  6  |  7  |  8  |  9  |
| 10  | 11  | 12  | 13  | 14  | 15  | 16  |
| 17  | 18  | 19  | 20  | 21  | 22  | 23  |
| 24  | 25  | 26  | 27  | 28  | 29  | 30  |

NAME  ADDRESS  AND
ADVERTISING
OF SERVICE STATION

*Fig. 2*

*Fig. 3*

COUPON

CALENDAR

ADVERTISER

*Fig. 4*

INVENTOR.
HENRY M. WASHBURN
BY
ATTORNEY

## 1

**3,032,904**
**COUPON CALENDAR**
Henry M. Washburn, P.O. Box 155, Oildale, Calif.
Filed Apr. 18, 1960, Ser. No. 23,068
1 Claim. (Cl. 40—122)

This invention relates to a combination calendar and advertising novelty, and particularly to a device to permit a "give-away" bonus or other merchandise.

Advertising novelties of various types involving calendar pads and collection calendars are known, the present invention being directed to a unit which will provide a calendar, the name of the advertiser, and a coupon which is easily detachable from the calendar to permit its being taken to the advertiser to receive various free items of merchandise being dispensed by the advertiser. For instance, the unit may consist of an easel having a pocket therein for a plurality of calendar and coupon cards, the lower portions of the cards behind the pockets providing the name and address of the advertiser, the intermediate portions of the cards behind the windows showing the calendar months, while the upper portions of the cards extending above the windows contain the free coupons which are good for various items.

To facilitate the removal of the coupon, one lower corner of each card is notched, while the upper edge of the pocket is saw-toothed to permit easy tearing of the coupons from the cards.

Although the unit may be used in various ways, one suggested use of the device is that one coupon attached to one calendar card is good only during that particular month and by the particular advertiser.

The principal object of the invention, therefore, is to provide a combination calendar and advertising novelty.

Another object of the invention is to provide a device which provides a calendar, advertising space, and a coupon easily removable from the device.

A better understanding of this invention may be had from the following description when read in connection with the accompanying drawings, in which:

FIG. 1 is a front elevational view of a unit embodying the invention;

FIG. 2 is a side view of the unit shown in FIG. 1;

FIG. 3 is a front elevational view of the card used in the unit; and

FIG. 4 is a partial cross-sectional view taken along the line 4—4 of FIG. 1.

Referring, now, to the drawings in which the same reference numerals indicate the same elements, a full backing sheet 5 has an overlying edge sheet 6, which may be glued or otherwise suitably fastened to one another over a portion of the outer edge portions of the overlying sheet 6. The sheets 5 and 6 may have a hole 7 at the top thereof for hanging the unit on a wall or may be provided with a backing brace 8 attached to the full backing sheet 5 in any suitable manner, such as by gluing or stapling.

A pocket 10 is shown formed by any suitable transparent plastic material and is rectangular in shape with an opening at the top. The pocket has three extending edge portions as shown by the dotted lines 12, 13, and 14, these edge portions being mounted between the full

## 2

backing sheet 5 and portions of the edge sheet 6. The edge portions 12, 13, and 14 and the contacted portions of sheets 5 and 6 may be glued to one another or attached in any other suitable manner. The upper edge 16 of the pocket 10 is sawtoothed to permit the easy separation of the coupon portion of the card from the portion of the card within the pocket when the coupon portion is bent forward.

There is a card for each month of the year, the cards being stacked on one another within the pocket, as shown at 17 in FIG. 4. These cards have a lower portion 18 which may provide the name and address of the advertiser and the nature of his business, a central calendar portion 19, and the upper coupon portion 20, a notch 21 being provided at the lower right hand corner of the coupon. This will insure easy and correct starting of the tearing of the coupon portion 20 from the calendar portion 19.

As mentioned above, the unit may be used in different manners for providing coupons for free merchandise and for advertising products of the advertiser. A complete unit is given to a customer or prospective customer who will maintain it on display by hanging it on the wall or in a standing position on a desk as a reminder of the free item from the advertiser.

I claim:

A pocket type novelty advertising display device adapted to display cards and the like, certain portions of which cards are within said pocket and other portions of which cards extend externally of said pocket and are separable from said certain portions of said cards at predetermined positions characterized by notches, said device comprising said cards, a rectangular backing sheet, a frame sheet having an open center and having its edges attached to the outer portions of said backing sheet, and a rectangular member secured to said backing sheet along three of its four edges with its fourth edge being serrated and having a front portion parallel with said backing sheet, three edge portions at right angles to said front portions and three portions attached to said attached portions and parallel with said front portion, said last-mentioned portion being inserted between portions of said frame sheet and said backing sheet, the position of said serrated edge corresponding to the position of said notches in said cards, said separable portions of said cards being adapted to be separated from said certain portions of said cards by severing said cards along and by the aid of said serrated edge.

### References Cited in the file of this patent

UNITED STATES PATENTS

| | | |
|---|---|---|
| 442,023 | Dickinson | Dec. 2, 1890 |
| 936,848 | Avery | Oct. 12, 1909 |
| 2,282,872 | Mayer | May 12, 1942 |
| 2,496,141 | Abrams | Jan. 31, 1950 |
| 2,787,067 | Nichols | Apr. 2, 1957 |
| 2,833,064 | Parker | May 6, 1958 |

FOREIGN PATENTS

| | | |
|---|---|---|
| 160,179 | Switzerland | May 1, 1933 |



INVENTOR.
CARROLL N. CROSS
BY

ATTORNEY

1

3,021,631
REINFORCED EASEL STRUCTURE
Carroll N. Cross, Rte. 2, Box 304, Maitland, Fla.
Filed Aug. 10, 1960, Ser. No. 48,771
4 Claims. (Cl. 40—120)

This invention relates to display mounts, and in particular to reinforce supporting props for display mounts.

Mounts for displaying desk calendars, pictures, photographs and the like, usually include a face panel or face panel assembly on or in which the display material is mounted, and a back panel or back panel assembly in which a mount supporting prop is formed such that it can be rotated about a hinge line into angularly disposed mount supporting position.

In the construction of mounts composed of a plurality of superimposed panels of paperboard, it is desirable that such panels be bound into a unitary structure by means of an adhesively attached thin, flexible binding material which overlies a face of such panels and extends about the edges thereof. Many advantages are derived from such fabricating procedure as pointed out in my United States Patent 2,092,348, issued September 7, 1937.

A limitation of structures, of the kind stated, however, is the difficulty involved in forming multi-ply supporting props without resort to additional manufacturing operations. If a mount supporting prop, such as, for example, that shown in my United States Patent 2,240,209, issued April 29, 1941, is cut into a mount back assembly of several unattached superimposed panels of paperboard stock, it must be formed in the outer panel only. It is obvious that a prop cut through a pair of freely superimposed panels would undesirably result in a pair of separate prop elements unless some special means, such ase gluing or stapling, were employed to hold the prop elements of the respective panels together as a unit.

It is, therefore, the object of this invention to make possible the formation of multi-ply mount supporting props cut from within the margins of a back assembly without the necessity of employing special or separately applied means for connecting to each other the plies of a prop so formed.

In its more particular aspect, the invention contemplates a display mount having a base edge adapted to rest on a supporting surface and which has a back assembly consisting of an inner panel of paperboard extending to the base edge of the mount, and an outer panel of paperboard in back-to-back contact with the inner panel, but having an edge terminating above the base edge of the mount. These panels are held together by a flexible adhesively attached binding material overlying the outer face of the assembly and extending about the edges thereof. When a supporting prop is now cut through the bound panels along lines of severance which are spaced inwardly of the lateral edges of the assembly and by a line of severance above the base edge but below the terminal edge of the outer panel of the back assembly, the prop sections will be held together for operation as a unit by the binding material which overlies the face of the outer panel, spans the terminal edge of the outer prop section and is also adhesively joined to that part of the face of the inner ply of the prop which is exposed below the terminal edge of the outer ply of the structure.

A specific embodiment of the invention is described hereinbelow in reference to the drawing forming a part of this application and in which drawing like reference numerals indicate like parts:

FIG. 1 is a perspective facial view of a display mount which embodies the invention, parts being broken away to show underlying structure;

2

FIG. 2 is a perspective rear view of the mount;

FIG. 3 is a sectional view taken on line 3—3 of FIG. 1; and

FIG. 4 is a developed view of the mount blank showing preliminary cutting and scoring operations performed thereon.

The body of the mount is ordinarily formed by suitably cutting and scoring a generally elongated more or less rectangular blank of paperboard stock 10. The blank 10 is divided into a plurality of panel sections by a series of parallel transverse fold lines 12, 14 and 16. The transverse fold lines represent a suitable weakening of the blank material to permit folding the blank on these lines without breaking the paperboard stock. Consequently, the lines may be scored, routed, perforated, partially cut, or they may be formed by using two or more of these or other weakening techniques in combination. The transverse fold lines 12, 14 and 16 divide the panel blank 10 into a face panel 18, a back panel 20, an inner panel 22 and an outer panel 24. The face panel 18 and the back panel 20, when folded into contact with each other, comprise a face assembly, while the inner panel 22 and the outer panel 24, when folded into contact with each other constitute a back assembly.

Prior to any blank folding operation, it may be found convenient to form therein certain incisions as, for example, die cutting of the inner panel 22 to form therein a prop latching tongue 26. This tongue is severed from the inner panel 22, along more or less parallel lines 28 and 30, which extend from a score line 32 toward the fold line 16 and by a transverse incision 34 between the lines 28 and 30 forming the free end of the tongue 26. The free end of the tongue has a projection 36 which is adapted to engage a socket 38 cut into the back panel 20 preferably at the time the tongue 26 is die cut. The inner panel 22 has a transverse hinge line 40 scored therein which is adapted to register with a parallel incision 42 cut through the outer panel 24. The score line 40 and the incision 42 are equidistant from the fold line 16 by which the panels 22 and 24 are separated such that when these panels are folded into contact with each other by rotating the same on the fold line 16, the score line 40 in the inner panel 22 and the incision 42 in the outer panel 24 will register with each other and provide for a supporting prop hinge in the finished article.

If desired, the back panel 20 may be pre-cut according to the method of my United States Patent 2,355,706, issued August 15, 1944, to provide for a display material well in the face assembly. The blank 10 is now folded about the fold lines 12, 14 and 16. Thus, the face panel 18 and the back panel 20 are rotated about the fold line 12 to bring these panels in back-to-back contact with each other. The inner panel 22 is folded upwardly on the fold line 14 to bring it into face-to-face contact with the back panel 20, and the outer panel 24 is folded downwardly on the fold line 16 to bring it into back-to-back contact with the inner panel 20. As so folded, the fold line 14 and the outer end 44 of the face panel constitute the base line of the mount assembly.

After the blank 10 has been folded as described it is bound into a unitary structure by adhesively attaching a thin decorative binding material 46 to the exposed surfaces of the outer panel 24 and the inner panel 22. This binding material is turned about the edges of the assembly and terminates on the exposed surface of the face assembly, i.e., the exposed face of the face panel 18.

Following the binding operation, the outer panel 24 and the inner panel 22 and the attached binding material are die cut to form a mount supporting prop 47. Thus, the back assembly comprising the panels 22 and 24 is cut along a pair of generally parallel lines 48 and 50. These cuts extend from the registering score line 40

and incision 42 to a point near the base fold line 14 where a transverse cut 56 joins the lower end of the parallel cuts 52 and 54. This cutting operation results in a unitary mount supporting prop structure as shown in FIGS. 2 and 3.

It will be noted by reference to FIG. 4 that the outer panel 24 is shorter than the inner panel 22. Thus, when the outer panel 24 is folded into back-to-back contact with the inner panel 22 by rotating the same inwardly on the fold line 16, the terminal end 60 of the outer panel 24 will be above the base of the mount as represented by the fold line 14. Thus, when the prop is die cut as described, and the transverse incision 56 in the inner panel 22 is formed between the base of the prop and the terminal edge 60 of the outer panel 24, the die cut plies of panels 22 and 24 forming the supporting prop 47 are held together by the adhesively attached binding material 46 which is attached to the exposed face of the outer panel 24 and the exposed projecting end of the inner panel 22 such that the material extends across the terminal edge 60 of the outer panel 24 and thereby holds the two-plies of the supporting prop 47 together.

If the outer panel 24 were made coextensive with the inner panel 22 and a supporting prop were cut through both panels, the separate plies of the prop would be undesirably separate from each other unless the confronting faces thereof were glued together or some other means were employed to cause them to operate as a unit.

A month-to-month calendar pad or other display material 62 may be attached to the front of the face assembly or the face assembly may be otherwise modified or treated as the intended use of the mount may require.

As best seen in FIG. 3, the supporting prop 47 may swing about the hinge line formed by the incision 42 in the outer panel 24 and the score line 40 in the inner panel 22, such that the latch tongue 26 formed in the inner panel 22, can be swung inwardly to engage the socket 38 formed in the backpanel 20 of the face assembly.

The fact that the supporting prop 58 is a two-ply structure, invests it with the necessary strength to avoid bending and warping. Heretofore, single ply supporting props were frequently found to be subject to warping and bending, particularly in mounts of substantial size. It has been a primary object in the fabrication of display mounts to avoid all tendencies for any of the elements thereof to bend or warp, and the reinforced prop herein contributes substantially toward this objective since single ply props heretofore employed were frequently the most vulnerable element of the entire structure.

While the fundamentally novel features of the invention have been illustrated and described in connection with a specific embodiment of the invention, it is believed that this embodiment will enable others skilled in the art to apply the principles of the invention in forms departing from the exemplary embodiment herein, and such departures are contemplated by the claims.

What is claimed is:

1. In a display mount having a base edge adapted to rest on a supporting surface, a back assembly consisting of an inner panel extending to the base edge of said mount and an outer panel in back-to-back contact with said inner panel, said outer panel having an edge terminating above the base edge of said mount, a flexible binding material adhesively attached to the exposed faces of said back assembly, and a supporting prop in said back assembly adapted to swing about a hinge line substantially parallel to and remote from said base edge, said supporting prop being defined by lines of severance from said back assembly which are spaced inwardly from the latera ledges of said back assembly and by a line of severance above said base edge but below said terminal edge of said outer panel.

2. In a display mount having a base edge adapted to rest on a supporting surface, a back assembly consisting of an inner panel extending to the base edge of said mount and an outer panel in back-to-back contact with said inner panel, said outer panel having an edge terminating above the base edge of said mount, a flexible binding material adhesively attached to the exposed face of said back assembly, and a supporting prop in said back assembly adapted to swing about a hinge line substantially parallel to and remote from said base edge, said supporting prop being defined by a pair of substantially parallel lines of severance from said back assembly which are spaced inwardly from the lateral edges of said back assembly and by a line of severance substantially parallel to said base edge and which is located above said base edge but below said terminal edge of said outer panel.

3. In a display mount having a base edge adapted to rest on a supporting surface, a back assembly consisting of an inner panel extending to the base edge of said mount and an outer panel in back-to-back contact with said inner panel, said outer panel having an edge terminating above the base edge of said mount, a flexible binding material adhesively attached to the exposed face of said back assembly, and a supporting prop in said back assembly adapted to swing about a hinge line substantially parallel to and remote from said base edge, said supporting prop being defined by lines of severance from said back assembly which are spaced inwardly from the lateral edges of said back assembly and by a line of severance above said base edge but below said terminal edge of said outer panel, and a prop latching tongue formed in said inner panel.

4. In a display mount having a base edge adapted to rest on a supporting surface, a back assembly consisting of an inner panel extending to the base edge of said mount and an outer panel in back-to-back contact with said inner panel, said outer panel having an edge terminating above the base edge of said mount, a flexible binding material adhesively attached to said base assembly and being adhesively attached thereto, and a supporting prop in said back assembly adapted to swing about a hinge line substantially parallel to and remote from said base edge, said supporting prop being defined by a pair of substantially parallel lines of severance from said back assembly which are spaced inwardly from the lateral edges of said back assembly and by a line of severance substantially parallel to said base edge and which is located above said base edge but below said terminal edge of said outer panel, and a prop latching tongue formed in said inner panel.

References Cited in the file of this patent

UNITED STATES PATENTS

| 2,472,405 | Cross | June 7, 1949 |
| 2,863,243 | Nichols | Dec. 9, 1958 |



INVENTOR.
CARROLL N. CROSS

BY

ATTORNEY

1

3,002,720
HINGE JOINTS FOR DISPLAY MOUNT ELEMENTS
Carroll N. Cross, Rte. 2, Box 204, Maitland, Fla.
Filed Mar. 30, 1959, Ser. No. 802,914
4 Claims. (Cl. 248—35)

This invention relates to display mounts. More particularly, the invention relates to hinge structures for display mounts constructed of paper stock for support in a generally upright display position on a flat surface such as a desk, for example.

Mounts having a facial display material supporting panel are usually provided with a leg, prop or an easel-like structure which is ordinarily folded flat against the display panel assembly, but which can be rotated about a hinge line into angular relation to the display panel assembly such that a support is provided for holding the display panel assembly in an appropriate, generally upright, display position. All such display mounts heretofore have required a latch, ribbon or a locking tongue to maintain the leg, prop or easel-like element in a more or less fixed angular position in respect to the display panel assembly.

Display mounts of the type described, require special fabricating and assembling operations for the formation and installation of leg, prop or easel-controlling latches, ribbons or locking tongues; they largely lack means for adjusting the angle of repose at which the display panel can be supported; and latches, ribbons and locking tongues mutilate, obscure and render inaccessible and restrict the use of surface areas of the mount which might otherwise be used to great advantage for the display of printed matter or written information.

Paper stock, such as cardboard and leatherette materials ordinarily used in the construction of display mounts, has a resilience, particularly when new, which causes it to recoil to an original state when released from bending stresses. These same materials lose their self-sustaining elastic properties when subjected to repeated flexing and bending. Therefore, these materials are not well adapted per se to serve as hinge elements in mount structures unless their position is controlled by devices such as referred to above.

It is, therefore, the primary object of this invention to provide improved hinge joints for display mounts and particularly in mounts formed of paper stock materials.

It is a further object of the invention to simplify display mount structures by eliminating all prop latches, ribbons, locking tongues and like structures, heretofore used to limit the movement of supporting legs, props and the like, and thereby render mounts easier and cheaper to manufacture and also preserve a greater amount of their surface area for printed or written intelligence.

It is still a further object of the invention to provide hinge structures for display mounts which permit hinged mount components to be reposed in a wide range of angular adjustments in respect to each other.

Furthermore, it is an additional objective to provide such hinge structures which can be operated a great number of times without showing evidence of fatigue.

The objectives of the invention are secured herein by constructing hinge joints in mount structures of flexible but substantially non-resilient materials which, under bending stress, develop no potential energy which would cause them to recoil or collapse upon release of the stress.

Specifically, it is contemplated to incorporate into the hinge line of display mount elements a thin sheet of flexible ductile material which is tractable and displays a mechanical hysteresis to change of form or position after bending. Hinge joints so constructed permit the

2

mount elements so hinged to each other to be angularly disposed to each other through a wide range of positions without any tendency to change from the adjusted position.

Other objects and advantages of the invention will be stated in the following detailed description or will be apparent therefrom, which description is to be read in conjunction with the drawing forming a part of this application, in which drawing like reference numerals indicate like parts, and in which:

FIG. 1 is a perspective view of a currently popular desk calendar mount consisting of a face panel assembly and a back panel assembly hinged to each other along a hinge line incorporating the invention herein;

FIG. 2 is a sectional view along line 2—2 of FIG. 1;

FIG. 3 is a view showing the inturned faces of the mount of FIG. 1;

FIG. 4 is a mount similar to that shown in FIG. 1 showing, however, a simplified and modified structure;

FIG. 5 is a perspective view of a modified mount structure showing the invention embodied in a mount supporting leg hinge which is formed in a back panel of the mount;

FIG. 6 is a sectional view on line 6—6 of FIG. 5;

FIG. 7 is a fragmentary view of press-scored hinge joint structures in which the invention hereof is embodied; and

FIG. 8 is a fragmentary view of a modified press-scored hinge joint structure in which the invention hereof is embodied.

The drawing illustrates a plurality of different types of mounts in which the invention is embodied. These several forms are merely suggestive of the wide variety of mount forms in which the invention can be utilized to good effect.

FIGS. 1 through 3, and also to some extent FIG. 4, illustrate a mount of the general class shown in my Patent 2,825,516, granted March 4, 1958. In that patent, as in the figures named, is disclosed a display mount having a face panel assembly 10 and a substantially coextensive back panel assembly 12 hinged thereto along a horizontal axis 14, the back panel assembly 12 constituting a supporting leg when the panel assemblies 10 and 12 are swung apart. The present invention is designed specifically to eliminate the latching tongue extending between the face panel assembly and the back panel assembly of the above-identified patent.

In FIG. 1, the face panel assembly 10 and the back panel assembly 12 are each composed of a pair of cardboard panels preferably of substantially equal size folded upon each other. Thus, by reference to FIG. 2, it can be seen that the face panel assembly includes a cardboard face panel 16 and a similar cardboard back panel 18. The back panel assembly 12 includes a face panel 20 and a back panel 22. The face panel assembly 10 and the back panel assembly 12 are disposed with two of their longitudinal edges in spaced parallel relation and are then bound together by adhesively attaching to the faces thereof a decorative binding material 24 which spans the space between the adjacent parallel edges of the assemblies. The decorative binding material 24 is brought about the edges of the assemblies and terminates on the rear face thereof where a flexible liner 26 is adhesively applied to cover the rear face of the assemblies and the terminal edges of the binding material 24.

In the form of mount shown in FIGS. 1 through 3, a month-to-month calendar pad 28 is fixed to the outer surface of the face panel assembly 10, while the liner on the rear face of the panel assemblies is suitably printed, as shown in FIG. 3, for the receipt of notations, such as telephone numbers, requiring recurring reference.

As thus far described, the mount of FIGS. 1 through 3

would require a latching tongue or the like, to maintain the structure in the position illustrated in FIGS. 1 and 2 against collapse. By resort to the present invention, however, such latching arrangements are eliminated and ready reference to the entire inner face of the assembly structure is possible.

In the structure of FIGS. 1 through 3, and as more particularly shown in FIG. 2, a thin flexible sheet of substantially non-resilient material 30 is incorporated in the mount structure such as to span the hinge line 14 about which the face panel assembly and the back panel assembly are adapted to rotate. As shown in FIG. 2, the flexible, ductile sheet is located between the panel boards of which the face panel assembly and the back panel assembly are formed. Thus, the sheet 30 extends downwardly between the cardboard panels 16 and 18 comprising the face panel assembly 10 and also downwardly between the cardboard panels 20 and 22 constituting the back panel 12.

As stated, the ductile sheet 30 is tractable and displays a mechanical hysteresis to change of form or position after bending. Any number of such materials are available to those skilled in the art. Ductile metal sheets and foils have been employed to good advantage. In one specific application of the structure, a soft ductile aluminum sheet has demonstrated the efficiency of the invention. It is contemplated that the thickness of the sheet will be chosen according to the requirements of any particular mount form and as such, it is contemplated that a sheet between .003 to .020 of an inch in thickness will be sufficient for most purposes. A soft aluminum sheet, or foil, lends itself ideally to the purposes of the invention, but similar soft, thin, flexible sheets of other metals, such as tin, zinc, copper or lead are equally useful.

When the mount of FIGS. 1 through 3 is placed upon a surface such as a desk, the face panel assembly 10 and the back panel assembly 20 may be adjusted into a desired angular relationship to each other such as to present the calendar 28 on the face panel assembly at the proper angle for comfortable viewing from either a seated or standing position. Furthermore, the mount can be opened such that free visual access to the data printed or written on the liner sheet 26 is quickly available.

It can be seen that when reference to the intelligence on the liner sheet 26 is frequent, that the hinge line in which the ductile sheet 30 is incorporated, will be subject to repeated flexing. Experience has shown that when a thin, flexible metal sheet, such as above described, is used that the number of times the hinge structure is operated has little effect on the amount of fatigue that is shown by the joint. This is particularly true when the thin flexible material is a soft metal sheet or foil. These soft varieties of metal appear to show little or no fatigue after repeated flexing.

FIG. 4 shows a modification of the mount structure of FIGS. 1 through 3. In FIG. 4 a pair of panels have a thin metal foil facing material which forms the hinge line between the panels. Thus, a face panel 32 of suitable material, cardboard for example, and a back panel 34, suitably of the same material, are connected together by means of a thin ductile metal facing material 36. This material can suitably be an aluminum foil, as above described, because aluminum is readily available in brilliant and attractive colors and lends itself readily to embossing such that the foil or sheet facial surfaces of the mount can be suitably embossed. The metal foil 36 in FIG. 4 is attached to the face of the face panel 32 and also to the face of the back panel 34 such that it spans the parallel facing edges 38 and 40 of the panels 32 and 34, respectively. A lining material 42 is attached to the rear face of the panels 32 and 34 such that it covers the inner faces of the panels 34 and 32. The lining material 42 may be suitably printed or prepared

for the receipt of information which requires repeated reference, and may include mounted printed sheets or a small booklet.

In the structure of FIG. 4 the metallic facing is not bound about the bottom edges of the panels 32 and 34, as in the case of the facial binding material 24 in FIG. 2, but both the facing 36 and the liner 42 terminate at the bottom edges of the panels 32 and 34, and also by preference at the lateral edges of the panels in the area of the hinge joint. If desired the mount of FIG. 4 may eliminate all binding of bottom and lateral edges which adapts the same to the simultaneous cutting of multiple mount structures from large pre-lined and pre-faced sheets of mount stock.

It should be particularly noted in respect to the externally applied metal foil sheet as in FIG. 4 that there is a substantial difference between the material herein utilized and the metal which is ordinarily employed for the formation of the conventional metal desk calendar or display mount. In the latter structures, the metal is substantially rigid, in most cases quite resilient and heavy. All of this results in a mount structure which is apt to scratch surfaces on which it is reposed, which is costly to mail by reason of its weight, and which frequently cuts through mailing envelopes by reason of sharp metal edges. In contrast to the foregoing, the thin, flexible ductile sheet or foil on the face of a mount structure does not add substantially to the weight, it possesses no sharp edges or corners, even though the metallic facing is turned about supporting edges of the mount, which are apt to scratch a supporting surface, and it shows no tendency to break or cut through mailing envelopes. The desirable hinge effect of the flexible ductile sheet or foil is not present in rigid, self-sustaining metals and such metals, therefore, lend no enhancement to the hinge operation. When the ductile metal is facially applied as shown in FIG. 4, and does not extend about the supporting edges of the mount, the mount, when erected, will rest on the cardboard panel edges which are so soft as to do no injury to even the most delicate surfaces.

The forms of the invention hereinabove described suggest the use of metal sheets and foils which are substantially coextensive in size with the panels or panel assemblies joined together by such sheets and foils. It is not to be implied, however, that this is necessarily the case. All that is necessary is that the ductile material be effective in the area of the hinged joint. Thus, in those forms shown in FIGS. 1 through 4, the hinge material may be considerably shorter or it may be of less width.

The facing sheet 36 of FIG. 4 is most effective if it covers the entire outer surface of the face panel 32, but this is not essential nor need it extend over the entire face of the back panel 34. In such case, decorative leatherette binding material may be employed to cover the cardboard panel or panels in areas where the metal sheet or foil does not extend.

The concept of using a patch of flexible ductile metal is embodied in FIGS. 5 and 6. These figures represent a mount of the general class disclosed in my Patent 2,355,706, issued August 5, 1944, which mounts are characterized by a supporting prop formed in the back panel assembly.

In FIGS. 5 and 6, a face panel assembly 44 and a back panel assembly 46 are constructed of a plurality of substantially coextensive cardboard panels such that a display window may be formed in the face panel assembly and a mount supporting prop such as described in my aforesaid Patent 2,355,706 may be formed in the back panel assembly. Accordingly, the face panel assembly is composed of a plurality of like cardboard elements 48, 50 and 52, while the back panel assembly is composed of a plurality of similar cardboard elements 54, 56 and 58. The face panel assembly 44 and the back panel as-

5

sembly 46 are suitably joined together by a decorative flexible binding material 62 which is attached to and covers the facial surfaces of the assemblies. The binding material 62 extends about the edges of the panel assemblies and terminates on the rear face thereof.

It is contemplated that a lining sheet 64 be attached to the rear face of the panel assembly such that it covers the terminal edges of the decorative binding material 62 and provides a surface for data requiring recurring reference. Visual access is afforded to the data on the lining sheet 64 by forward rotation of the face panel assembly 44 about the hinge line at the bottom of the structure where the two assemblies are connected by the decorative facing material 62 and the liner sheet 64.

By reference to FIGS. 5 and 6, it can be seen that a supporting leg 66 generally similar to that shown in my Patent 2,355,706 is formed in the back panel assembly 46 by cutting through the backboard and overlying binding material, such that the leg 66 can swing rearwardly about a hinge line 68. In order to impart the characteristics of the invention to the hinge line 68, there is incorporated into the back panel assembly a patch of thin, flexible, ductile metal sheet or foil 70 which extends across the hinge line 68, the patch 70 being secured between the panel 58 and the overlying binding material 62 so that the patch will be retained in position throughout the life of the mount.

The face panel assembly 44 may be recessed to receive a flat sheet-like display object. The utility of the invention is particularly marked when the mount is used to support a mirror, in which case adjustment of the angular inclination of the display surface must be frequent to accommodate the needs of many individuals and environments.

Reference has been made to the several hinge structures employed in the mount forms of FIGS. 1 through 4. It would be noted that these hinge connections are formed at the abutment of two physically separate panel structures. Frequently it is desirable to hinge an element in a mount structure, such as for example the supporting leg 66 of the mount form of FIGS. 5 and 6, which does not involve physically separated panels, but instead involves a scored or partially precut hinge line upon which the hinged members can rotate.

FIG. 7 illustrates a laminated structure including a flexible sheet of ductile metal in which are formed a plurality of score lines 72, 74, and 76 about which the respective sections 78, 80, 82 and 84 may rotate in respect to each other. The lamination of FIG. 7, by way of example, is composed of a leatherette facial binding material 86, a cardboard base panel 88, a thin, flexible ductile metal sheet or foil 90 and a paper lining sheet 92. When a laminated structure of the kind shown in FIG. 7 is bent about the several score lines, it will maintain its position by reason of the ductile foil or sheet component despite the fact that the leatherette binding material, the cardboard base panel and the paper liner possess substantial resilience and, therefore, tend to return to the original plane of FIG. 7.

The score lines 72, 74 and 76 of FIG. 7 are of the press-scored variety, i.e., they are formed by pressing in between suitable dies which tend to break down and deform the fibers of the material of the components of which the laminae is formed. In the formation of such score lines,

6

it is particularly important that a soft ductile metal sheet or foil be employed for the reason that the pressure that must be applied has little or no cutting effect on the soft foils and sheets, whereas the harder sheets and foils may be damaged by the pressure that is necessary to form an adequate score.

Certain metals may be adversely affected by the pressure necessary to form a press-scored hinge line, and in such cases resort may be had to the hinge line forming procedure illustrated in FIG. 8. In the case of FIG. 8, one or more mount elements 94 and 96 have a hinge line 98 formed therein by press-scoring, slotting or routing prior to assembly with the ductile metal sheet 100. In structures according to FIG. 8 it has been found that when the elements are rotated about the hinge line 98, the metal sheet or foil will crease along the preformed hinge line such that a single crease line will be formed in the metal and will be maintained therein throughout the life of the mount.

While the fundamentally novel features of the invention have been illustrated and described in connection with specific embodiments of the invention, it is believed that these embodiments will enable others skilled in the art to apply the principles of the invention in forms departing from the exemplary embodiments herein, and such departures are contemplated by the claims.

I claim:

1. In a display mount constructed of paper stock, said mount having a facial panel for holding display material and a prop for maintaining said panel in a display position, a hinge line along which said prop is adapted to rotate into angular relation to said display panel, and a hinge element consisting of a flexible sheet of ductile material extending across said hinge line, said ductile material hinge element being the sole means for maintaining said panel and said prop in angular relation to each other.

2. In a display mount constructed of paper stock, said mount having a facial panel for holding display material and a prop for maintaining said panel in a display position, a hinge line along an edge of said mount on which said prop is adapted to rotate into angular relation to said display panel, and a hinge element consisting of a flexible sheet of ductile material extending across said hinge line, said ductile material hinge element being the sole means for maintaining said panel and said prop in angular relation to each other.

3. The invention of claim 2 in which said sheet of ductile material has a ductility of a sheet of aluminum having a thickness between .003 and .020 of an inch.

4. The invention of claim 2 in which said prop is a second panel substantially co-extensive in width with said facial panel and in which said ductile material sheet extends across spaced parallel edges of said panels and is fixed to a surface of each thereof.

**References Cited** in the file of this patent

UNITED STATES PATENTS

| | | |
|---|---|---|
| 408,041 | Orr | July 30, 1889 |
| 1,261,195 | Venable | Apr. 2, 1918 |
| 2,798,322 | Nichols | July 9, 1957 |
| 2,825,516 | Cross | Mar. 4, 1958 |
| 2,831,285 | Cross | Apr. 22, 1958 |
| 2,902,785 | Nichols | Sept. 8, 1959 |



FIG I

FIG. 2.

FIG. 3.

FIG. 4.

Ralph J. Gelinas
Inventor
Waynes, Koenig & Wolf
Attorneys

# UNITED STATES PATENT OFFICE

2,242,064

NOTEBOOK

Ralph J. Gelinas, South Weymouth, Mass., assignor to Eastern Tablet Corporation, Boston, Mass., a corporation of New York

Application January 26, 1940, Serial No. 315,648

2 Claims. (Cl. 281—33)

This invention relates to books, and has particular reference to notebooks such as are employed by stenographers.

Among the objects of this invention is the provision of a notebook which may rest flatly upon a desk or other flat surface for the insertion of notes therein, and which may subsequently be placed in an angular position and firmly but removably held therein so that the notes may be easily and conveniently read or transcribed. Other objects will be in part obvious and in part pointed out hereinafter.

The invention accordingly comprises the elements and combinations of elements, features of construction, and arrangements of parts which will be exemplified in the structures hereinafter described, and the scope of the application of which will be indicated in the following claims.

In the accompanying drawing, in which is illustrated one of various possible embodiments of the invention,

Fig. 1 represents a top plan view of an open notebook showing the leaves partially cut away to expose the lower portion of the cover which would normally be concealed;

Fig. 2 is a side elevation of the notebook in position for reading the notes or for transcribing; and,

Figures 3 and 4 are fragmentary views taken respectively along lines 3—3 and 4—4 of Fig. 2.

Similar reference characters indicate corresponding parts throughout the several views of the drawing.

While the invention will be described with particular reference to notebooks adapted for use by stenographers, it will be apparent that it may be employed with advantage in any case in which it is desired temporarily to support pages at an angle with the horizontal, in order to more easily read or employ the information shown thereon, and yet it is important that the pages and the book shall lay substantially flat when not so supported.

Referring now more particularly to Fig. 1, there is illustrated a notebook having a front cover 1, back cover 2 and pages 3, shown as cut away at 12, all joined together by a suitable flexible binding, such as a spiral wire binding 4. A section 5 of the back cover 2 is relieved from the remainder of the cover along three sides thereof, but remains attached without scoring or the like at one side 6. It is usually preferable to apply a strengthening and stiffening means, such as a layer of cloth, over the side 6 prior to relieving the member 5, although this is not essential

because the absence of a score line or the like at this point produces most of the advantageous effect which will hereinafter be particularized. Such a reinforcement is shown at 7 in the form of an adhered piece of fabric. The front cover 1 has an opening 8 formed therein, of the proper size and shape for the reception of the free end 9 of the member 5 when the notebook is placed in angular position. This opening 8 may advantageously be formed with the lower portion 10 of greater width than the top portion 11, so that the end 9 of the member 5, after passing through the portion 10, may be retained by the relatively narrower width of the portion 11. To effect this, the portion 9 is shown as of greater width than the remainder of the member 5.

In Fig. 2, the notebook is shown placed in angular position so that the pages 3 are presented for convenient reference. In this form, the member 5 is shown bent along the line 6, and with the end 9 engaging the cover 1.

Figs. 3 and 4 show the preferred form of temporary connection between the end 9 and the opening 8. The greater width of the end 9 as compared with the rest of the member 5 serves to retain the cover 1 at the predetermined distance from cover 2, and yet may easily be disengaged therefrom and the notebook returned to the horizontal position, the member 5 returning to its original position in the cover 2. The operation of the notebook is clear from the foregoing description. The book is opened and employed in the usual way for the entry of notes. The absence of elements affixed to either cover, and projecting therefrom, allows the notebook to lay substantially flat when in a horizontal position. Then when it is desirable to read the notes, the cover 1 is turned back, the element 5 is sprung outwardly and downwardly along the line 6, and the end 9 inserted in the wider portion 10 of the opening 8. The member 5 then springs up so that the end 9 engages behind the narrower portion 11 of opening 8 to lock the covers against spreading, whereupon the book is in the Fig. 2 position ready for reading or transcription. Reversing the process restores the book to its original position.

From the foregoing description, it is apparent that the notebook of the present invention is particularly valuable because the member 5 is an integral piece relieved from the cover 2 but located precisely in its plane, rather than being an extraneous member merely attached thereto in a separate plane. This allows the notebook to lie substantially flat upon a surface when notes

are being entered therein, and also allows large numbers of notebooks to be stacked one upon the other without danger of wobbling. The spiral binding or hinge 4 is also particularly desirable because it permits free movement of the leaves 3 back and forth, so that notes may be easily referred to, and the leaves 3 remain flat even when the notebook is opened but obviously other forms of hinges may be used, if desired.

Although the member 5 has been shown as being of the same width throughout except at the end 9, it is of course obvious that this is not essential, and it may be made in any desired form, the only requirement being that the distance between the line 6 and the terminal portion 9 shall be determined so as to place the leaves at the desired angle when the assembly is in the angular position shown in Fig. 2. The opening 8 may also be made in different forms, the only requirement being that it shall provide a relatively substantial temporary attachment for the end 9 of the member 5 to hold the two covers apart at the predetermined distance.

Summarizing the advantages of the invention, these consist in a coplanar tongue struck from or relieved from one cover of the book along a line the ends of which are free of any connection by a score line or the like, whereby a springing action is obtained for the tongue when it is placed in a non-planar position with respect to the cover from which it is struck.

Besides, if the material from which the cover and its integral tongue are made is not springy enough, the strengthening member 7 serves to increase the stiffness and durability to prevent break down of the hinging region.

The advantage of the coplanar tongue is combined with the feature of the slot on the opposite cover having a narrower part at the top so that the inherent spring of said tongue will cause it to interlock without doing any more than simply inserting it in the notch. This arrangement also causes the interlock to be stronger as the covers tend to slip apart when in their angled positions, as shown in Fig. 2.

Another advantage of the invention is the extreme simplicity. It consists simply in a single operation on each cover so far as the covers themselves are concerned. In the case of the cover 2, it is simply the operation of relieving the tongue, and in the case of the cover 1 it is the punching operation for the slot 8.

In view of the above, it will be seen that the several objects of the invention are achieved and other advantageous results attained.

As many changes could be made in the above constructions without departing from the scope of the invention, it is intended that all matter contained in the above description or shown in the accompanying drawing, shall be interpreted as illustrative and not in a limiting sense.

What is claimed is:

1. A stenographer's notebook comprising relatively stiff front and back covers with intervening leaves, said covers being hinged together at one of their corresponding ends whereby one cover may be folded back towards the other to assume an easel like position during the transcription of the notes, said covers also being flat and of uniform thickness to permit easy stacking or storage, one of said covers having a key hole like slot therethrough, said other cover having a tongue cut from the integral back along substantially three sides, the fourth side of said tongue being directly connected in a uniform manner with the cover whereby the tongue may be bent out from the body of said cover towards the other, the free end of said tongue having an enlarged end to engage the key hole like slot in the other cover and spring towards the smaller part of said slot due to the natural resiliency of the material thereby to have an interlocking engagement with said slot in the other cover.

2. A device as set forth in claim 1, including means for reinforcing the connection of the tongue with the cover to increase the durability and stiffness of the material at that point of bend.

RALPH J. GELINAS.